# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| THE LUNKENHEIMER COMPANY<br>3475 Vista Avenue<br>Cincinnati, Ohio 45208-1065 | : <br>: <br>: <br>: | Case No. 1:11-cv-824 |
| USWATTA PARTNERS, LLC<br>3475 Vista Avenue<br>Cincinnati, Ohio 45208-1065 | : <br>: <br>: <br>: | J. Spiegel<br>U.S.D.J. |
| USWATTA PARTNERS<br>3475 Vista Avenue<br>Cincinnati, Ohio 45208-1065 | : <br>: <br>: <br>: | <br>U.S.M.J. |
| CONSOLIDATED VALVES, LTD.<br>3475 Vista Avenue<br>Cincinnati, Ohio 45208-1065 | : <br>: <br>: <br>: | |
| Plaintiffs | : <br>: | |
| - vs. - | : <br>: | |
| TYCO FLOW CONTROL PACIFIC PTY LTD.<br>**SERVE:**<br><br>114 Albatross Road<br>Nowra NSW 2541<br>Australia<br>Attn: Mr. Greg Lewis | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | **COMPLAINT FOR A DECLARA-<br>TORY JUDGMENT, INJUNCTIVE<br>RELIEF, FOR AN ACCOUNTING,<br>AND FOR MONETARY DAMAGES**<br><br>**(JURY DEMAND ENDORSED<br>HEREON)** |
| **ALSO SERVE:**<br><br>TYCO VALVES & CONTROLS, LP<br>c/o CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>TV&C GP HOLDING, LLC<br>f/k/a TV&C GP HOLDING, INC.<br>c/o CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114 | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | |

| | |
|---|---|
| TYCO VALVES & CONTROLS, LP | : |
| | : |
| **SERVE:** | : |
| CT Corporation System | : |
| 1300 East Ninth Street | : |
| Cleveland, Ohio  44114 | : |
| | : |
| TV&C GP HOLDING, LLC | : |
| f/k/a  TV&C GP HOLDING, INC. | : |
| | : |
| **SERVE:** | : |
| CT Corporation System | : |
| 1300 East Ninth Street | : |
| Cleveland, Ohio  44114 | : |
| | : |
| Defendants | : |

Come now Plaintiffs, by and through counsel, who state as follows:

**PARTIES & SERVICE ENTITIES**

1. Plaintiff, The Lunkenheimer Company (sometimes "Lunkenheimer"), is an Ohio corporation having its principal place of business in Ohio.

2. Plaintiffs, USWATTA Partners, LLC and USWATTA Partners (sometimes collectively "USWATTA"), are Ohio limited liability corporations having their principal places of business in Ohio.

3. Plaintiff, Consolidated Valves, Ltd. (sometimes "CVL"), is an Ohio limited liability company with its principal place of business in Ohio.

4. All Plaintiffs may sometimes be referred to herein collectively as "Plaintiffs."

5. Defendant, Tyco Flow Control Pacific Pty, Ltd (sometimes "Tyco Pty"), is an Australian limited liability company with its principal place of business in Nowra New South Wales, Australia and is engaged in the business of selling valves and other flow control products internationally.

6. Upon information and belief, Defendant, Tyco Valves & Controls, LP (sometimes hereafter "Tyco Valves"), is a limited partnership, which was organized under the laws of the State of Delaware, with its principal place of business in Exeter, New Hampshire. It is licensed to transact business in Ohio.

7. Upon information and belief, Tyco Valves is engaged in the business of marketing, selling and engineering flow control solutions which incorporate and include certain Lunkenheimer and Klein branded valve products which are the subject of "Licence Agreements" entered into between Plaintiffs and Tyco Pty.

8. Upon information and belief, Defendant, TV&C GP Holding, LP, f/k/a TV&C GP Holding, Inc. (sometimes hereafter "TV&C"), is the general partner of Tyco Valves and is licensed to transact business in Ohio. TV&C is also believed to be a trade or fictitious name for Tyco Valves.

9. Tyco Pty and Tyco Valves and TV&C may sometimes be referred to herein collectively as "Defendants."

10. Tyco Pty and Tyco Valves and TV&C are engaged in the business of the manufacture and/or sale of actuators and valves, which, upon information and belief, includes the Lunkenheimer and Klein branded valve products which are the subject of Licence Agreements entered into between Plaintiffs and Tyco Pty.

### JURISDICTIONAL & VENUE STATEMENTS

11. Jurisdiction in this Court is premised on diversity of citizenship, 28 U.S.C. §1332, Plaintiff being diverse from all Defendants and the amount in controversy exceeding $75,000.00, excluding interest and costs.

12. The Defendants are properly subject to the subject matter jurisdiction of this

Court because the matters complained of herein arose out of said Defendants' transaction of business in Ohio within the meaning of Ohio Revised Code Section 2307.382(A)(1) and the case law interpreting the breadth of the word "transacting."

13. The Defendants are also properly subject to the subject matter jurisdiction of this Court because the matters complained of herein caused tortious injury in Ohio by acts or omissions outside Ohio and said Defendants regularly do or solicit business, or engage in an other persistent course of conduct or derive substantial revenue from goods used or consumed in Ohio within the meaning of Ohio Revised Code Section 2307.382(A)(4).

14. Venue is proper in this district because Plaintiffs are located in Hamilton County, Ohio and the claims for relief stated herein primarily arose out of activity in Hamilton County, Ohio.

## STATEMENT OF FACTS

15. Plaintiffs incorporate herein by reference, as though fully restated, the allegations contained in paragraphs 1 through 14, above.

16. Plaintiffs are Ohio entities with their principal places of business in this District. They own all of the rights to Lunkenheimer and Klein valves, including the designs of said products, drawings or other renderings of said products and their component parts, the know-how that went into said designs, and the trademarks and trade slogans associated with said products.

17. From time-to-time after August 2002 Lunkenheimer assigned all of its renewal valve rights to CVL and, in turn, CVL subsequently transferred them to USWATTA.

18. Tyco Pty wished to obtain a license to manufacture and sell specifically identified Lunkenheimer and Klein valves and component parts, and to use the drawings

-4-

or other renderings of said valves and their component parts along with the Lunkenheimer know how that went into said designs, and the trademarks and trade slogans associated with said valves. All of the foregoing will sometimes collectively hereafter be referred to as the "valve rights."

19. In or about August 2002, Tyco Pty entered into two forms of "Licence Agreement" with Lunkenheimer and CVL for the valve rights in Australia, other countries, and in the United States. Copies of the two forms of Licence Agreements, excluding their voluminous schedules, are attached hereto and incorporated herein as Exhibits A and B.

20. Pursuant to said Licence Agreements, Tyco Pty conducts ongoing business operations through in the United States, including without limitation in Ohio, through TV&C GP Holding, Ltd. and/or Tyco Valves.

21. Those business operations include the sale of the Lunkenheimer and Klein valves specifically identified in the Licence Agreements and parts thereof.

22. In accordance with the License Agreements, Tyco Pty agreed to pay Plaintiffs $1,400,000.00 as an initial payment and annual license fees, paid quarterly. Exhibits A and B at §§6.1, 6.2.

23. The annual license fee was five percent (5%) of Tyco Pty's net sales during the term of the contract with respect to the first $5,000,000.00 of such net sales. When net sales exceeded $5,000,000.00, the annual license fee was two and one-half percent (2.5%) of such net sales with a minimum yearly payment of $100,000.00. *Id.* at §6.2.

24. Tyco Pty has made some license payments to Plaintiffs, but has materially and repeatedly breached the Licence Agreements by refusing to provide details to document and support the average yearly sales amount it used to calculate those payments despite the

contrary requirements of said Licence Agreements. *Id.*, at §7.3, entitled "Reports and Accounting."

25. Pursuant to the Licence Agreements, Tyco Pty was also required to provide Plaintiffs a statement with each payment detailing net sales during the payment period with a calculation of any payments due, but Tyco Pty materially and repeatedly breached said License Agreements by failing to provide detailed net sales, statements and/or calculations of payments to support its fee payments. *Id.*

26. Tyco Pty owes Plaintiffs additional payments for each year from 2002 through 2007.

27. Tyco Pty has also materially and repeatedly breached said License Agreements by failing to make any of the required payments to Plaintiffs since 2007.

28. Purportedly pursuant to §5.1 of the License Agreements, Tyco sent written notice to Plaintiffs on or about August 17, 2007 of its intent to purchase the "Licensed Intellectual Property" (as defined in the Licence Agreements). *Id.* at §§5.1 and 1.1 (the latter defining "Licensed Intellectual Property").

29. Pursuant to §5.3(d) of the Licence Agreements, in addition to sending written notice to Plaintiffs on or about August 17, 2007 of its intent to purchase the "Licensed Intellectual Property," Tyco was obligated to pay Plaintiffs a "Purchase Price" (as defined in the Licence Agreements) to on the twentieth business day following notice together with any outstanding license fees calculated up to and including the date of the purchase. *Id.* at §5.3(d).

30. Prior to closing, Plaintiffs objected to the breadth of the assignment of rights that Tyco Pty intended to purchase, and, accordingly, the sale was not completed.

31. Also, Section 2.2 of the License Agreements prohibited Tyco Pty from granting sub-licences of any of the worldwide licence rights granted to it under Section 2.1 of said Agreements to any of its "related bodies corporate" without first obtaining the consent of Lunkenheimer. *Id.,* at §§2.2(a) through (c).

32. Nevertheless Tyco Pty or other Plaintiffs materially and repeatedly breached said License Agreements by transferring substantial assets covered by the License Agreements to corporate bodies in India and China, among others, without the prior consent of Plaintiffs.

33. Such failures constituted not only material and repeated breaches of the License Agreements, but they also were done knowingly and egregiously by Defendants so as to constitute tortious and fraudulent breaches of said Licence Agreements.

34. Plaintiffs were induced to enter into the Licence Agreements and relied on representations made by Tyco Pty as to its intention to pay the required periodic fees specified in said Licence Agreements.

35. Although some payments have been made, Tyco Pty failed to provide any documentation or any documentation that adequately supported the purported payments.

36. Section 7.1 of the License Agreements requires Tyco Pty to "keep and maintain for the Term separate and complete records and books of account relating to Net Sales, which must contain clear particulars sufficient to enable the calculation of all amounts payable . . ."

37. Section 7.2 of the License Agreements requires Tyco Pty to conduct an audit "during normal business hours and upon reasonable notice." Said Section 7.2 also permits Plaintiffs' "authorised representatives (including accountants and auditors)" to "inspect the

records and books of account" described in Section 7.1 of the Licence Agreements. Said Section 7.2 also permitted Plaintiffs to "take such copies and extracts of the records and books of account as it thinks fit," and it required Tyco Pty to "give Lunkenheimer such assistance as Lunkenheimer reasonably requires, including by including by providing access to "facilities, hardware, software and documents, to enable Lunkenheimer to inspect the records and books of account and to ascertain and verify all amounts payable by Tyco to Lunkenheimer under . . . [the Licence Agreements]."

38. Pursuant to reasonable notice and agreement by Tyco Pty, Plaintiffs and their auditors traveled from the United States to Australia in October 2008 to conduct a Section 7.2 inspection and audit.

39. The primary (but not exclusive) purpose of the audit was to verify royalty payments from Tyco Pty to Plaintiffs based on sales by Tyco Pty of Lunkenheimer products and services from August 28, 2002 to September 30, 3007 and including Tyco Pty's sales of such products to the date of the visit.

40. An additional purpose of the audit was to gather information to verify Tyco Pty's compliance with the Licence Agreements.

41. Tyco Pty materially breached the Licence Agreements by failing to provide Plaintiffs and their auditors access to the information and documents to which it was entitled for purposes of the audit. See §§7.1 and 7.2.

42. The third purpose of the audit was to locate the equipment, intellectual property (documents) and records of inventory that originated in 2002 with a company known as John Valves of Ballarat, Victoria, Australia.

43. Plaintiffs lawfully (under Australia law) acquired certain property of John

Valves property and all rights to that property, in June 2002, and had in good faith, via an intermediary administrator for the John Valves property in receivership, arranged for Tyco Pty to take custody of the property in Ballarat, Australia, in September/October 2002.

44. The John Valves property filled several semi-tractor trailer truckloads, were "lost" by Tyco Pty, and have never been properly accounted for by Tyco Pty, including without limitation verification of the amount of the property, its disposition, and whether Tyco Pty received insurance or other payments for all or part of the value of said property.

### COUNT I — DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND FOR AN ACCOUNTING

45. Plaintiffs incorporate herein by reference, as though fully restated, the allegations contained in paragraphs 1 through 44, above.

46. Under the authority granted to this Court by 28 U.S.C. §2201 and Fed.R.Civ.P. 57, Plaintiffs request a declaration that the Licence Agreements are void because Tyco Pty materially and repeatedly breached and thereby repudiated them.

47. Such repeated and material breaches have been described above and include, but are not limited to, Tyco Pty's or other Defendants' transfer of valuable assets covered by the License Agreements without first obtaining Plaintiffs' consent thereto, failure to make all of the payments required by the Licence Agreements prior to August 2007, failure to make the required payments to Plaintiffs after August 2007 despite Defendants' continued manufacture and/or sale of licensed products, Defendants' failure to account for the missing John Valves property in any way, and Defendants' intentional failure to permit Plaintiffs' auditors access to documents and information required to be made available to said Plaintiffs by the said Licence Agreements.

48.     Plaintiffs also request a declaration that the Licence Agreements' purchase option (§5.1) is void due to Defendants' repeated and material breaches of said License Agreements described in the immediately preceding paragraph.

49.     In addition, Plaintiffs seek an order requiring Defendants to properly account for the adequacy of the payments thus far made to the Plaintiffs, the payments due to the plaintiffs since August 2007, and the payments or other consideration the Defendants received for the "lost" John Valves property.

50.     Plaintiffs also seek an injunction requiring Defendants to properly account for the missing John Valves property as well as any monetary or other consideration Defendants received and are still due an owing to pay, together with interest at the rate provided by law.

51.     Plaintiffs also seek an order invalidating the "Governing law and jurisdiction" provision in the License Agreements. *Id.* at §18.1.

### COUNT II - BREACH OF CONTRACT AND/OR TORTIOUS BREACH OF CONTRACT

52.     Plaintiffs incorporate herein by reference, as though fully restated, the allegations contained in paragraphs 1 through 51, above.

53.     Defendants' material breaches of the Licence Agreements proximately resulted from their negligent or intentional misrepresentations of and failure to pay Plaintiffs the amounts due to said Plaintiffs under the Licence Agreements.

54.     Plaintiffs relied to their detriment on Defendants' negligent or intentional misrepresentations of the amounts due to Plaintiffs under the Licence Agreements from August 2002 to August 2007.

55. Plaintiffs have also been materially damaged by the other negligent or knowing or intentional repeated material breaches of the Licence Agreements described above.

56. By virtue of Defendants' knowing or intentional acts in material breach of the Licence Agreements, Plaintiffs are entitled to monetary damages, with interest and punitive damages, in an amount to be determined.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, jointly or severally, as the law allows, for declaratory relief, an accounting, and for all monetary compensatory and punitive damages to which they are entitled, together with interest, costs, and attorney fees.

        /s/ Edward R. Goldman
Edward R. Goldman (Ohio Reg. 0003530)
Donald C. Adams, Jr. (Ohio Reg. 0027101)
Robert H. Siegel (Ohio Reg. 0010507)
Trial Attorneys for Plaintiffs
RENDIGS, FRY, KIELY & DENNIS, L.L.P.
One West Fourth Street
Suite 900
Cincinnati, Ohio 45202-3688
Tel:   (513) 381-9220 (ERG)
       (513) 381-9361 (DCA)
       (513) 381-9296 (RHS)
Fax:  (513) 381-9206
E-M:  erg@rendigs.com
        dca@rendigs.com
        rhs@rendigs.com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

        /s/ Edward R. Goldman
Edward R. Goldman