**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

THE LUNKENHEIMER COMPANY,
USWATTA PARTNERS, LLC, USWATTA
PARTNERS and CONSOLIDATED VALVES,
LTD.,

                                    *Plaintiffs,*

                *v.*

TYCO FLOW CONTROL PACIFIC PTY, TYCO
VALVES & CONTROLS, LP, TV & C GP
HOLDING LLC,

                                    *Defendants.*

TYCO FLOW CONTROL PACIFIC PTY,  New
South Wales Australia Proprietary Limited
Company,

                        *Counterclaim Plaintiff,*

                *v.*

THE LUNKENHEIMER COMPANY, THE
LUNKENHEIMER COMPANY INC.,
CONFLOW MANUFACTURING INC., STAR-
LET CORPORATION, CON-VALVE
INTERNATIONAL, INC., THE
LUNKENHEIMER COMPANY LTD.,
USWATTA PARTNERS, USWATTA
PARTNERS, LLC, CONSOLIDATED VALVES,
LTD, LUNKENHEIMER-ENERGOVALVES,
INC., DULWICH-LONDON LIMITED
PARTNERSHIP, CAMBERWELL-AUSTRICH
LIMITED PARTNERSHIP, DR. BERNARD
DESILVA, personally and doing business as any
other Plaintiff/Counterclaim Defendant, DR.
BERNARD DESILVA, Executor (and any
successors thereto) of the ESTATE OF SHEILA
DESILVA, Deceased, An Estate raised in the State
of Ohio, Hamilton County, Ohio, BERNARD
MICHAEL DESILVA, NILMINI KLUR,

Case No.: **1:11-CV- 824-SAS-KLL**

**Judge Timothy S. Black.
Magistrate Judge Lipkovitz**

**<u>MOTION BY
INTERVENOR/COUNTERCLAIM
DEFENDANT NILMINI KLUR TO
DISMISS THE COUNTERCLAIMS
OF TYCO FLOW CONTROL
PACIFIC PTY</u>**

**<u>DECLARATION OF ROBERT A.
MCMAHON ATTACHED
(INCLUDING EXHIBITS)</u>**

NILMINI KLUR and BERNARD MICHAEL     :
DESILVA, Trustees (and any predecessors or     :
successors thereto) of THE CEYLON     :
IRREVOCABLE TRUST dated September 12,     :
1994, and any amendments thereto, DR.     :
BERNARD DESILVA, Trustee (and any     :
predecessors or successors thereto) of the     :
PADDINGTON-LIFE TRUST dated October 12,     :
1990 as made irrevocable on October 26, 1994,     :
also referred to as PADDINGTON     :
IRREVOCABLE TRUST, DR. BERNARD     :
DESILVA, Trustee (and any predecessors or     :
successors thereto) of the SANDHURST TRUST     :
dated October 12, 1990, and any amendments     :
thereto, also referred to as BERNARD DESILVA     :
AMENDED AND RESTATED SANDHURST     :
TRUST and JOHN DOE, JANE DOE, ABC     :
CORPORATIONS, ABC PARTNERSHIPS     :
and/or ABC TRUSTS,     :
                                                                  :
                          *Counterclaim Defendants.*  :

1.      Pursuant to Fed. R. Civ. P. 12(b), Nilmini Klur respectfully moves to dismiss the Counterclaims of Defendant/Counterclaim Plaintiff Tyco Flow Control Pacific Pty together with such other and further relief as the Court deems just and proper.

2.      This motion is supported by the attached Memorandum of Law and the accompanying Declaration of Robert A. McMahon and the exhibits attached thereto.

Respectfully submitted,

**EBERLY MCMAHON LLC**

By:      /s/ Robert A. McMahon
          Robert A. McMahon (0064319)
          2321 Kemper Lane
          Suite 100
          Cincinnati, Ohio 45206
          Telephone No.: (513) 533-3441
          E-Mail: bmcmahon@emh-law.com

***-and-***

2

**SCHLAM STONE & DOLAN LLP**

By:     /s/ Jeffrey M. Eilender
        Jeffrey M. Eilender (admitted *pro hac vice*)
        26 Broadway
        New York, New York 10004
        Telephone No.: (212) 344-5400
        E-Mail: jme@schlamstone.com

        *Attorneys for Nilmini Klur*

## MEMORANDUM IN SUPPORT

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Counterclaim Plaintiff Tyco Flow Control Pacific Pty ("Tyco") has asserted a laundry list of counterclaims against Intervenor/Counterclaim Defendant Nilmini Klur ("Klur") and the Plaintiffs and other Counterclaim Defendants in this action.  Almost all of Tyco's counterclaims fail to state a claim, are timed-barred, or both, and thus should be dismissed.

Tyco has taken a simple dispute and tried to turn it into something complicated in hopes of obtaining a windfall at the expense of Plaintiffs and the Counterclaim Defendants.  In 2002, Tyco and Plaintiffs the Lunkenheimer Company and Consolidated Valves, Ltd. (collectively "Lunkenheimer") entered into a license agreement under which Tyco paid Lunkenheimer for using trademarks and other valuable intellectual property relating to slurry valves.  The license gave Tyco the option to purchase the intellectual property.  In 2007, Tyco told Lunkenheimer that it wanted to exercise the option; Lunkenheimer refused, claiming that Tyco had breached the license.  Tyco claims that it was Lunkenheimer that breached the license by refusing to close on the sale and to return license fees it claims to have overpaid.

Accepting, as Klur must do on this motion, the truth of Tyco's factual allegations, Tyco has stated a counterclaim against Lunkenheimer for breach of contract for refusing to close on the sale of Lunkenheimer's intellectual property.  However, Tyco has larded its counterclaims with claims without any reasonable basis in the law or the facts, even as Tyco alleges them.  The many reasons Tyco's counterclaims should be dismissed are discussed in detail below, but their deficiencies include:

- Claiming that Tyco owns Lunkenheimer's intellectual property even though the sale never closed and thus Tyco never paid the over $1.5 million it was obligated to pay for it.

- Asserting claims against the Counterclaim Defendants collectively, without providing any basis for the claims against any particular Counterclaim Defendants, and in particular Klur, and without any plausible basis for those claims being discernable from Tyco's counterclaims.

- Asserting claims even though they are barred by the statute of limitations and laches. This is particularly true with respect to the Counterclaim Defendants, including Klur, who were added to the counterclaims on May 2, 2014, because there is no relation-back to the beginning of the lawsuit for newly-added parties.

- Asserting unjust enrichment, promissory estoppel and fraud claims that impermissibly duplicate its breach of contract claim.

- Asserting claims under the Lanham Act even though Tyco never paid for—and thus does not own—Lunkenheimer's intellectual property and without pleading any factual basis for the claim that Plaintiffs or Counterclaim Defendants used that intellectual property.

Klur asks the Court to strip all of the legally groundless and factually baseless claims—including all claims against her—out of Tyco's counterclaims so that the parties can focus on the simple dispute at issue here: who breached the license, Tyco or Lunkenheimer, and how.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this dispute are relatively simple. In August 2002, Lunkenheimer and CVL licensed certain intellectual property to Tyco (the "License", McMahon Decl. Ex. 1). (*See* Cclm. ¶¶ 24 – 28; *see also* Am. Compl. ¶ 14.) The License "is governed by the law in force in New South Wales." (License § 18.1(a).) The License covered the use of various categories of intellectual property (the "Licensed Intellectual Property") for use in slurry valves—large, special application, industrial valves. (*Id.* § 2.1.) It provided for an initial payment and subsequent periodic license payments (including quarterly minimum payments). (*Id.* § 6.) The parties dispute whether Tyco made all required payments; Tyco alleges that it did; indeed it alleges that it overpaid. (Cclm ¶ 92.)

The License had a term of 15 years, (License § 13.1), but it gave Tyco the right "[a]t any time prior to the fifth anniversary of the date of" the License to "notify Lunkenheimer that Tyco wishe[d] to purchase the Licensed Intellectual property for the Purchase Price," (*id.* § 5.1). The

License provided a procedure for Tyco to give notice of its intention to exercise the purchase option, a formula for calculating the "Purchase Price" for the Licensed Intellectual Property, and conditions for closing the sale. (*Id.* § 5.) Tyco gave notice of its intent to exercise the option, (Cclm ¶¶ 63 – 64), but Plaintiffs interjected various objections to closing and the closing never occurred (*id.* ¶ 69). Because Plaintiffs refused to close, Tyco never paid the Purchase Price.

Plaintiffs allege in their Complaint that Tyco breached the License in a host of ways, including failing to (1) provide detailed net sales, statements and/or calculations of payments to support its fee payments; (2) provide access to supporting documentation or cooperate with Lunkenheimer's audit; (3) make all royalty payments; and (4) get Lunkenheimer's permission before sublicensing the Licensed Intellectual Property. (Am. Compl. ¶¶ 22 – 29.) Tyco, of course alleges that it was Plaintiffs who breached the License by, among other things, refusing to close on the sale of the Licensed Intellectual Property, refusing to return alleged overpayments of licensing fees and breaching various representations and warranties in the License. (Cclm ¶ 92.)

Plaintiffs brought this action on November 22, 2011. (McMahon Decl. ¶ 3.) On August 3, 2012, Tyco answered and asserted counterclaims against a handful of counterclaim defendants. (*Id.* ¶ 5.) On September 4, 2013, Plaintiffs filed an Amended Complaint. (*Id.* Ex. 2.) On March 14, 2014, Klur was granted permission to intervene in this action to protect whatever beneficial interests she might have in the Licensed Intellectual Property. (*Id.* ¶ 7.) On May 2, 2014, Tyco filed amended counterclaims against Plaintiffs and the counterclaim defendants named in the August 3, 2012, as well as a number of other, newly-named counterclaim defendants, including Klur (collectively, the "Counterclaim Defendants"). (*Id.* Exs. 3 (the "Counterclaims") and 4.)[1]

---

[1] Tyco filed two documents with counterclaims; one in response to the Amended Complaint and the other in response to Klur's Complaint. (McMahon Decl. Exs. 3 and 4 respectively.) This motion covers both of Tyco's pleadings.

3

III.     **THE COUNTERCLAIMS SHOULD BE DISMISSED**

A.     **Legal Framework.**

In general, the Court must accept the factual allegations in Tyco's counterclaim as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009).  However, the Court need only accept as true facts that are well-pled and that comply with the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007), and *Iqbal*, 556 U.S. at 675.  Tyco's counterclaims must "state[] a **plausible** claim for relief" to "survive[] a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (emphasis added).  As the Sixth Circuit explained in *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009), Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' [but] it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).  Further, to survive a motion to dismiss, Tyco's counterclaims "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is **plausible on its face.**'"  *Id.* (emphasis added).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Further, while the Court must accept all well-pleaded factual allegations in the counterclaims as true, it need not "'accept as true a **legal conclusion couched as a factual allegation**.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265 (1986)) (emphasis added); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion under 12(b)(6).).

**B.**   **Tyco's First and Seventh Counts for a Declaration That it Owns the Licensed Intellectual Property Should Be Dismissed.**

Tyco's First and Seventh Counts seek a declaration that "PFCP is the sole and exclusive owner of the "Licensed Intellectual Property." (Cclm. at 29, ¶¶ 153, 158.)  In its Seventh Count, Tyco also seeks declarations regarding the ownership of the Lunkenheimer Trademarks and the Lunkenheimer Know How.  (*Id.* ¶¶ 154 – 163.)  These claims should be dismissed because they are contradicted by the unambiguous terms of the License, which the Court can interpret as a matter of law, and the facts alleged in the Counterclaims.

**First**, the License gave Tyco the right "[a]t any time prior to the fifth anniversary of the date of" the license to "notify Lunkenheimer that Tyco wishes to purchase the Licensed Intellectual Property for the Purchase Price." (License § 5.2.)  Tyco alleges that it provided Plaintiffs timely and proper notice of its intention to exercise its option to purchase the Licensed Intellectual Property. (*See* Cclm ¶¶ 63 – 64; *see also* Cclm ¶¶ 149 – 155.)

Section 5.3 of the License sets forth the conditions for the "[c]ompletion of the [s]ale." (License § 5.3.)  Those conditions included Lunkenheimer providing various documents to Tyco and Tyco paying Lunkenheimer "the Purchase Price . . . together with any outstanding license fees calculated up to and including the date of purchase."  (*Id.*)  **None** of those conditions to the completion of the sale are alleged to have been completed.  Indeed, Tyco alleges that Plaintiffs breached the License by refusing to perform those conditions.  (Cclm ¶ 92.a.)  Because the conditions precedent to closing the sale were not performed, the sale did not occur and by the terms of the License, Tyco did not purchase the Intellectual property.

Indeed, one need only consider for a moment Tyco's argument for ownership of the Licensed Intellectual Property to see why it fails.  It is undisputed that Tyco **never paid** the Purchase Price. How can it be that Tyco now owns the Licensed Intellectual Property when it **never paid for it**?

5

Indeed, Tyco not only did not pay the Purchase Price for the Licensed Intellectual Property, it has continued to use it for the ensuing over six years and has **never paid a dime** for the use of that property in all those years.  Whatever may be the Court's determination regarding who breached the License and how, one thing is clear: **none of the conditions for closing the sale has ever been met** and so there is no basis for a declaration that Tyco owns the Licensed Intellectual Property.  Tyco's Eleventh and Twelfth Affirmative Defenses, which also are based on the theory that Tyco now owns the Licensed Intellectual Property should, for the same reasons, be dismissed.

**Second**, Tyco justifies the need for a declaration of its ownership of the Licensed Intellectual Property by alleging that "Klur recently intervened . . . and has asserted a claim that she has some rights in and to the Licensed Intellectual Property." (Cclm. ¶ 84.)  However, Klur's intervention does not relate to the closing of the sale of the Licensed Intellectual Property, it relates to whether the trust of which she is a beneficiary is being cheated by her father.

**Third**, the declaration Tyco seeks in its Seventh Count that Lunkenheimer abandoned the Licensed Intellectual Property in 2002 and that the Lunkenheimer Know How is no longer protectable is incomprehensible.  (Cclm ¶¶ 156 – 163.)  Tyco's own counterclaims allege that Plaintiffs licensed (or at worst, intended to license) the Licensed Intellectual Property to Tyco in 2002, including selling the Current Equipment to it, and Tyco has exploited that intellectual property to its advantage since then (but, of course, it has since 2007 refused to pay for the privilege).  Indeed, Tyco received the Current Equipment directly from Lunkenheimer's prior Australian licensee, not from Lunkenheimer.  (Cclm. ¶¶ 38 – 41.) If Tyco has failed to protect the confidentiality or utility of the Licensed Intellectual Property since 2002, that is Tyco's fault (and a breach of the License), not Plaintiffs'.  Tyco's Fourteenth and Twenty-Fifth Affirmative Defenses, which also are based on

the theory that Lunkenheimer abandoned or failed to protect the Licensed Intellectual Property, should, for the same reasons, be dismissed.

**Fourth**, to the extent Tyco asserts a non-frivolous basis for the declaration it seeks, its counts for declaratory judgment still should be dismissed as duplicative of Tyco's breach of contract claim. *See Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (dismissing declaratory judgment claim as duplicative).

### C.  <u>Tyco's Second, Fourth, Fifth, Sixth, Eighth, Ninth and Tenth Counts Are, For the Most Part, Time-Barred.</u>

**First**, Tyco's claims in its Second Count that Plaintiffs breached the warranties in Sections 11.1 and 11.2 of the License (Cclm ¶¶ 9(c) - (d)), are time-barred.[2]  The warranties were made when the License was signed in 2002.  (Cclm ¶¶ 32 – 36.)  The statute of limitations for Tyco's breach of contract claim is six years.  *See* New South Wales Limitation Act 1969 § 14(1).  This action was initiated on November 22, 2011.  Thus, all claims against Plaintiffs relating to warranties made in 2002 are time-barred.

**Second**, Tyco's unjust enrichment claims in its Fourth and Tenth Counts relate to payments it allegedly made between 2002 and 2007, (Cclm ¶¶ 101 – 103), including particularly an initial license payment of $500,000 and the "elimination of a debt owed to John Valves Pty Limited" of $900,000, both made in 2002, (Cclm ¶ 101).  The statute of limitations for Tyco's unjust enrichment claim is six years.  *See* Ohio Rev. Code Ann. § 2305.07 ("an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be

---

[2] Tyco alleges that Plaintiffs breached Section 11.4 of the License, which provided that "the signatories to the License Agreements relied upon the representations, warranties, disclosures and acknowledgements made in Section 11."  (Cclm ¶ 92(e).)  It has not stated how Plaintiffs could have breached this provision—which states that they agree that Tyco relied on the representations in the License.  At any rate, since this allegation relates to a representation made at signing of the License, it is time-barred.

brought within six years after the cause thereof accrued."). Thus, all claims relating to payments Plaintiffs allegedly received prior to November 22, 2005, are time-barred. Of course, Tyco's claims against the Counterclaim Defendants do not relate back to the date of the Complaint. *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("an amendment which **adds a new party** creates a new cause of action and there is **no relation back** to the original filing for purposes of limitations.") Thus, unjust enrichment claims against the Counterclaim Defendants relating to events prior to August 3, 2006, for the original counterclaim defendants, and **May 2, 2008**, for the newly-named counterclaim defendants—including Klur—are time-barred. Tyco's claims also are, to the extent barred by the statute of limitations, barred by laches.

**Third**, the statute of limitations for a claim of trademark infringement is two years. *See* Ohio Rev. Code Ann. § 2305.10 ("an action for . . . injuring personal property shall be brought within two years after the cause of action accrues); *U.S. Playing Card Co. v. The Bicycle Club*, 119 Ohio App.3d 597 (Ohio Ct. of App. 1st Dist. 1997) (Ohio statute of limitations "for trademark infringement and dilution is a two-year statute of limitations for injury to personal property under R.C. 2305.10"); *see also Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir.2002) ("a delay beyond the" statute of limitations "is presumptively prejudicial and unreasonable" and thus grounds for dismissal on the ground of laches). Thus, any Lanham Act claim by Tyco—regardless of the basis—is time-barred as to Plaintiffs if it occurred prior to November 22, 2009, and May 2, 2012, as to Klur.

In particular, to the extent Tyco's Lanham Act claims are based on the license to Cincinnati Valve Company ("CVC") (Cclm ¶¶ 70 – 71, 118), those claims are time barred. Tyco alleges that [i]n September 2007, . . . the Lunkenheimer Company had already purported to license the same Lunkenheimer Trademarks to" CVC. (Cclm. ¶ 70.) In fact, Lunkenheimer entered into the License

8

with CVC on February 1, **1994**—twenty years ago and eight years before Tyco entered into the License. (McMahon Decl. Ex. 5 at 1.)[3]

**Fourth**, the allegations in Tyco's Eighth Count for Promissory Estoppel and Ninth Count for Fraud/Fraudulent Misrepresentation/Fraudulent Inducement relate to statements Plaintiffs allegedly made in 2002, when the License was negotiated and signed. All claims relating to promises/representations Plaintiffs allegedly made in 2002 are time-barred. *See* Ohio Rev. Code Ann. § 2305.09 (providing that an action for "relief on the ground of fraud" "shall be brought within four years after the cause thereof accrued"); Ohio Rev. Code Ann. § 2305.07 ("an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.").

### D.     Tyco's Second Count for Breach of Contract Fails to State a Claim Relating to Renewing Trademark Registrations and Dispute Resolution

Tyco's breach of contract claims that are not time-barred are—for the most part—invalid. The only claim that survives is whether Plaintiffs breached the License by refusing to close on the sale of the Licensed Intellectual Property. (Cclm ¶¶ 92(a), 92(g).)

**First**, Tyco's claim that Plaintiffs breached their duty to "at [their] own cost take all such action as is reasonably necessary . . . to protect the Licensed Intellectual Property" because they failed "to file trademark renewals, allowing trademark registrations to expire and losing registrations

---

[3] Tyco refers to the CVC license in its counterclaims but, despite having used it as an exhibit at the June 2013 deposition of Russell McMurray of CVC, fails to disclose its terms to the Court. "A defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (internal quotations and citations omitted). Thus, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (internal quotations and citations omitted) (emphasis added). Thus, the Court can properly consider on this motion the text of the CVC license.

for the Lunkenheimer Trademarks in certain countries to third-parties," (Cclm ¶ 92(b)), fails for several reasons. Tyco's claim for failure to "protect" the Licensed Intellectual Property" relates to alleged failures taking place after "September 21, 2007." (Cclm. at 43 (Prayer for Relief item f.).) Yet after the parties' falling out in the fall of 2007, Tyco **stopped performing** under the License and any continuing duty Plaintiffs had under the License was excused.

At any rate, the License required Lunkenheimer to "protect" the Licensed Intellectual Property. Section 9.3 relates to protecting trademarks from infringement, not renewing trademark registration (which is not "protection" is any reasonable sense). Indeed, Section 9.3 is entitled "**Proceedings** by Lunkenheimer." (License § 9.3 (emphasis added).) Tyco's counterclaims omit the parenthetical "(including the commencement and conduct of **legal proceedings**)" (*id.* § 9.3(a) (emphasis added)), from the language they quote from the License. Moreover, Section 9.5 of the License provides Tyco's remedy for any failure by Lunkenheimer to "commence proceedings under clause 9.3," and that is to undertake action itself at its own expense after providing notice to Lunkenheimer. (*Id.* § 9.5(a).) Tyco does not allege that it gave such notice or otherwise availed itself of the remedy the License provided it for a failure by Lunkenheimer to "protect" the Licensed Intellectual Property.

**Second**, Tyco has waived any claim relating to Plaintiffs' alleged failure to follow the dispute resolution requirements of the License. (Cclm. ¶ 92(f).) The License provided that "a party to" the License could "not commence any court of arbitration proceedings relating to" a claim arising out of the License "unless it . . . compli[ed]" with the License's dispute resolution procedures. (License § 15.1.) Tyco alleges that despite negotiating for years with Tyco, Plaintiffs nonetheless failed to meet the pre-suit dispute resolution requirements. (Cclm. ¶ 92(f).)

Tyco has waived this claim by participating in this action for over three years, including demanding (but not giving) document discovery, taking depositions and asserting counterclaims. *See, e.g.*, *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010) (finding waiver of ADR provision where the defendants "consistently and actively litigated . . . action in court") *Hausser & Taylor, LLP v. Accelerated Systems Integration, Inc.*, No. 84748, 2005 WL 563977 (Ohio Ct. of App., 8th Dist., Cuyahoga County March 10, 2005) ("we find appellants waived their rights by participating in the litigation including pretrials, filing numerous pleadings including a counterclaim . . . ."); *Crowe Ents., Inc. v. Amicon Med. Grp., Inc.*, No. 2013–P–0031, 2014 WL 31398 (Ohio Ct. of App., 11th Dist., Portage County January 6, 2014) ("Though we recognize this claim dispute mechanism is not strictly speaking an arbitration clause, the **principles regarding waiver of arbitration apply with equal force**, . . . placing the merits of the claim before the factfinder unequivocally indicates a willingness to be bound by its findings, notwithstanding the claim dispute mechanism.") (emphasis added). For the same reasons, Tyco's Ninth Affirmative Defense, which is based on its dispute resolution claim, should be dismissed.

### E.  Tyco is not Entitled to Indemnification by Plaintiffs.

In its Third Count, Tyco seeks indemnification from Plaintiffs under Section 12 of the License. Tyco's claim fails because Section 12 does not entitle Tyco to indemnification for any claim in this action. Section 12 of the License provides:

> Lunkenheimer indemnifies Tyco and agrees to keep it indemnified against al damages, costs and expenses (including legal costs and expenses on an indemnity basis) in respect to any claims, demands, actions or proceedings which may be brought or commenced **against Tyco** in relation to or arising out of any **breach by Lunkenheimer of a warranty contained in clause 11.2**.

(License § 12 (emphasis added).) Section 11.2 contains three narrow warranties. They are that, except as disclosed:

(no actions) there **are no actions, claims, proceedings or investigations pending or threatened** against [Lunkenheimer] or by, against or before any person which may have a material effect on the subject matter of this document; and in particular,

no infringement) **no proceedings have been commenced or threatened** against it for infringement by it of any Intellectual Property Rights of any person; and

(license does not infringe) the license granted under this document by Lunkenheimer **does not infringe any Intellectual Property Rights of any person**.

(*Id.* § 11.2 (emphasis added).)

**First**, Tyco does not allege—nor could it plausibly do so—that any claims have been brought against it relating to any actions, claims, proceedings or investigations that were commenced, pending or threatened against Lunkenheimer in 2002, when the License was signed.

**Second**, to the extent Tyco is claiming that it is entitled to indemnification because it **fears** that "[c]ertain non-signatory Plaintiffs/Counterclaim Defendants and/or third parties **may own** all or a portion of the rights in and to the Licensed Intellectual Property," (Cclm ¶ 97 (emphasis added)), it fails to state a claim for indemnification under the License for three reasons.

As an initial matter, the representation that the License does not infringe the rights of any person was made in the present tense in 2002. Thus to state a claim, Tyco would have to allege that a third-party has sued it because **in 2002**, when it granted the License, Lunkenheimer was breaching the third-party's intellectual property rights. Tyco has made no such allegation.

Further, Tyco's complaint alleges that non-signatories "**may** own" the Licensed Intellectual Property and that "**[i]f**" Plaintiffs "breached the warranty in 11.2, they are jointly and severally liable to indemnify" Tyco "for all damages, costs and expenses" Tyco incurs "that relate to or arise out of that breach." (Cclm ¶¶ 97 – 98 (emphasis added).) The License does not entitle Tyco to

12

indemnification for claims that **may** brought and expenses that **might** be incurred, it is entitled to indemnification only for claims that **have** been brought.

Moreover, Section 11.2 does not contain a warranty regarding the **ownership** of the Licensed Intellectual Property; it contains a representation that the License "does not **infringe** any Intellectual Property Rights of any person." Tyco would be entitled to indemnification only if claims were asserted **against Tyco** on the ground that the License **infringes** the Intellectual Property Rights of any person. Tyco has not alleged—and cannot plausibly allege—that anyone has brought claims **against Tyco** based on **infringement** (not ownership) **by Lunkenheimer**.

In short, Tyco cannot claim indemnification for expenses it has not incurred for defending claims that have not been brought against it. Tyco's Twenty-Fourth Affirmative Defense to the Complaint asserts that Tyco is entitled to indemnification under the License. For the reasons stated above, Tyco's Twenty-Fourth Affirmative Defense also should be dismissed.

**F.** **Tyco's Unjust Enrichment Counts Should be Dismissed—in Whole or Part— on Multiple Grounds.**

**1.** **Legal Framework.**

In its Fourth Count, Tyco alleges that Plaintiffs/Counterclaim Defendants were unjustly enriched because the goodwill associated with the Licensed Intellectual Property was enhanced by Tyco's use of it, Plaintiffs received royalty payments under the License that were set at a "premium" because of the purchase option included in the License and because Tyco overpaid royalty payments due under the License. (Cclm ¶¶ 101 – 111.) In its Tenth Count, Tyco goes further and claims unjust enrichment in connection with **everything** it paid Plaintiffs (Cclm ¶¶ 189 – 190), continuing its theme of wanting everything and paying nothing. To prevail on its unjust enrichment claims, Tyco "must demonstrate (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances

13

where it would be unjust to do so without payment." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009), quoting *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984) (internal quotations omitted).  Even if Tyco's unjust enrichment claims were not (and to the extent they are not) time-barred, those claims (1) fail to state a claim to the extent they are duplicative of its Second Count for breach of contract; (2) fail to state a claim against any Counterclaim Defendant because they fail plausibly to allege that they were enriched by Tyco; and (3) fail to state a claim against any Counterclaim Defendant because they did not receive a benefit from Tyco.

### 2. Tyco's Fourth Count Fails to State a Claim to the Extent it is Duplicative of its Second Count for Breach of Contract.

In simple terms, Tyco claims that Plaintiffs/Counterclaim Defendants were unjustly enriched because Tyco made payments required by the License but Plaintiffs did not sell the Licensed Intellectual Property to Tyco as the License required.  Because it merely restates Tyco's breach of contract claim as a claim for unjust enrichment, Tyco's Fourth Count should be dismissed.  *See Wuliger*, 567 F.3d at 799 ("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject."); *Kwikcolor Sand v. Fairmount Minerals Ltd.*, No. 96717, 2011 WL 6775580 (December 22, 2001) ("In light of the fact that a valid and enforceable contract exists, Ohio law precludes [plaintiff's] claim for unjust enrichment."); *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir.1975) ("Ohio permits no recovery on [unjust enrichment or quasi-contract] theories where . . . an 'express contract cover(s) the same subject . . . .'").

**3.    Tyco's Fourth and Tenth Counts Against the Counterclaim Defendants Should be Dismissed Because They Fail Plausibly to Allege that Any Counterclaim Defendants Were Enriched by Tyco.**

Tyco alleges that it made payments under the License to Dr. DeSilva, Lunkenheimer, Inc. and CVL.  (Cclm ¶¶ 38, 48 – 49.)  However, it has asserted counterclaims for unjust enrichment against not just them, but all of the Counterclaim Defendants.  The Counterclaims fail to describe when or how each of the Counterclaim Defendants was enriched by Tyco or even facts from which one could reasonably infer those facts; instead, they are all lumped together and referred to collectively, along with Plaintiffs.  Claims that lump together defendants without giving each defendant notice of what she **individually** is alleged to have done fail to meet the requirements of Rule 8 and must be dismissed.  *See, e.g.*, *Bondex Intern., Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011) (rejecting argument that "pleadings' generic references to the misconduct of 'all Defendants'" met "the Federal Rules' notice-pleading standard."); *see also Trapp v. Kimpel*, No. 3:13-CV-18, 2013 WL 4510570, at *5 (S.D. Ohio Aug. 23, 2013) ("The Court concludes that, with regard to all Defendants, the Complaint fails to satisfy the basis pleading standard set forth in Rule 8(a)(2) because the Complaint fails to give fair notice of the constitutional claims against each Defendant or the grounds upon which such constitutional claims are based."); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (Rule 8 not met where a complaint uses either "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom . . . .").

Moreover, to survive a motion to dismiss, Tyco's counterclaims "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is **plausible on its face**.'"  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009).  It is in particular beyond implausible, based on Tyco's allegations, that Klur was enriched by Tyco, and thus the unjust enrichment against her should be dismissed.

15

**4.** **Tyco's Fourth and Tenth Counts Fail to State a Claim Against Any Counterclaim Defendant Because They Were Not Enriched by Tyco.**

Tyco suggests that paying money to Lunkenheimer or CVL indirectly benefited persons or entities that have ownership interests in those companies and that Tyco's use of the Licensed Intellectual Property has made it more valuable, indirectly benefiting persons or entities that have ownership interests in the Licensed Intellectual Property. To the extent Tyco is making a claim for such indirect benefits, that claim must be dismissed. Tyco cannot claim unjust enrichment against persons it did not directly enrich. *See, e.g.*, *Bower v. Int'l Bus. Mach., Inc.*, 495 F. Supp. 2d 837, 844-45 (S.D.Ohio 2007) (dismissing unjust enrichment claims on manufacturer when "the only direct benefit the plaintiff conferred was the money she paid to retailers who sold the software or individual computers containing the [manufacturer's] software"); *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278 (2005) ("The rule of law is that an **indirect purchaser cannot assert** a common-law claim for . . . **unjust enrichment** against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser" and where "no **economic transaction** occurred **between**" plaintiff and **defendant**, the plaintiff "cannot establish that" the defendant "retained any benefit to which it is not justly entitled."). As to Klur in particular, there is no plausible claim that Tyco conferred a direct benefit on her. She claims to be a contingent beneficiary to a trust that owns the entity that owns CVL. This is three steps removed from the payments Tyco made to Plaintiffs.

**G.** **Tyco's Fifth and Sixth Counts for Lanham Act Violations Should be Dismissed; They are Claims Against People Who Did Not Use the Trademarks By Someone Who Does Not Own Them.**

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in

commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  Tyco's claims fail to meet this standard in several ways.

### 1.    Tyco Does Not Own the Trademarks.

As discussed above, Tyco does not own the Licensed Intellectual Property.  Plaintiffs refused to close on the sale and Tyco **never paid** the Purchase Price.  Indeed, since 2007, Tyco has been using the Licensed Intellectual Property and has not paid a dime for the privilege.  Because Tyco does not own the Licensed Intellectual Property, it cannot assert a claim under the Lanham Act in connection with it.

### 2.    The Plaintiffs/Counterclaim Defendants Did Not Use the Trademarks.

As with its unjust enrichment claims, Tyco lumps the Counterclaim Defendants together with the Plaintiffs and gives no hint of how each of the Counterclaim Defendants infringed the Licensed Intellectual Property.  Nor can such facts plausibly be inferred from its allegations.  Indeed, it is inconceivable that Tyco can articulate a good faith basis for alleging that Ms. Klur, who for many years has been struggling with mental illness and currently works as a nanny, used trademarks for slurry valves.  Thus, the Lanham Act claims against all of the Counterclaim Defendants, and particularly Ms. Klur, must be dismissed.

### 3.    Tyco Does Not Allege Any Use that Infringes its Rights Under the License.

Tyco provides scant information regarding the acts that form the basis of its Lanham Act claims.  To the extent Tyco is basing its claim on the CVC license interfering with rights Tyco received through the License, it fails to state a claim.  In the License, Lunkenheimer granted Tyco "an exclusive worldwide license under the Licensed Intellectual Property to Exploit the Licensed Products."  (License § 2.1.)  The Licensed Products were slurry valves described in Schedule 1 to the License.  (*Id.* at 4.)  The CVC license, on the other hand, explicitly excludes from its scope

17

"commercial valves," which the license states will be produced by others. (McMahon Decl. Ex. 5 § 2.) It describes Commercial Valves as being 125 pound valves. (*Id.*) Schedule 1 to the License shows that the Licensed Products in connection with which Tyco was allowed to use the Licensed Intellectual Property were all larger than 125 pounds, and thus not covered by the CVC license. (*See* License Schedule 1.) Thus, there is no overlap between the License and the CVC license.

### H. Tyco's Eighth and Ninth Counts Should Be Dismissed As An End Run Around the License.

Tyco's Eighth and Ninth Counts appear to be based on the premise that even though Plaintiffs agreed to license the Licensed Intellectual Property to Tyco and even though Tyco relied upon those promises and used the Licensed Intellectual Property to its benefit, Tyco now is entitled to have used it—and use it in the future—for **free**. Such claims are ridiculous.

**First**, Tyco's fraud and promissory estoppel claims simply duplicate their breach of contract claim, and thus must be dismissed. "Promissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." *Woods v. Capital Univ.*, 2009-Ohio-5672 (Ohio Ct. of App., 10th Dist. 2009). Here, Tyco bases its claim on representations made in the License. Thus, if it has a claim at all, it has a claim only for breach of the License, not promissory estoppel.

"When a fraud-based claim is simultaneously asserted with a breach of contract claim, a court should look to the existence of the following in determining whether the fraud-based claim is precluded: (1) a legal duty separate from the duty to perform under the contract; (2) a fraudulent misrepresentation collateral or extraneous to the contract; and (3) damages caused by the misrepresentation and unrecoverable as contract damages." *In re Nat'l Century Fin. Enterprises, Inc.*, 846 F. Supp. 2d 828 (S.D. Ohio 2012). Here, Tyco's fraud claim is based solely on representations made in the License and the failure to perform duties required by the License. (Cclm

¶¶ 177 – 183.)  None are "collateral or extraneous to the contract," and—to the extent Tyco alleges damage related to a breach of a representation in the License—that damage would be recoverable as contract damages.  Thus, Tyco fails to state a claim for fraud.

**Second**, Tyco has no plausible claim for damages and none can be discerned from the Counterclaims, except to the extent Tyco asserts a claim for Plaintiffs' refusal to close on the sale of the Licensed Intellectual Property in 2007.  Tyco alleges various representations made to it by Plaintiffs that, according to Tyco, were untrue and upon which Tyco relied.  But except for the refusal to close on the sale, Tyco does not present any plausible, non-conclusory basis for claiming damages.  Plaintiffs promised that Tyco could use the Licensed Intellectual Property and Tyco used it.  Indeed, since 2007, it has used it yet refused to pay for it.

Tyco once again refers to its need to defend claims brought by third-parties for infringing their rights to the Licensed Intellectual Property.  But such claims have not actually been brought, so Tyco has suffered no damages.

Tyco suggests that the License was invalid, and thus worthless.  Tyco ignores that this theory does not mean that it was damaged.  Tyco does not claim that the trademarks covered by the License were invalid.  It does not deny that it used them.  Putting to one side the failure of the fall 2007 sale of the Licensed Intellectual Property to close—Tyco got exactly what it bargained for.  Thus, it has no claim except in connection to the fall 2007 sale of the Licensed Intellectual Property.

**Third**, Tyco's fraud claims should be dismissed because Tyco does not claim—nor could it plausibly do so—that is exercised due diligence regarding the ownership of the Licensed Intellectual Property.  Tyco's allegations show that in lieu of due diligence, it relied upon the representations in the License.  (Cclm ¶ 177.)  Thus, to the extent it has a claim, it is one for breach of contract.  And that claim is time-barred, as discussed above.

19

**Fourth**, to the extent Tyco is claiming damages in its fraud claim for legal expenses or the loss "of license fees that could have been obtained from third-party licensees," (Cclm ¶¶ 184 – 186), such claims are barred by the economic loss doctrine. *See Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414 (2005) ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss.").

Respectfully submitted,

**EBERLY MCMAHON LLC**

By:    /s/ Robert A. McMahon
Robert A. McMahon (0064319)
2321 Kemper Lane
Suite 100
Cincinnati, Ohio 45206
Telephone No.: (513) 533-3441
E-Mail: bmcmahon@emh-law.com

*-and-*

**SCHLAM STONE & DOLAN LLP**

By:    /s/ Jeffrey M. Eilender
Jeffrey M. Eilender (admitted *pro hac vice*)
26 Broadway
New York, New York 10004
Telephone No.: (212) 344-5400
E-Mail: jme@schlamstone.com

*Attorneys for Nilmini Klur*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Robert A. McMahon
Robert A. McMahon (0064319)