**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| THE LUNKENHEIMER COMPANY, *et al.* | ) |
| | ) |
| | ) CASE NO. 1:11-CV-824-TSB-KLL |
| | ) |
| Plaintiffs, | ) DISTRICT JUDGE BLACK |
| | ) |
| v. | ) |
| | ) |
| PENTAIR FLOW CONTROL PACIFIC PTY LIMITED, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**OPPOSITION OF DEFENDANT/COUNTERCLAIM PLAINTIFF, PENTAIR FLOW**
**CONTROL PACIFIC PTY, TO PLAINTIFFS/COUNTERCLAIM DEFENDANTS'**
**MOTION TO DISMISS AMENDED COUNTERCLAIMS**

**TABLE OF CONTENTS**

**Page**

I.     SUMMARY OF THE ARGUMENT AND AUTHORITIES RELIED UPON ................. 1

     A.     PFCP's Claims Requesting a Declaration of Ownership Rights in the Lunkenheimer Intellectual Property Are Sufficiently Pled (Declaratory Judgment - Counts I & VII) .................................................................... 1

     B.     Determination of the Voluminous Choice-of-Law Issues, and Thus the Applicable Statutes of Limitation, is Entirely Premature ....................... 2

     C.     PFCP Has Sufficiently Pled BERNARD DESILVA, LUNKENHEIMER INC. AND CVL's Breach of Their Obligations to Maintain the Lunkenheimer Trademarks and Comply With the Dispute Resolution Procedure (Count II) ........................................................................... 2

          1.     BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Breached Their Obligations to Maintain the Lunkenheimer Trademarks ................................................................. 2

          2.     BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Failed to Comply With the Dispute Resolution Procedure Contained in the License Agreements .......................................... 3

     D.     Movants Tortured Interpretation of the License Agreements is Unsupported by the Law and Contrary to the Plain Meanings of the Provisions .............................................................................................. 3

     E.     The Unjust Enrichment Claims are not Duplicative and are Otherwise Sufficiently Pled .............................................................................. 4

     F.     PFCP Has Sufficiently Pled its Lanham Act Claims (Counts V & VI) .................. 4

     G.     PFCP's Allegations of Promissory Estoppel and Fraud are Permissible Alternative Theories That Satisfy the Elements of the Claims .............................. 5

II.     INTRODUCTION ....................................................................................... 6

III.     ARGUMENT ............................................................................................. 8

     A.     PFCP's Claims Requesting a Declaration of Ownership Rights in the Lunkenheimer Intellectual Property Are Sufficiently Pled (Declaratory Judgment - Counts I & VII) .................................................................... 8

     B.     Determination of the Voluminous Choice-of-Law Issues, and Thus the Applicable Statutes of Limitation, is Entirely Premature ....................... 14

     C.     PFCP Has Sufficiently Pled BERNARD DESILVA, LUNKENHEIMER INC. AND CVL's Breach of Their Obligations to Maintain the Lunkenheimer Trademarks and Comply With the Dispute Resolution Procedure (Count II) ........................................................................... 18

**Page**

          1.      BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Breached Their Obligations to Maintain the Lunkenheimer Trademarks ................................................................ 18

          2.      BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Failed to Comply With the Dispute Resolution Procedure Contained in the License Agreements ....................................... 21

    D.      Movants Tortured Interpretation of the License Agreements is Unsupported by the Law and Contrary to the Plain Meanings of the Provisions............................................................................... 23

    E.      The Unjust Enrichment Claims are not Duplicative and are Otherwise Sufficiently Pled........................................................... 26

    F.      PFCP Has Sufficiently Pled its Lanham Act Claims (Counts V & VI)............... 29

    G.      PFCP's Allegations of Promissory Estoppel and Fraud are Permissible Alternative Theories That Satisfy the Elements of the Claims........................... 32

IV.      CONCLUSION............................................................................... 34

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*1st United Bank v. Bank of Am., NA*, No. 10-22935, 2011 U.S. Dist. LEXIS 1081, at *8-9
(S.D. Fla. Jan. 5, 2011) ..................................................................................................1, 13

*Beard v. Dominion Homes Fin. Servs., Inc.*, No. 06-137, 2007 U.S. Dist. LEXIS 53047,
at *17 (S.D. Ohio July 23, 2007) ....................................................................................1, 11

*Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, No. 04-2188, 2006 U.S. Dist.
LEXIS 100943, at *20 (N.D. Ohio Aug. 17, 2006) ..........................................................5, 32

*Crowe Enter. v. Amicon Med. Group, Inc.*, No. 2013-31, 2014 Ohio App. LEXIS 7, at *6-
7 (Ohio Ct. App., Portage County Jan. 6, 2014) ..................................................................22

*Czuchaj v. Conair Corp.*, No. 13-1901, 2014 ..........................................................................2, 17

*Desai v. Franklin*, 895 N.E. 2d 875, 884 (Ohio Ct. App. 2008)....................................................17

*Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012)..............29

*GMAC v. Flynn (In re Midway Motor Sales, Inc.)*, No. 8-8109, 2009 Bankr. LEXIS 1696,
at *19 (6th Cir. July 6, 2009) ..............................................................................................14

*Guardian Tech., Inc. v. Chelm Props., Inc.*, No. 80166, 2002 Ohio App. LEXIS 4947, at
*6 (Ohio Ct. App. Sept. 19, 2002) ....................................................................................4, 28

*Hausser & Taylor, LLP v. Accelerated Sys. Integration, Inc.*, No. 84748, 2005 Ohio App.
LEXIS 1030, at *11 (Ohio Ct. App., Cuyahoga County Mar. 10, 2005) ..............................22

*Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 393 F. Supp. 2d 348, 359 (W.D. Pa. 2005) ............16

*Hodgson v. Man Fin., Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at *5 (E.D. Pa.
Dec. 29, 2006)....................................................................................................................2, 18

*Hoffman v. Northwestern Mut. Life Ins. Co.*, No. 13-631, 2013 U.S. Dist. LEXIS 107178,
at *12-3 (W.D. Pa. July 31, 2013) ..............................................................................1, 12, 13

*Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338-9 (6th Cir. 2010) ......................3, 22

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 368, 375
(S.D.N.Y. 2010)................................................................................................................1, 9, 10

*Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 n. 2 (D. Kan. 1999)............2, 20

Page(s)

*Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010) ...............................................................1, 13

*Kiser v. CitiMortgage, Inc.*, No. 11-1428, 2011 U.S. Dist. LEXIS 115560, at *15 (N.D. Ohio Oct. 6, 2011) .................................................................................................34

*Kvaerner U.S., Inc. v. Kemper Envt'l. Ltd.*, No. 06-403, 2006 U.S. Dist. LEXIS 78005, at *14 (W.D. Pa. Oct. 26, 2006) ....................................................................18, 19, 20

*LaBelle v. Brown & Williamson Tobacco Corp.*, No. 98-3235-23, 1999 U.S. Dist. LEXIS 21629, at *45 (D.S.C. Mar. 18, 1999) ..........................................................2, 18

*Lorillard Tobacco Co. v. Hamden, Inc.*, No. 10-1886, 2011 U.S. Dist. LEXIS 122230, at *13 (N.D. Ohio Oct. 21, 2011) .........................................................................5, 31

*Lynch v. Sease*, 244 Fed. Appx. 736, 738 (6th Cir. 2007) ...........................................5, 32

*In re Nat'l Century Fin. Enters.*, 846 F. Supp. 2d 828, 881 (S.D. Ohio 2012)....................6, 34

*Passa v. City of Columbus*, 748 F. Supp. 2d 804, 815 (S.D. Ohio 2010) ...............................34

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 409, 425 (E.D. Va. 2011) ...............4, 30

*Power Mktg. Direct, Inc. v. Pagnozzi*, No. 05-766, 2006 U.S. Dist. LEXIS 73343, at *32 (S.D. Ohio Sept. 29, 2006)...............................................................................1, 11

*Prudential Ins. Co. of Am. v. Bank of Am.*, No. 13-1586, 2014 U.S. Dist. LEXIS 53349, at *72 (D.N.J. Apr. 17, 2014) ........................................................................2, 18

*Q & R Assocs. Inc. v. Unifi Technical Fabrics*, No. 01-641, 2006 U.S. Dist. LEXIS 72156, at *2 (S.D. Ohio Oct. 3, 2006) ...............................................................14

*Raftery v. S. Lee Corp.*, No. 07-649, 2007 U.S. Dist. LEXIS 86860, at *11 (S.D. Ohio Nov. 15, 2007) .................................................................................................33

*Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860-1 (6th Cir. 2002)......................4, 28

*Ruddy v. Mt. Penn Borough Mun. Auth.*, No. 1120, 2014 Pa. Commw. .....................................17

*Smythe Cramer Co. v. Silva*, No. 13-1403, 2013 U.S. Dist. LEXIS 151556, at *13 (N.D. Ohio Oct. 22, 2013) ...............................................................................5, 33

*State Farm Life Ins. Co. v. Jonas*, No. 12-1500, 2013 U.S. Dist. LEXIS 81720, at *1 (S.D. Ind. June 11, 2013) .............................................................................19

*Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 20 (S.D.N.Y. 2010) .......................................................................................4, 28

**Page(s)**

*Veracity Group, Inc. v. Cooper-Atkins Corp.*, No. 11-526, 2012 U.S. Dist. LEXIS 7997, at *7 (S.D. Ohio Jan. 24, 2012) (Black, J.)..............................................................16

*Woods v. FacilitySource, LLC*, No. 13-621, 2014 U.S. Dist. LEXIS 61919, at *12-3, n.2 (S.D. Ohio May 5, 2014) ..........................................................................................26

## STATUTES

*New South Wales Limitation Act of 1969* ......................................................................17

## OTHER AUTHORITIES

2-12 James Wm. Moore *et al., Moore's Federal Practice*, ¶ 12.37(4) ...........................14

Black's Law Dictionary 1214 (9th ed. 2009).................................................................29

Fed. R. Civ. P. 8(a) .......................................................................................................33

Fed. R. Civ. P. 8(d)(2) ..................................................................................................11

Fed. R. Civ. P. 8(d)(2)-(3)...............................................................................................1

Fed. R. Civ. P. 12(f)......................................................................................................14

Fed. R. Civ. P. 13(a) ...............................................................................................22, 23

Fed. R. Civ. P. 15(a)(2)..................................................................................................34

Fed. R. Civ. P. 44.1 .......................................................................................................17

I.      **SUMMARY OF THE ARGUMENT AND AUTHORITIES RELIED UPON**

A.      **PFCP's Claims Requesting a Declaration of Ownership Rights in the Lunkenheimer Intellectual Property Are Sufficiently Pled (Declaratory Judgment - Counts I & VII)**

PFCP became the equitable, beneficial owner of the Lunkenheimer Intellectual Property on the date it gave notice to exercise the Option to Purchase in the License Agreements. Def.'s Countercl. at ¶ 65; *see IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 368, 375 (S.D.N.Y. 2010).   Because KLUR asserts some ownership interest in the Lunkenheimer Intellectual Property and has filed a Declaratory Judgment claim of her own against <u>all</u> other parties, including PFCP, she has been properly added as a Counterclaim Defendant to Counts I and VII.  Dkt. No. 100.

PFCP's <u>alternative</u> Declaratory Judgment Count VII should survive because it is pled in the alternative, so it does not have to be consistent with other claims or defenses.  Fed. R. Civ. P. 8(d)(2)-(3); *see Power Mktg. Direct, Inc. v. Pagnozzi*, No. 05-766, 2006 U.S. Dist. LEXIS 73343, at *32 (S.D. Ohio Sept. 29, 2006); *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 06-137, 2007 U.S. Dist. LEXIS 53047, at *17 (S.D. Ohio July 23, 2007).   PFCP's Declaratory Judgment Counts are <u>not</u> duplicative of its Breach of Contract claim because they are asserted against different Plaintiffs/Counterclaim Defendants and are pled in the alternative. Def.'s Countercl. at ¶¶ 144-163; *see e.g. Hoffman v. Northwestern Mut. Life Ins. Co.*, No. 13-631, 2013 U.S. Dist. LEXIS 107178, at *12-3 (W.D. Pa. July 31, 2013); *1st United Bank v. Bank of Am., NA*, No. 10-22935, 2011 U.S. Dist. LEXIS 1081, at *8-9 (S.D. Fla. Jan. 5, 2011); *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010).

B.      **Determination of the Voluminous Choice-of-Law Issues, and Thus the Applicable Statutes of Limitation, is Entirely Premature**

Movants' presumption that Ohio provides the applicable law as to all Counts against all parties is premature, at best.  The various jurisdictions interested in this dispute have their own Statutes of Limitation and individual applications of the Discovery Rule and/or Fraudulent Concealment Doctrines.  "The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case." *Czuchaj v. Conair Corp.*, No. 13-1901, 2014 Dist. LEXIS 54410, at *23 (S.D. Cal. Apr. 17, 2014) (declining to resolve the issue at the motion to dismiss stage because "this Court finds that the choice of law determination is <u>premature</u>.") (emphasis added).  Where, as here, the choice of law analysis is a complicated, fact-intensive jumble, courts routinely decline to determine the issue at the motion to dismiss stage.  *Hodgson v. Man Fin., Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at *5 (E.D. Pa. Dec. 29, 2006); *Prudential Ins. Co. of Am. v. Bank of Am.*, No. 13-1586, 2014 U.S. Dist. LEXIS 53349, at *72 (D.N.J. Apr. 17, 2014); *LaBelle v. Brown & Williamson Tobacco Corp.*, No. 98-3235-23, 1999 U.S. Dist. LEXIS 21629, at *45 (D.S.C. Mar. 18, 1999).

C.      **PFCP Has Sufficiently Pled BERNARD DESILVA, LUNKENHEIMER INC. AND CVL's Breach of Their Obligations to Maintain the Lunkenheimer Trademarks and Comply With the Dispute Resolution Procedure (Count II)**

1.      **BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Breached Their Obligations to Maintain the Lunkenheimer Trademarks**

Section 9.3 of the License Agreements requires LUNKENHEIMER INC. and CVL to "at [their] own cost take ***all such action*** as is reasonably necessary [ . . . ] to **protect** the Licensed Intellectual Property." *Id.* (emphasis added).  Part of "protecting" trademarks is filing renewals, not allowing them to expire and initiating cancellation and/or infringement proceedings against infringers. *See Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840,

846 n. 2 (D. Kan. 1999) ("a trademark [] licensor is under an implied good faith obligation not to do anything that would impair or destroy the value of an exclusive licensee's rights").  PFCP's allegations that BERNARD DESILVA, LUNKENHEIMER INC. and CVL breached the License Agreements by failing to maintain the Lunkenheimer Trademarks are sufficient to state a claim. Def.'s Countercl. at ¶ 92(b).

          2.         **BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Failed to Comply With the Dispute Resolution Procedure Contained in the <u>License Agreements</u>**

        Section 15 of the License Agreements was breached because BERNARD DESILVA, LUNKENHEIMER INC. and/or CVL commenced this lawsuit without (i) giving proper written notice of any dispute to PFCP, and/or (ii) meeting with senior executives from PFCP to endeavor to resolve the any dispute through negotiation.  Def.'s Countercl. at ¶ 92(f). The dispute resolution procedure at issue here is <u>not</u> an arbitration clause that PFCP now seeks to enforce years into litigation.  *See e.g. Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338-9 (6th Cir. 2010).  The License Agreements also specifically state that a right may only be waived in writing.  Pls.' Exhibits "A" and "B" at ¶ 15.  PFCP did not waive its right to assert a breach of the dispute resolution provisions in writing.

    D.        **Movants Tortured Interpretation of the License Agreements is Unsupported <u>by the Law and Contrary to the Plain Meanings of the Provisions</u>**

        BERNARD DESILVA, LUNKENHEIMER INC. and CVL indemnified PFCP "against all damages, costs and expenses (<u>including</u> <u>legal</u> <u>costs and</u> <u>expenses</u> on an indemnity basis) in respect of any <u>claims,</u> <u>demands,</u> actions or proceedings which may be brought or commenced against Tyco in relation to arising out of any breach by Lunkenheimer of a warranty contained in clause 11.2."  Pls.' Exhibits "A" and "B" at §12 (emphasis added).  KLUR's "claim" has damaged PFCP by, among other things, forcing it to incur additional "legal costs and

expenses" and actual damages arising from its inability to fully exploit the Lunkenheimer Trademarks.  Her arguments to the contrary are inconsistent with the plain meaning of the License Agreements.

> E.     **The Unjust Enrichment Claims are not Duplicative and are Otherwise Sufficiently Pled**

The allegations in Count IV relate to monetary overpayments and do not duplicate the Breach of Contract claim because the License Agreements do not discuss the parties' obligation with respect to the return of mistaken payments not due under the License Agreements.  PFCP has clearly pled that <u>whoever</u> owns the Lunkenheimer Trademarks has been unjustly enriched through PFCP's investment in, and expansion of, the goodwill associated therewith.  *See Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 20 (S.D.N.Y. 2010) (emphasis added); *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860-1 (6th Cir. 2002) ("'[u]njust enrichment [] results from a failure to make restitution where it is equitable to do so.  That may arise when a person <u>has</u> <u>passively</u> <u>received</u> <u>a benefit</u> which it would be unconscionable for him to retain"); s*ee also Guardian Tech., Inc. v. Chelm Props., Inc.*, No. 80166, 2002 Ohio App. LEXIS 4947, at *6 (Ohio Ct. App. Sept. 19, 2002).

> F.     <u>**PFCP Has Sufficiently Pled its Lanham Act Claims (Counts V & VI)**</u>

Plaintiffs/Counterclaim Defendants move to dismiss PFCP's Lanham Act claims on the grounds that PFCP has not alleged ownership or infringement of the Lunkenheimer Trademarks.  MTD at p. 17-8.  PFCP has pled that PFCP became the <u>equitable</u> and <u>beneficial</u> owner of the Lunkenheimer Trademarks upon properly exercising the Option to Purchase.  Def.'s Countercl. at ¶¶ 60-9, 114-143.  *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 409, 425 (E.D. Va. 2011).  Next, Movants argue that Klur is not a proper Counterclaim Defendant under this Count.  KLUR cannot assert an ownership interest in the Lunkenheimer

Trademarks, but shirk liability for their infringement and misuse.  Dkt. No. 100; *see Lorillard Tobacco Co. v. Hamden, Inc.*, No. 10-1886, 2011 U.S. Dist. LEXIS 122230, at \*13 (N.D. Ohio Oct. 21, 2011) (holding infringers "bear strict liability for violations of the Lanham Act" even where they are ignorant of their own infringing activity).  PFCP has identified that the license with Cincinnati Valve Company ("CVC") constitutes infringement because the license continued <u>after</u> PFCP exercised the Option to Purchase and the Option to Purchase was for the Lunkenheimer Trademarks worldwide, with no limitation that they only be used in connection with slurry valves.  Def.'s Countercl. at ¶¶ 70-5, 114-143; Pls.' Exhibits "A" and "B" at ¶ 5.1.

G.  **PFCP's Allegations of Promissory Estoppel and Fraud are Permissible <u>Alternative Theories That Satisfy the Elements of the Claims</u>**

These Counts are pled in the alternate universe where LUNKENHEIMER INC. and CVL did not own the Lunkenheimer Trademarks.  As a result, an alternative Count for Fraud or Promissory Estoppel, where there is no legal contract, is perfectly permissible.  *See, e.g., Lynch v. Sease*, 244 Fed. Appx. 736, 738 (6th Cir. 2007); *see also Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, No. 04-2188, 2006 U.S. Dist. LEXIS 100943, at \*20 (N.D. Ohio Aug. 17, 2006). The law similarly permits a plaintiff to plead fraud as an alternative theory to a breach of contract count.  *See, e.g., Smythe Cramer Co. v. Silva*, No. 13-1403, 2013 U.S. Dist. LEXIS 151556, at \*13 (N.D. Ohio Oct. 22, 2013).

Movants' assertion that PFCP was not injured by the fraudulent conveyance of the license is decidedly incorrect.  PFCP did not pay millions of dollars simply to use the Lunkenheimer Intellectual Property – it paid millions of dollars to license the right to <u>lawfully</u> use (and later purchase) the Lunkenheimer Intellectual Property from its <u>actual</u> <u>owner</u>.  Whether PFCP was justified in relying on the representations and warranties regarding ownership in the

License Agreements is a question properly reserved for the jury.  *See, e.g., In re Nat'l Century Fin. Enters.*, 846 F. Supp. 2d 828, 881 (S.D. Ohio 2012).

II.   **INTRODUCTION**

Plaintiffs/Counterclaim Defendants ("Movants") describe this as a "simple dispute."  Mot. to Dismiss ("MTD") at p.1.   Unfortunately, it is anything but.

Dr. Bernard DeSilva ("BERNARD DESILVA") and two of his "companies" filed suit 2 ½ years ago and the parties, sans Nilmini Klur ("KLUR"), litigated the case through the end of Discovery and reached a tentative "settlement."[1]  While conducting its Due Diligence and preparing the documentation required to complete the contemplated transaction, Defendant/Counterclaim Plaintiff, Pentair Flow Control Pacific Pty Limited f/k/a Tyco Flow Control Pacific Pty Limited ("PFCP")[2] discovered that, once again, the truth was stranger than any fiction.  As a result of a Subpoena and deposition of third party, Robert Beuchner, Esquire, a Trusts and Estates lawyer for BERNARD DESILVA, Sheila DeSilva and various of their corporations, partnerships and trusts, PFCP learned that BERNARD DESILVA had not disclosed the existence of several other entities and documents.  Those documents appear to evidence that neither he nor his two original Plaintiff "companies" now own, or in 2002 owned, the Lunkenheimer Intellectual Property (comprised of the Lunkenheimer Trademarks and Lunkenheimer Know How),[3] which is the subject of this dispute and the then-contemplated

---

[1] PFCP filed Counterclaims on August 3, 2012.  Dkt. No. 14.  The Counterclaim Defendants in the case at that time did not move to dismiss, but rather filed an Answer, which did not raise the Defenses now raised in the pending Motion to Dismiss.  Dkt. No. 53.  Thus, as to the original Plaintiffs/Counterclaim Defendants, those are waived.

[2] Tyco Flow Control Pacific Pty Limited officially changed its name to Pentair Flow Control Pacific Pty Limited on November 30, 2012.

[3] All terms used herein shall have the same meaning as set forth in the License Agreements and PFCP's Amended Answer and Counterclaims.  Pls.' Exhibits "A" and "B" & Dkt. No. 106.

"settlement."  In addition, PFCP discovered that the Lunkenheimer Intellectual Property might also be subject to substantial Tax Liens, Judgments and claims of others.

At about the same time, our soap opera added a new character as BERNARD DESILVA's estranged daughter, KLUR, appeared[4] by way of letter to the Court and then Motion, requesting to intervene, claiming she believed she had some unspecified interest based upon some unspecified trust, in the Lunkenheimer Intellectual Property.

Because the DeSilvas have played fast and loose with the system, reality and truth in this case are more elusive than ever.  Under such circumstances, PFCP was left with no choice but to file Amended Counterclaims pleading several causes of action, but all based upon one of two Alternative Scenarios:

   I.  License Agreements Are Valid and Enforceable

OR

   II.  License Agreements Are Invalid

In Scenario I, THE LUNKENHEIMER COMPANY INC. ("LUNKENHEIMER INC.") and CONSOLIDATED VALVES, LTD. ("CVL") the signatories to the 2002 License Agreements actually owned the Lunkenheimer Intellectual Property at the time of contracting with PFCP and PFCP in 2007 properly exercised its Option to Purchase and is thus the present owner of the Lunkenheimer Intellectual Property.

In Scenario II, neither LUNKENHEIMER INC. nor CVL owned the Lunkenheimer Intellectual Property in 2002 or at any time thereafter and PFCP now owns same due to the lack of use and abandonment of the Lunkenheimer Trademarks and the disclosure of the Lunkenheimer Know How by those who did previously own them.

---

[4] Klur was well aware of this dispute even before suit was filed on November 22, 2011, but chose to involve herself only at the 11th hour, 2 years later.

-7-

Notwithstanding that these Counterclaims reflect the two alternative Scenarios created by the DeSilva family's own competing claims of ownership, Movants nevertheless seek to dismiss PFCP's Counterclaims on the ground that they are duplicative.  However, because each party's interest, if any, in the Lunkenheimer Intellectual Property is anything but clear right now,  PFCP purposefully drafted its Counterclaims to address each of the two alternative Scenarios, a pleading style explicitly condoned by the Federal Rules of Civil Procedure.  Indeed, the lack of information relating to the interests of each party renders Movants' Statute of Limitation argument simultaneously incorrect and premature.  Movants' other arguments rely upon tortured interpretations of contracts and fail to recognize that the liabilities associated with purported ownership of the Lunkenheimer Intellectual Property.  For these reasons, and those contained herein, the Motion to Dismiss should be denied in its entirety.

III.   **ARGUMENT**

    A.   **PFCP's Claims Requesting a Declaration of Ownership Rights in the Lunkenheimer Intellectual Property Are Sufficiently Pled (Declaratory Judgment - Counts I & VII)**

The ownership of the Lunkenheimer Intellectual Property is the crux of this litigation.  Counts I and VII are the most fundamental of PFCP's Counterclaims because they ask the Court to find and declare PFCP the rightful and sole owner of the Lunkenheimer Intellectual Property.  Movants posit four (4) reasons why Declaratory Judgment Counts I and VII should be dismissed.  None warrant dismissal.

First, Movants argue that PFCP's Declaratory Judgment Counts cannot survive because "none of those conditions to the completion of the sale [of the Lunkenheimer Intellectual Property to PFCP] are alleged to have been completed." MTD at p. 5.  PFCP alleged that it sent proper notice of its intent to purchase the Lunkenheimer Intellectual Property within the relevant time period, as required by the License Agreements.  Def.'s Countercl. at ¶¶ 60-3.  Pursuant to

those agreements, PFCP scheduled a date for the closing – the completion of the sale.  *Id.* at ¶¶ 64-6.  These were the <u>only</u> conditions that needed to be satisfied by PFCP in order for certain reciprocal legal obligations of LUNKENHEIMER INC. and CVL to arise.  As PFCP pled, "upon delivery of the notice to exercise the Option to Purchase, LUNKENHEIMER INC. and CVL ***were legally bound to sell*** the Licensed Intellectual Property to PFCP and PFCP was legally bound to purchase the Licensed Intellectual Property.  (Sec. 5.2)."  *Id.* at ¶ 65 (emphasis added).  PFCP became the equitable, beneficial owner of the Lunkenheimer Intellectual Property on the date it gave notice to exercise the Option to Purchase.

Movants argue that PFCP cannot maintain a Declaratory Judgment cause of action asking this Court to find and declare it the owner because Plaintiffs/Counterclaim Defendants, LUNKENHEIMER INC. and CVL, refused to come to the closing to execute the paperwork required to transfer the Lunkenheimer Intellectual Property and PFCP did not make payment.  PFCP's right to ownership of the Lunkenheimer Intellectual Property arose under the License Agreements when it gave notice.  *Id.* at ¶ 65.  The execution of paperwork and payment were conditions that arose subsequent to the duty to sell to PFCP.  *Id.* at ¶¶ 65-9.  LUNKENHEIMER INC. and CVL's inexplicable failure to come to the closing, execute proper assignments of the Lunkenheimer Intellectual Property and accept PFCP's money as tendered does nothing to extinguish their contractual obligation to transfer ownership to PFCP.  Id.  PFCP had the money, offered to tender payment and stood/stands ready to tender payment, minus all appropriate setoffs.  *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 368, 375 (S.D.N.Y. 2010) (denying motion to dismiss declaratory judgment claim where plaintiffs requested declaration of their equitable ownership of trademarks where defendants executed license with plaintiffs containing option to purchase that plaintiffs attempted to exercise

by tendering payment, but defendants refused to comply with option or transfer legal title of marks). PFCP has, therefore, amply pled that it is the equitable, beneficial owner of the Lunkenheimer Intellectual Property and has been since it gave notice of its intention to exercise its Option to Purchase. *Id.* at ¶ 65. LUNKENHEIMER INC. and CVL cannot deny or stop PFCP's ownership merely by refusing to honor their clear, written legal obligations.

Second, Movants argue that KLUR's intervention has no impact on PFCP's need for a Declaration of ownership rights. This is baffling given that KLUR's Complaint alleges she has some undefined ownership interest in the Lunkenheimer Intellectual Property and she, too, seeks a declaration regarding ownership from this Court. Dkt. No. 100. It is unclear whether she claims some unspecified trust (of which she is allegedly a beneficiary) owns the Lunkenheimer Intellectual Property outright or she is the owner of some other legal entity (*e.g.* LUNKENHEIMER INC. and CVL) which does. Because KLUR asserts some ownership interest in the Lunkenheimer Intellectual Property and has filed a Declaratory Judgment claim of her own against all other parties, including PFCP, she had to be and has been properly added as a Counterclaim Defendant to Counts I and VII. *Id.* It makes no sense whatsoever to say that she can maintain a Declaratory Judgment action against PFCP regarding ownership of the Lunkenheimer Intellectual Property, but PFCP, the actual Licensee/Optionee/Beneficial Owner cannot.

Third, Movants seek dismissal of PFCP's <u>alternative</u> Declaratory Judgment Count VII, which, unlike Count I, is predicated on the assumption that the License Agreements are invalid because LUNKENHEIMER INC. and CVL were/are not the owners of the Lunkenheimer Intellectual Property. MTD at p. 6; Def.'s Countercl. at ¶¶ 144-163. Movants argue that PFCP cannot assert ownership as a result of abandonment, nonuse and disclosure of

the Lunkenheimer Intellectual Property because PFCP has <u>alternatively</u> alleged that the Lunkenheimer Intellectual Property was licensed to and purchased by PFCP.  MTD at p. 6.  To be clear, PFCP seeks a Declaration that (1) it is the owner of the Lunkenheimer Intellectual Property by virtue of properly exercising the Option to Purchase contained in the valid License Agreements (Count I), <u>or</u>, <u>alternatively</u>, (2) the License Agreements are invalid and PFCP is the owner as a result of Plaintiffs/Counterclaim Defendants' abandonment, nonuse and disclosure of the Lunkenheimer Intellectual Property (Count VII).

Oddly, Movants pretend not to understand the concept of alternative, inconsistent pleading.  MTD at p. 6.  Alternative pleading is permitted and is <u>not</u> a basis to dismiss either or both well pled, inconsistent legal theories.  Fed. R. Civ. P. 8(d)(2) provides that,

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2).  "A party may state as many separate claims or defenses as it has, ***regardless of consistency***."  *Id*. at 8(d)(3) (emphasis added).  A plaintiff is clearly permitted to plead alternative or even inconsistent claims without being subject to a motion to dismiss.  *See Power Mktg. Direct, Inc. v. Pagnozzi*, No. 05-766, 2006 U.S. Dist. LEXIS 73343, at *32 (S.D. Ohio Sept. 29, 2006) (holding unjust enrichment and breach of contract claims survive motion to dismiss as alternative, inconsistent theories); *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 06-137, 2007 U.S. Dist. LEXIS 53047, at *17 (S.D. Ohio July 23, 2007) ("alternative or even inconsistent pleadings are permitted [ . . . ] and inconsistent pleadings cannot be a basis for a motion to dismiss").

Because PFCP has received conflicting information, documents and testimony regarding the ownership of the Lunkenheimer Intellectual Property, it has pled alternative,

inconsistent theories to account for the fact that the signatories to the License Agreements may or may not have had the power to execute those agreements and license the Lunkenheimer Intellectual Property to PFCP in 2002.  Throughout their Motion to Dismiss, Movants take the position that certain Counterclaims must be dismissed as duplicative or inconsistent, even though the Federal Rules of Civil Procedure make it clear that such pleading is entirely appropriate.

Fourth, PFCP's Declaratory Judgment Counts are not duplicative of its Breach of Contract claim.  PFCP's Breach of Contract claims (Count II) are only asserted against the three Plaintiffs/Counterclaim Defendants that are signatories to the License Agreements (BERNARD DESILVA, LUNKENHEIMER INC. and CVL) whereas the Declaratory Judgment Counts are asserted against all Plaintiffs/Counterclaim Defendants that may have some purported interest in the Lunkenheimer Intellectual Property.  Thus, the parties are not the same in Counts I and VII as they are in Count II.

Additionally, Count VII for Declaratory Judgment is pled as an alternative theory assuming that the License Agreements are invalid and thus cannot possibly be duplicative of a Breach of Contract claim which requires, of course, a valid contract (Count II).   Def.'s Countercl. at ¶¶ 144-163.  *See e.g. Hoffman v. Northwestern Mut. Life Ins. Co.*, No. 13-631, 2013 U.S. Dist. LEXIS 107178, at *12-3 (W.D. Pa. July 31, 2013) (alternatively pled breach of contract and declaratory judgment claims are not duplicative).

Movants' citation to *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.* is inapposite because that case did not involve the issues of whether breach of contract and declaratory judgment claims are duplicative where (1) the parties to each claim are different and (2) the claims are pled in the alternative.  852 F. Supp. 2d 925, 938 (S.D. Ohio

2012).  District Courts have discretion to entertain declaratory judgment claims based upon the following factors:

> (1)  whether the judgment would settle the controversy;
> (2)  whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4)  whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5)  whether there is an alternative remedy that is better or more effective.

*Id*.  The *Miami Valley* court held that the claims were duplicative because the parties were the same, the declaratory judgment action would not fully resolve the controversy and the same relief flowed from plaintiff's breach of contract claim.  *Id*.

In the current litigation, the only claims that will clarify the most important legal issue (ownership) between all parties and settle the controversy are the Declaratory Judgment Counts.  No other remedy available to PFCP - including remedies for its Breach of Contract claim - will determine the future ownership rights of and against all parties.  *See e.g. 1st United Bank v. Bank of Am., NA*, No. 10-22935, 2011 U.S. Dist. LEXIS 1081, at *8-9 (S.D. Fla. Jan. 5, 2011) (declaratory judgment and breach of contract claims not duplicative where resolution of breach of contract claim would leave future rights of parties unresolved); *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010) (claims not duplicative where plaintiff could fail on breach of contract claim, but still be entitled to declaratory relief as to future rights of parties).  Resolution of PFCP's Breach of Contract claims would not resolve the issue of future ownership of the Lunkenheimer Intellectual

Property as to all parties.[5]   Since the parties are different, the factual and legal claims are different and the relief requested is different, the Counts are not duplicative.

        **B.**      **Determination of the Voluminous Choice-of-Law Issues, and Thus the Applicable Statutes of Limitation, is Entirely Premature**

        In arguing that some of PFCP's claims are barred, in part, by applicable Statutes of Limitation,[6] Movants correctly note that claims arising under the License Agreements are subject to the Law of New South Wales, Australia but then, with no apparent basis, appear to assume that Ohio Law applies to the remainder of PFCP's claims.  Movants' presumption as to the applicable law is entirely premature at best.  Instead, given the uncertainty as to the true parties to this action, it is impossible to determine the applicable law as to each Count as to each party at this juncture.  By way of example, while New South Wales Law or Ohio Law could conceivably apply to the Unjust Enrichment claims against BERNARD DESILVA, there is no reason why Ohio Law would govern an Unjust Enrichment claim between PFCP (an Australian corporation) and KLUR (a Pennsylvania resident).  Indeed, while Ohio may have an interest in some of the claims as to some of the parties, there are many jurisdictions with a decided interest in this dispute.  *See Q & R Assocs. Inc. v. Unifi Technical Fabrics*, No. 01-641, 2006 U.S. Dist.

---

[5] Movants then request that certain affirmative defenses (Fourteenth and Twenty-Fifth) be dismissed because they are "based on the theory that Lunkenheimer abandoned or failed to protect the Licensed Intellectual Property [ . . .]" MTD. at p. 7.  "Because legal insufficiency is expressly included in Rule 12(f), a motion to strike is the proper means for attacking the legal insufficiency of a defense."  2-12 James Wm. Moore *et al., Moore's Federal Practice*, ¶ 12.37(4); *see also GMAC v. Flynn (In re Midway Motor Sales, Inc.),* No. 8-8109, 2009 Bankr. LEXIS 1696, at *19 (6th Cir. July 6, 2009) ("[t]he mechanism for challenging an affirmative defense is through a motion to strike.").  Movants have not moved to strike these affirmative defenses or any other affirmative defenses raised by PFCP.  For this reason, none of PFCP's affirmative defenses should be dismissed, as requested by the instant Motion.

[6] Movants assert that Counts II, IV, V, VI, VIII and X are barred in whole or part by the applicable Statutes of Limitations.

LEXIS 72156, at *2 (S.D. Ohio Oct. 3, 2006) (explaining that "Ohio courts apply the interest-analysis tests" to resolve choice-of-law issues).[7]

THE LUNKENHEIMER COMPANY, THE LUNKENHEIMER COMPANY INC., CONFLOW MANUFACTURING INC., THE STAR-LET CORPORATION, CON-VALVE INTERNATIONAL, INC., THE LUNKENHEIMER COMPANY LTD., USWATTA PARTNERS, USWATTA PARTNERS, LLC ("USWATTA LLC"), CONSOLIDATED VALVES, LTD., DULWICH-LONDON LIMITED PARTNERSHIP and CAMBERWELL-AUSTRICH LIMITED PARTNERSHIP are believed to be *de facto* and/or *de jure* Ohio entities. Def.'s Countercl. at ¶¶ 4-6, 8. BERNARD DESILVA and BERNARD MICHAEL DESILVA are Ohio Residents. *Id*. at ¶ 9. The ESTATE OF SHEILA DESILVA and the various trusts are also formed in Ohio. *Id*. at ¶¶ 11-12. On the other hand, LUNKENHEIMER-ENERGOVALVES, INC. is a Delaware Corporation. *Id*. at ¶7.

KLUR is a Pennsylvania resident. *Id*. at ¶10. To the extent she enjoys an Unjust Enrichment as a result of the enhanced goodwill in the Lunkenheimer Trademarks to which she lays claim of some ownership interest, she enjoys that benefit in Pennsylvania. PFCP's payments made pursuant to that License Agreements were made from a New South Wales account to accounts in Pennsylvania. Exhibit "1," Wire Transfer.

As to Australia's interest in this dispute, PFCP is, of course, a corporation organized under the laws of New South Wales, Australia. Def.'s Countercl. at ¶ 1. The License Agreements at issue were negotiated and executed in Australia and the parties, at least those who signed the License Agreements, agreed that New South Wales Law would govern their

---

[7] To the extent PFCP cites to Ohio Law elsewhere in its Brief, it does so only to refute Movants' incorrect assertion that PFCP's claims fail under Ohio Law. It is in no way intended to concede the applicability of Ohio Law.

relationship.    Pls.' Exhibits "A" and "B,"  ¶ 18.1(a).    The harm arising from the

Plaintiffs/Counterclaim Defendants' unlawful conduct occurs in Australia.  This includes the

injury resulting from the failure to file trademark renewals, which has permitted at least one

registration in a different international jurisdiction to fall into the hands of a competitor.  Def.'s

Countercl. at ¶ 92(b).

      Moreover, determining which law to apply in this case is not a distinction without

a difference.  For example, Movants somewhat correctly assert that the Statute of Limitations for

Lanham Act claims in Ohio is <u>two</u>-years.  *See* MTD at 8.[8]  Conversely, Pennsylvania courts

apply a <u>six</u>-year limitations period to Lanham Act claims.  *See Highland Tank & Mfg. Co. v. PS

Int'l, Inc.*, 393 F. Supp. 2d 348, 359 (W.D. Pa. 2005) ("However, under Pennsylvania law, the

statute of limitations to be applied to the Lanham Act is clearly six years").

      Moreover, Movants rote application of the Statutes of Limitations fails to even

consider the Discovery Rule and the Doctrine of Fraudulent Concealment.  As this Court is

aware, PFCP's Counterclaims arise from the astounding discovery during the potential

settlement of this litigation that contrary to (1) the (potentially fraudulent) representations

leading up to the License Agreements, and (2) BERNARD DESILVA's acceptance of payments

(and thus continued fraudulent concealment) pursuant to those License Agreements

LUNKENHEIMER INC. and CVL may not, in fact, have owned the Lunkenheimer Intellectual

Property in 2002.  That discovery did not occur until May 2014.  Then, KLUR further muddied

this already cloudy water by asserting that not only did LUNKENHEIMER INC. and CVL not

---

[8] Movants cite to the Ohio <u>state</u> statute for Trademark Infringement for this proposition, a statute under which PFCP asserts <u>no</u> claim.  As the Lanham Act contains no Statute of Limitations, courts must instead apply the most analogous state Statute of Limitation.  However, Movants' inaccurate statement is ultimately immaterial as Ohio courts have applied a <u>two</u>-year Statute of Limitation to Lanham Act claims.  *See Veracity Group, Inc. v. Cooper-Atkins Corp.*, No. 11-526, 2012 U.S. Dist. LEXIS 7997, at *7 (S.D. Ohio Jan. 24, 2012) (Black, J.).

own the Lunkenheimer Trademarks but, perhaps, a different trust in which she holds an interest is the true owner.  *See* Dkt. No. 100 at ¶16 ("If what KLUR has been told is correct, the intellectual property rights at issue in this case might not belong to the Plaintiffs, but instead might reside in the trust for which she is a beneficiary.").  Remarkably, KLUR fails to acknowledge that the web of deceit that she claims excuses her own tardiness is equally applicable to PFCP.  *See, e.g., id.* at ¶ 20 ("Because her father has withheld information for [sic] her about this trust and others").

Here, the various jurisdictions interested in this dispute also have their individual applications of the Discovery Rule and/or Fraudulent Concealment Doctrines.  For example, in Pennsylvania, the Discovery Rule is indisputably applicable to claims for Unjust Enrichment. *See, e.g., Ruddy v. Mt. Penn Borough Mun. Auth.*, No. 1120, 2014 Pa. Commw. Unpub. LEXIS 268, at *5-8 (Pa. Comm. Ct. May 6, 2014).  Conversely, Ohio does not apply the Discovery Rule to claims for Unjust Enrichment.  *See Desai v. Franklin*, 895 N.E. 2d 875, 884 (Ohio Ct. App. 2008).[9]  Moreover, while New South Wales recognizes both the Discovery Rule and Fraudulent Concealment, *see, e.g.,* New South Wales Limitation Act of 1969 § 55(a)(1), the specific requirements for invoking the doctrines, and their proper application, under New South Wales Law will have to be the subject of expert testimony.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony").

"The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case."  *Czuchaj v. Conair Corp.*, No. 13-1901, 2014 Dist. LEXIS 54410, at *23 (S.D. Cal. Apr. 17, 2014) (declining to resolve the issue

---

[9] While Ohio does not apply the Discovery Rule to claims for Unjust Enrichment, PFCP's claims under Ohio Law are still timely because "[s]o long as a person continues to confer a benefit upon another, and the retention of that benefit is unjust, the unjust enrichment continues."  *Id.*

at the motion to dismiss stage because "this Court finds that the choice of law determination is premature.") (emphasis added). Where, as here, the choice of law analysis is a complicated, fact-intensive jumble, courts routinely decline to determine the issue at the motion to dismiss stage. *Hodgson v. Man Fin., Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at *5 (E.D. Pa. Dec. 29, 2006) ("Because there are significant factual issues governing this question, this is not a decision which should be made merely on allegations in the Third Party Complaint and briefs, but should await conclusion of discovery"); *Prudential Ins. Co. of Am. v. Bank of Am.*, No. 13-1586, 2014 U.S. Dist. LEXIS 53349, at *72 (D.N.J. Apr. 17, 2014) (denying motion to dismiss because "this Court declines to make choice of law determinations, which rely on factual determinations, at this early stage."); *LaBelle v. Brown & Williamson Tobacco Corp.*, No. 98-3235-23, 1999 U.S. Dist. LEXIS 21629, at *45 (D.S.C. Mar. 18, 1999) ("As the choice of law question remains unresolved for the time being, the court will reserve ruling on this matter until such time as that question is resolved and the issue can be briefed more fully by the parties."); *Kvaerner U.S., Inc. v. Kemper Envt'l. Ltd.*, No. 06-403, 2006 U.S. Dist. LEXIS 78005, at *14 (W.D. Pa. Oct. 26, 2006) (denying motion to dismiss because "[d]iscovery will enable the Court to evaluate the 'choice of law' factors based on a more-developed factual record"). Respectfully, this Court should follow the guidance of its sister courts and decline to resolve the choice-of-law question, and by extension the applicable statutes of limitation, until the record is more fully (and truthfully) developed.

C.     **PFCP Has Sufficiently Pled BERNARD DESILVA, LUNKENHEIMER INC. AND CVL's Breach of Their Obligations to Maintain the Lunkenheimer Trademarks and Comply With the Dispute Resolution Procedure (Count II)**

1.     **BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Breached Their Obligations to Maintain the Lunkenheimer Trademarks**

Movants take the untenable position that BERNARD DESILVA, LUNKENHEIMER INC. and CVL had no obligation under the License Agreements to maintain registrations for the Lunkenheimer Trademarks.[10]  MTD. at p. 9.  The License Agreements provide, in pertinent part, as follows:

> 9.3    Proceedings by Lunkenheimer
>
> (a)    Subject to clause 9.3(b), Lunkenheimer must at its own cost take all such actions as is reasonably necessary (including the commencement of legal proceedings) to protect the Licensed Intellectual Property.

Pls.' Exhibits "A" and "B" at ¶ 9.3.

Movants argue that this provision does not give rise to a duty to maintain the trademarks that were purportedly licensed to PFCP.  Movants argue, without citation to any authority, that this provision only relates to "protecting trademarks from **infringement**, not renewing trademark registration [sic] (which is not "protection" in any reasonable sense)."  MTD at p. 10 (emphasis added).  To support this interpretation, Movants note that the Heading of this Section is "**Proceedings** by Lunkenheimer" apparently suggesting, without citation to any authority, that "proceedings" somehow means only prosecuting infringement actions.  *Id*. However, Section 1.2 of the License Agreements provides that "Headings are for convenience only, and do not affect interpretation."  Pls.' Exhibits "A" and "B" at ¶ 1.2.

Movants' interpretation is, at best, tortured.  Section 9.3 of the License Agreements requires LUNKENHEIMER INC. and CVL to "at [their] own cost take **all such**

---

[10] Neither KLUR nor any other Plaintiff/Counterclaim Defendant has standing to move to dismiss a claim that is not asserted against them, such as the Breach of Contract claims.  *See State Farm Life Ins. Co. v. Jonas*, No. 12-1500, 2013 U.S. Dist. LEXIS 81720, at *1 (S.D. Ind. June 11, 2013) ("The Court is unaware of any provision of the Federal Rules of Civil Procedure under which one defendant in a case can move to dismiss the plaintiff's claim against another defendant for failure to state a claim.").  Nevertheless, to the extent BERNARD DESILVA and his entities "join" in KLUR's Motion to Dismiss, the arguments are addressed.

*action* as is reasonably necessary [ . . . ] to *protect* the Licensed Intellectual Property." *Id.*
(emphasis added).  Part of "protecting" trademarks is filing renewals, not allowing them to
expire and initiating cancellation and/or infringement proceedings against infringers.  Although
Movants take the position that this is "not 'protection' in any reasonable sense", maintaining
registrations is "protecting" one's marks – indeed a license to use a trademark, absent valid
registrations, is worthless.  *Cf. Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846
n. 2 (D. Kan. 1999) ("a trademark [] licensor is under an implied good faith obligation not to do
anything that would impair or destroy the value of an exclusive licensee's rights").

 Additionally, Section 9.3 provides that "*all such actions* [ . . . ] (including the
commencement of legal proceedings) [ . . . ]" must be taken to protect the marks.  Pls.' Exhibits
"A" and "B" at ¶ 9.3 (emphasis added).  The provision specifically mentions institution of legal
proceedings to protect the Lunkenheimer Trademarks, but is <u>not</u> limited to that single form of
"protection."  There is nothing in Section 9.3 that limits BERNARD DESILVA,
LUNKENHEIMER INC. and CVL's obligations to protect the licensed marks to instituting
"infringement" proceedings, as Movants suggest.  MTD at p. 10.[11]  PFCP's allegations that
BERNARD DESILVA, LUNKENHEIMER INC. and CVL breached the License Agreements by
failing to file trademark renewals, allowing trademark registrations to expire and losing

---

[11] Movants then suggest that PFCP should have given notice and exercised a "self-help" provision to rescue
the Lunkenheimer Trademarks from expiration and cancellation.  MTD. at p. 10.  Section 9.5 does not create an
<u>obligation</u> for PFCP to "self-help," it provides that PFCP <u>may</u> take all such actions "in its *sole discretion*." Pls.'
Exhibits "A" and "B" at ¶ 9.5. (emphasis added).  In order to take any action to renew or initiate proceedings related
to the Lunkenheimer Trademarks, PFCP would have had to seek written assignments and/or authorizations from the
registrants of the Lunkenheimer Trademarks (*i.e.* LUNKENHEIMER INC., CVL and USWATTA LLC), which
would have been an exercise in futility due to BERNARD DESILVA's refusal to cooperate with PFCP.
Additionally, PFCP is not a registrant and does not receive notices of registrations that are due to expire,
BERNARD DESILVA does and he never informed PFCP that any registered Lunkenheimer Trademarks were
expiring and/or needed to be renewed.  When PFCP did discover that these trademarks were not being maintained,
PFCP took, and is taking, action to protect them.

registrations for the Lunkenheimer Trademarks to unrelated third-parties through failure to file timely renewals are, therefore, sufficient to state a claim.  Def.'s Countercl. at ¶ 92(b).

Movants' duty to maintain the registrations did not terminate when PFCP exercised the Option to Purchase.  MTD at p. 10.  Although PFCP became the equitable and beneficial owner at that time, BERNARD DESILVA, LUNKENHEIMER INC. and CVL refused to execute the assignments necessary to take over maintenance of the trademark registrations.  Def.'s Countercl. at ¶ 69.  A third party who is not the registrant does not have the power to file trademark renewals or cancellation proceedings without the owner's permission, in any nation.  BERNARD DESILVA, LUNKENHEIMER INC. and CVL's refusal to execute proper assignments caused numerous trademark registrations to expire or be cancelled. Additionally, some third parties have now registered the Lunkenheimer Trademarks that were lost through BERNARD DESILVA, LUNKENHEIMER INC. and CVL's inaction.[12]  Those trademarks can now only be regained through expensive cancellation proceedings in foreign jurisdictions.  Movants cannot take the position that PFCP somehow had the duty to maintain the Lunkenheimer Trademarks when BERNARD DESILVA, LUNKENHEIMER INC. and CVL's refusal to execute proper assignments is the very reason it could not do so.

2.     **BERNARD DESILVA, LUNKENHEIMER INC. AND CVL Failed to Comply With the Dispute Resolution Procedure Contained in the <u>License Agreements</u>**

Additionally, Movants argue that PFCP has waived its claim that BERNARD DESILVA, LUNKENHEIMER INC. and CVL breached the License Agreements by failing to comply with the dispute resolution procedure prior to initiating this action.  MTD at p. 10.

---

[12] For example, the U.S. Trademark Registration No. 75,747 for LUNKENHEIMER was cancelled on June 12, 2010, for failure to file a Renewal with the United States Patent and Trademark Office.  Exhibit "2," Status from USPTO.  The LUNKENHEIMER mark in Chile also expired and is now registered by a third party squatter named Ruiz De Gamboa Mujica Cristian.  *See* Exhibit "3," Trademark Research Report at pp. 7-8.

Section 15 of the License Agreements was breached because BERNARD DESILVA, LUNKENHEIMER INC. and/or CVL commenced this lawsuit without (i) giving proper written notice of any dispute to PFCP, and/or (ii) meeting with senior executives from PFCP to endeavor to resolve the any dispute through negotiation.  Def.'s Countercl. at ¶ 92(f).[13]

The basis of Movants' waiver argument is that PFCP has "participated in this litigation."  MTD at p. 11.  The dispute resolution procedure at issue here is <u>not</u> an arbitration clause that PFCP now seeks to enforce years into litigation.  Movants' cited cases are entirely inapposite because they involve defendants waiving their right to enforce an <u>arbitration</u> clause after years of engaging in civil litigation.  *See Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338-9 (6th Cir. 2010); *Hausser & Taylor, LLP v. Accelerated Sys. Integration, Inc.*, No. 84748, 2005 Ohio App. LEXIS 1030, at *11 (Ohio Ct. App., Cuyahoga County Mar. 10, 2005); *Crowe Enter. v. Amicon Med. Group, Inc.*, No. 2013-31, 2014 Ohio App. LEXIS 7, at *6-7 (Ohio Ct. App., Portage County Jan. 6, 2014).

PFCP had no choice but to defend this lawsuit and assert Compulsory Counterclaims pursuant to Fed. R. Civ. P. 13(a).  The License Agreements also specifically state that "[a] right may only be waived in writing, signed by the party, giving the waiver, and [ . . . ] no other conduct of a party (including failure to exercise, or delay in exercising, the right) operates as a waiver of the right or otherwise prevents the exercise of the right."  Pls.' Exhibits "A" and "B" at ¶ 15.  PFCP did not waive its right to assert a breach of the dispute resolution provisions in writing, nor do Movants even claim such.

---

[13] Because KLUR is late to this party (even though she was well aware of this dispute even before her father filed suit almost three years ago), neither she nor her Counsel are aware that, despite BERNARD DESILVA, LUNKENHEIMER, INC. and CVL's failure to abide by the dispute resolution procedure, PFCP actually complied with its obligation when it arranged and held a meeting of the parties' Counsel and executives in New York City in the office of Pepper Hamilton LLP in February 2012, <u>before</u> it filed it Counterclaims on August 3, 2012.  Dkt. No. 14.

D.     **Movants Tortured Interpretation of the License Agreements is Unsupported by the Law and Contrary to the Plain Meanings of the Provisions**

Movants move to dismiss Count III of the Counterclaims, which is only asserted against three Plaintiffs/Counterclaim Defendants, BERNARD DESILVA, LUNKENHEIMER, INC. and CVL, for Breach of the Contractual Indemnities set forth in the License Agreements. In the License Agreements, BERNARD DESILVA, LUNKENHEIMER, INC. and CVL warranted that the "licence [sic] granted under this document by Lunkenheimer does not infringe any Intellectual Property Rights of any person." Pls.' Exhibits "A" and "B" at §11.2(c). In the event of a breach of this Warranty, Lunkenheimer agreed to "indemnif[y] Tyco and agree[d] to keep it indemnified against all damages, costs and expenses (including legal costs and expenses on an indemnity basis) which may be brought or commenced against Tyco in relation to or arising out of any breach by Lunkenheimer of a warranty contained in clause 11.2." *Id.* at §12.

In the face of this clear contractual commitment, Movants offer three arguments, none of which are availing. First, Movants assert that "the representation that the License does not infringe the rights of any person was made in the present tense in 2002. Thus to state a claim, Tyco would have to allege that a third-party has sued it because ***in 2002***, when it granted the License, Lunkenheimer was breaching the third-party's intellectual property rights." Motion at 12 (emphasis added). As an initial matter, Movants' interpretation of this provision is contrary to the plain language used therein and commonsense. The "license granted under this document" was, subject to other conditions not germane to this issue, for a term of fifteen (15) years. Pls.' Exhibits "A" and "B" at §13.1. Thus, the "license" and the Warranty attached to it, spans more than the single date on which it was executed. Movants provide no authority for the novel, and frankly incredible, suggestion that a non-infringement Warranty set forth in a license agreement expires upon the execution of that very agreement. As to the former, by its unequivocal

language, the Warranty provides that the license "does not infringe any Intellectual Property Rights of any person" and does not, as Movants suggest, warrant only that PFCP <u>would not be sued</u> for infringing the intellectual property of any person.[14]

Second, Movants argue that the "[l]icense does not entitle Tyco to indemnification for claims that ***may*** brought [sic] and expenses that ***might*** be incurred, it is entitled to indemnification only for claims that ***have*** been brought." MTD. at pp. 12-13 (emphasis added); *see also id.* at 13 ("In short, Tyco cannot claim indemnification for expenses it has not incurred for defending claims that have not been brought against it"). In so doing, Movants evidently neglect to consider their own Complaints in this action. KLUR's, for example, asserts that "even if the Plaintiffs have the right to license those rights, those rights might still be limited by the trust instrument." Dkt. No. 100 at ¶16. In addition, KLUR asserts that "she is the beneficiary of a trust the assets for which include the intellectual property rights to the valves that are at issue in this case and that her rights as a beneficiary may be impaired . . . ." *Id.* at ¶19. In other words, KLUR asserts in the universe where LUNKENHEIMER INC. and CVL did own the Lunkenheimer Trademarks and the License Agreements are valid, some unknown provision in some unknown trust instrument might nevertheless restrict their right to license the Lunkenheimer Intellectual Property such that the License Agreements infringe KLUR's unknown rights in the Lunkenheimer Trademarks.

It is not necessary that KLUR's speculative theory that some trust instrument prevents LUNKENHEIMER INC. and CVL from licensing the Lunkenheimer Intellectual Property to PFCP be correct to trigger the Warranty obligations. BERNARD DESILVA, LUNKENHEIMER INC. and CVL indemnified PFCP "against all damages, costs and expenses

---

[14] Such a warranty would be meaningless. No signatory to a license could possibly guarantee that no other third party would ever sue.

(including legal costs and expenses on an indemnity basis) in respect of any claims, demands, actions or proceedings which may be brought or commenced against Tyco in relation to arising out of any breach by Lunkenheimer of a warranty contained in clause 11.2." Pls.' Exhibits "A" and "B" at §12 (emphasis added). Here, KLUR has asserted, alternatively if not hypothetically, that Plaintiffs "right to license . . . might still be limited by the trust instrument," which allegedly infringes upon whatever, if any, rights KLUR possesses in the Lunkenheimer Trademarks. *See* Dkt. No. 100 at ¶16, ¶19. This "claim" by KLUR has damaged PFCP by, among other things, forcing it to incur additional "legal costs and expenses" and actual damages arising from its inability to fully exploit the Lunkenheimer Trademarks.

Finally, Movants assert that "Tyco would be entitled to indemnification only if claims were asserted ***against Tyco*** on the ground that the License ***infringes*** the Intellectual Property Rights of any person." MTD. at p. 16 (emphasis added). Movants seem to suggest that this provision is only applicable against a Count for infringement, presumably of a trademark. This ignores that "Intellectual Property Rights" is defined in the License Agreements as "any and all existing and future intellectual and industrial property rights throughout the world, whether conferred by statute, common law or equity, including rights in relation to copyright, trade marks, designs, business and domain name, trade secrets and Know How . . . ." Pls.' Exhibits "A" and "B" at 8. The License Agreements' use of the word "infringe" is clearly not meant to limit its applicability to only causes of action containing the word "infringement" as one does not, for example, "infringe" trade secrets. Instead, the only logical interpretation of "infringe" as used in the License Agreements is its ordinary meaning of "invade," or "interfere with," or to use

the synonym that KLUR used in her Complaint, "impair." Thus, KLUR's claim is properly within the scope of the Indemnification Provision in the License Agreements.[15]

E. **The Unjust Enrichment Claims are not Duplicative and are Otherwise Sufficiently Pled**

Movants' arguments to dismiss PFCP's Unjust Enrichment claims are predicated on a fundamental misapprehension of the alternative nature of PFCP's pleadings – a necessary response to the uncertainty consciously created by (1) BERNARD DESILVA's inability and/or refusal to disclose documents demonstrating actual ownership of the Lunkenheimer Intellectual Property at issue; and (2) KLUR's vague and hypothetical allegations of a potential interest that she allegedly possesses as a beneficiary of some unknown trust. Specifically, KLUR asserts that PFCP's Claim for Unjust Enrichment must be dismissed because of the incorrect belief that this Count is duplicative of PFCP's Breach of Contract claims. *See* MTD. at p. 14 ("Because it merely restates Tyco's breach of contract claim as a claim for unjust enrichment, Tyco's Fourth Count should be dismissed."). The allegations in Count IV relate to monetary overpayments. Nowhere do the License Agreements discuss the parties' obligation with respect to the return of mistaken payments not due under the License Agreements. Moreover, given the labyrinth of entities, individuals, and trusts associated with BERNARD DESILVA, it is entirely unclear whether the unjustly received funds reside with BERNARD DESILVA, LUNKENHEIMER INC., CVL, another entity involved in this action or one that is still yet unknown. PFCP is entitled to recover this money regardless of where BERNARD DESILVA ultimately put it.

---

[15] To the extent KLUR also seeks to "dismiss" PFCP's Twenty-Fourth Affirmative Defense, and ignoring that one does not "dismiss" an Affirmative Defense, that request fails for the same reasons set forth above. *See, e.g., Woods v. FacilitySource, LLC*, No. 13-621, 2014 U.S. Dist. LEXIS 61919, at *12-3, n.2 (S.D. Ohio May 5, 2014) (noting that "if Plaintiffs have objections with regard to the sufficiency of Defendants' new affirmative defenses, they are free to move to <u>strike</u> such defenses") (emphasis added).

Next, Movants address the Unjust Enrichment theory actually pled against KLUR, namely that <u>if</u> she is the lawful owner of all or some interest in the Lunkenheimer Trademarks, she will unjustly receive the benefits in the form of the enhanced goodwill created by PFCP's use and promotion of same.  Def.'s Countercl. at pp. 33-4, footnote 6 ("as a purported owner of the Licensed Intellectual Property, any enhancement of the goodwill associated with the Lunkenheimer Trademarks would unjustly enrich" KLUR).  The Complaint specifically explains that PFCP is <u>not</u> seeking the return of the payments made to LUNKENHEIMER INC. and/or CVL from KLUR.  Rather than address the claim asserted against her, KLUR feigns confusion and seeks sanctuary behind the general rule that a Complaint must include individual allegations against each particular defendant.  *See* MTD. at p. 15.  PFCP does not contest this statement as a matter of general pleading requirements but instead how, here, it could possibly identify the precise entities that received the benefits of the enhanced goodwill where KLUR herself can only speculate that the Lunkenheimer Intellectual Property may be owned by a "Consolidated Valve Trust" or perhaps "another trust known as the 'Paddington Trust," or perhaps a different unknown trust, or indeed, perhaps no trust at all.  *See* Dkt. No. 100 at ¶ 10.  PFCP has clearly pled that <u>whoever</u> owns the Lunkenheimer Trademarks has been unjustly enriched through PFCP's investment in, and expansion of, the goodwill associated therewith.  The fact that PFCP cannot specifically identify that person/entity at present is a consequence entirely of the DeSilva family's own making.

Finally, KLUR asserts that it "is in particular beyond implausible . . . that Klur was enriched by Tyco" and, without support, suggests that the increased value in the goodwill associated with the Lunkenheimer Intellectual Property would somehow be an indirect benefit to her (assuming that she was, in fact, the owner of the Lunkenheimer Intellectual Property).  MTD.

at p. 16. It is hornbook law, however, that enhanced goodwill in a trademark inures <u>directly</u> to the benefit of the owner/licensor. "Where no goodwill has been transferred with the license, a trademark licensee cannot independently develop its own goodwill in a licensed mark, <u>as such goodwill inures solely to the benefit of the licensor</u>." *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 20 (S.D.N.Y. 2010) (emphasis added). In other words, the goodwill associated with a trademark, <u>even if</u> developed by a Licensee, inures to the benefit of the trademark owner, which KLUR alleges could possibly, potentially, be <u>her</u>. The increased goodwill arising from PFCP's promotion and investment in the Lunkenheimer Trademarks, and indeed the mere association of the trademarks with internationally-known and respected companies such as PFCP and Tyco, inured directly to the benefit of the trademark owner. While KLUR asserts that any such benefit to her would be indirect and therefore unable to support a claim for Unjust Enrichment, that is simply <u>not</u> the law. For example, in *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860-1 (6th Cir. 2002) (quotation omitted) (emphasis added), the Sixth Circuit noted that Ohio has embraced an expansive view of the Unjust Enrichment doctrine and held that "[u]njust enrichment [] results from a failure to make restitution where it is equitable to do so. That may arise when a person <u>has passively received a benefit</u> which it would be unconscionable for him to retain." *See also Guardian Tech., Inc. v. Chelm Props., Inc.*, No. 80166, 2002 Ohio App. LEXIS 4947, at *6 (Ohio Ct. App. Sept. 19, 2002) (and cases cited therein for the proposition that "[c]ircumstances may exist to support an unjust enrichment claim against a noncontracting third-party who benefits from the uncompensated work of one of the parties to the contract"). Of course, to that extent that KLUR is the owner, there is nothing indirect about the unjust benefit she received. Indeed, KLUR alleges that "the purported option fees is well below the value of the intellectual property rights." Dkt. No. 100 at ¶ 17. To the

extent the value of the intellectual property rights increased from the signing of the License Agreements in 2002 until today, that is solely by virtue of, and a direct reflection upon, the enhanced goodwill created by PFCP's use of the Lunkenheimer Trademarks.[16]

F.     **PFCP Has Sufficiently Pled its Lanham Act Claims (Counts V & VI)**

Plaintiffs/Counterclaim Defendants move to dismiss PFCP's Lanham Act claims on the grounds that PFCP has not alleged ownership or infringement of the Lunkenheimer Trademarks.  MTD at p. 17-8.  PFCP has pled, in painstaking detail, that PFCP became the equitable and beneficial owner of the Lunkenheimer Trademarks upon properly exercising the Option to Purchase.  Def.'s Countercl. at ¶¶ 60-9, 114-143.  A beneficial owner has standing to sue for infringement.

> Black's Law Dictionary, noting the term's origins in the Eighteenth Century, defines "beneficial owner" as "[o]ne recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else . . . . Also termed equitable owner. . . . A person or entity who is entitled to enjoy the rights in a patent, trademark, or copyright even though legal title is vested in someone else." Black's Law Dictionary 1214 (9th ed. 2009) [ . . . ] Further, "[t]he beneficial owner has standing to sue for infringement."  Black's Law Dictionary 1214.  Thus, it appears that, under the general definition of "beneficial owner," such an entity has most to all of

---

[16] KLUR appears to recognize this and thus phrases her argument in terms of the payments made by PFCP to BERNARD DESILVA.  *See* MTD. at p. 16 ("This is three steps removed from the payments Tyco made to Plaintiffs.").  As is clear from the Counterclaims, however, the Unjust Enrichment Counts against KLUR apply only to the enhanced goodwill developed in the Lunkenheimer Trademarks.  Def.'s Countercl. at pp. 33-4, footnote 6.

Moreover, to the extent that Count X also asserts an Unjust Enrichment theory for all payments and enhancements to goodwill in the universe where LUNKENHEIMER INC. and CVL had no right to license the Lunkenheimer Intellectual Property, that claim is also a proper alternative theory of recovery.  *See, e.g., Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012) (denying motion for judgment on the pleadings as to alternative unjust enrichment claim where "one of Plaintiffs' factual allegations is that they were fraudulently induced into entering the contracts, thereby placing the validity of the contracts themselves into question").  In this situation, KLUR would still retain the unjust benefit of the enhanced value of the Lunkenheimer Intellectual Property and BERNARD DESILVA clearly has no right to retain the payments pursuant to a license for intellectual property where he had no right to license the intellectual property in the first instance.  Thus, KLUR's Motion to Dismiss Count X should similarly be denied.

> the traditional property rights of the owner, except for actual legal
> title to the property.

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 409, 425 (E.D. Va. 2011). Movants merely reassert their previous arguments that PFCP did not acquire ownership because it "has not paid a dime for the privilege" of owning the trademarks. MTD at p. 17. Nothing could be further from the truth.

If this Court deems the License Agreements valid, PFCP stands ready and willing to tender what is left of the Purchase Price after subtracting the appropriate setoffs to compensate PFCP for having to endure protracted litigation to gain an adjudication of its clear rights under the License Agreements. Def.'s Countercl. at p. 42, footnote 8. Unfortunately for Plaintiffs/Counterclaim Defendants, by PFCP's calculation, the failure to transfer the Lunkenheimer Intellectual Property upon PFCP's proper exercise of the Option to Purchase has not only eroded the Purchase Price to nothing, but has actually resulted in a $142,398 deficit, to date, that will be due and owing to PFCP. [17] *Id.* Plaintiffs/Counterclaim Defendants' own failure to properly transfer legal title of the Lunkenheimer Intellectual Property to PFCP in 2007 is the only reason they will receive no further remuneration from PFCP. As set forth in more detail above, PFCP's equitable and beneficial rights in the Lunkenheimer Intellectual Property, including the Lunkenheimer Trademarks, vested upon its proper exercise of the Option to Purchase.

Next, Movants complain that it is improper to assert its Lanham Act claims against KLUR because PFCP gives "no hint" as to why she has been named as a Counterclaim Defendant. MTD at p. 17. PFCP directs KLUR to Paragraphs 119 and 135 of its Counterclaims

---

[17] Additionally, PFCP has paid $1,400,000 in initial license fees and $1,627,592 in quarterly license fees, which includes an erroneous overpayment of $132,332. *Id.* at ¶¶ 37-44, 57-9. Contrary to Movants' claims that PFCP has "never paid" for the ownership rights it asserts, PFCP has already paid over $3,027,000.

for a specific explanation of her individual liability under the Lanham Act claims.  KLUR cannot assert an ownership interest in the Lunkenheimer Trademarks, but shirk liability for their infringement and misuse.  Dkt. No. 100.  Apparently, KLUR would like to enjoy all of the benefits of participating in this litigation and incur none of the liabilities.  Violations of the Lanham Act are strict liability offenses.  *Lorillard Tobacco Co. v. Hamden, Inc.*, No. 10-1886, 2011 U.S. Dist. LEXIS 122230, at *13 (N.D. Ohio Oct. 21, 2011) (holding infringers "bear strict liability for violations of the Lanham Act" even where they are ignorant of their own infringing activity).  Tellingly, Movants cite to no authority that would require dismissal of a self-proclaimed trademark owner from an action asserting Lanham Act violations.

Lastly, Movants assert that PFCP has identified no actionable infringement or misuse of the Lunkenheimer Trademarks.  MTD at p. 17.  PFCP has alleged that Movants have licensed the rights to the Lunkenheimer Trademarks to Cincinnati Valve Company ("CVC").  This license continued after PFCP exercised the Option to Purchase.  Def.'s Countercl. at ¶¶ 70-5, 114-143.  Movants argue that the CVC License does not interfere with PFCP's trademark rights because the license granted to PFCP was limited to slurry valves and CVC does not make that type of valve.  MTD at p. 17.  Movants are correct that the license granted PFCP the right to use the Lunkenheimer Trademarks in connection with slurry valves, but the scope of PFCP Option to Purchase is the relevant inquiry.  Pls.' Exhibits "A" and "B" at ¶¶ 1.1 & 2.1.  The Option to Purchase the Lunkenheimer Intellectual Property (including the Lunkenheimer Trademarks and Lunkenheimer Know How) is not limited to slurry valves.  The Option to Purchase provides,

> At any time prior to the fifth anniversary of the Commencement Date Tyco may notify Lunkenheimer that Tyco wishes to purchase the Licensed Intellectual Property for the Purchase Price.

*Id.* at ¶ 5.1.  There is no language that limits the grant of the Lunkenheimer Trademarks to slurry valves.  Schedule 5 to the License Agreements simply lists "Lunkenheimer" and "Lunkenheimer – The One Great Name in Valves" as the two Lunkenheimer Trademarks.  Therefore, PFCP acquired these two trademarks outright, worldwide and for all goods and services when it exercised the Option to Purchase, along with the Lunkenheimer Know How.  PFCP has, therefore, pled that the CVC License constitutes an actionable violation of the Lanham Act.

G. **PFCP's Allegations of Promissory Estoppel and Fraud are Permissible Alternative Theories That Satisfy the Elements of the Claims**

Counts VIII and IX for Promissory Estoppel and Fraud are asserted <u>only</u> against three Plaintiffs/Counterclaim Defendants, BERNARD DESILVA, LUNKENHEIMER INC. and CVL.  Movants again ignore that the Federal Rules of Civil Procedure permit alternative theories.  Thus, Movants assert that the "fraud and promissory estoppel claims simply duplicate their [sic] breach of contract claim, and thus must be dismissed."  MTD. at p. 18.  These Counts, however, are pled in the alternate universe where LUNKENHEIMER INC. and CVL did not own the Lunkenheimer Trademarks, thus rendering the License Agreements a legal nullity.  As a result, an alternative Count for Fraud or Promissory Estoppel, where there is no legal contract, is perfectly permissible.  *See, e.g., Lynch v. Sease*, 244 Fed. Appx. 736, 738 (6th Cir. 2007) (internal citations and quotations omitted) ("A contract and promissory estoppel are two different creatures of the law; they are not legally synonymous; the birth of one does not spawn the other.  Therefore, a plaintiff can pursue contract and promissory estoppel claims in the alternative."); *see also Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, No. 04-2188, 2006 U.S. Dist. LEXIS 100943, at *20 (N.D. Ohio Aug. 17, 2006) ("However, Ohio law permits that where there is a dispute as to the existence or enforceability of a contract, a party may plead promissory estoppel or unjust enrichment in the alternative.").  The law similarly permits a plaintiff to plead

fraud as an alternative theory to a breach of contract count. *See, e.g., Smythe Cramer Co. v. Silva*, No. 13-1403, 2013 U.S. Dist. LEXIS 151556, at *13 (N.D. Ohio Oct. 22, 2013) ("Therefore, while Plaintiffs cannot recover on both breach of contract and fraud claims, they can plead fraud in the alternative.").[18]

Second, Movants incomprehensibly assert that PFCP "has no plausible claim for damages and none can be discerned from the Counterclaims" while simultaneously acknowledging that PFCP was damaged by "Plaintiffs' refusal to close on the sale of the Licensed Intellectual Property in 2007." MTD. at p. 19. In any event, Movants' claim that PFCP was not otherwise damaged is, frankly, the height of absurdity. Movants suggest that even if the License Agreements are invalid because LUNKENHEIMER INC. and CVL did not own the Lunkenheimer Trademarks, PFCP "got exactly what it bargained for" because "Plaintiffs promised that [PFCP] could use the Licensed Intellectual Property and [PFCP] used it." *Id.* PFCP did not pay millions of dollars simply to use the Lunkenheimer Intellectual Property – it paid millions of dollars to license the right to <u>lawfully</u> use (and later purchase) the Lunkenheimer Intellectual Property from its <u>actual</u> <u>owner</u>.[19]

---

[18] To the extent Movants assert, that damages for legal expenses and lost license fees are barred by the economic loss doctrine (MTD. at p. 20), they again fail to understand that the Fraud claim is asserted in the alternative where no contract exists. The "fact that plaintiffs assert claims of promissory estoppel and unjust enrichment based upon the same factual background as the fraud counts does not convert their fraud counts into contracts claims. Plaintiffs are permitted to plead alternative theories of liability in their complaint." *Raftery v. S. Lee Corp.*, No. 07-649, 2007 U.S. Dist. LEXIS 86860, at *11 (S.D. Ohio Nov. 15, 2007) (citing Fed. R. Civ. P. 8(a)). Here, for example, the legal fees that PFCP has incurred and continues to incur are solely the result of the Fraud committed by BERNARD DESILVA, LUNKENHEIMER INC. and CVL in purporting to license the rights to Lunkenheimer Intellectual Property that they did not own.

[19] This argument, of course, also ignores that PFCP negotiated the ability to purchase the Lunkenheimer Intellectual Property to recoup for itself the enhanced value of the goodwill for which it was responsible. PFCP would never have invested years of effort into creating goodwill around the "Lunkenheimer" brand if it could not have the right to purchase the Lunkenheimer Trademarks. Absent BERNARD DESILVA's fraud, PFCP would never have made these expenditures.

Finally, Movants assert that PFCP's "fraud claims should be dismissed because [PFCP] does not claim – nor could it plausibly do so – that is [sic] exercised due diligence regarding the ownership of the Licensed Intellectual Property."  MTD. at p. 19.  Noticeably absent, however, is any authority stating that "due diligence" is an element of a Fraud claim.  Instead, the "elements of civil fraud are: (a) a representation . . ., (b) which is material to the transaction at hand, (c) made falsely, with knowledge of the falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."  *Kiser v. CitiMortgage, Inc.*, No. 11-1428, 2011 U.S. Dist. LEXIS 115560, at *15 (N.D. Ohio Oct. 6, 2011).  "For purposes of a fraud claim, reliance is justified if the purported false representation does not appear unreasonable on its face and, if, under the circumstances, there is no apparent reason to doubt the veracity of the representation."  *Passa v. City of Columbus*, 748 F. Supp. 2d 804, 815 (S.D. Ohio 2010) (partial quotations omitted).  In any event, the question of whether PFCP's reliance was reasonable and justified is ultimately a question of fact for the jury, not one to be resolved on a Motion to Dismiss.  *See, e.g., In re Nat'l Century Fin. Enters.*, 846 F. Supp. 2d 828, 881 (S.D. Ohio 2012).

IV.  **CONCLUSION**

For the foregoing reasons, PFCP respectfully requests that Plaintiffs/Counterclaim Defendants' Motion to Dismiss its Counterclaims be dismissed in its entirety.  If this Court dismisses any portion of PFCP's Counterclaims, PFCP respectfully requests that it be given leave to replead, as such leave should be freely given when justice so requires.  *See* Fed. R. Civ. P. 15(a)(2).

**PEPPER HAMILTON LLP**

*/S/ M. Kelly Tillery*
John C. Hansberry, (Ohio Reg. 0065673)
PEPPER HAMILTON LLP
500 Grant Street, 50th Floor
Pittsburgh, PA  15218-2502
(412) 454-5000
(412) 281-0717 (fax)
Email:  hansberj@pepperlaw.com

and

M. Kelly Tillery*
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
Email: tilleryk@pepperlaw.com

*Admitted *Pro Hac Vice.*

*Attorneys for Defendant/Counterclaim Plaintiff,*
*Pentair Flow Control Pacific Pty Limited*

Dated:  July 14, 2014

<u>**CERTIFICATE OF SERVICE**</u>

I, M. Kelly Tillery, hereby certify that on July 14, 2014, I served a true and correct copy of the Opposition to Motion to Dismiss Counterclaims in the manner indicated below on the following:

<u>**Via ECF System**</u>

Jeffrey M. Eilender, Esq.
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, New York 10004

Firooz T Namei, Esquire
McKinney & Namei Co., LPA
15 E. 8th St.
Cincinnati, Ohio 45202

*/S/ M. Kelly Tillery*
M. Kelly Tillery, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| THE LUNKENHEIMER COMPANY, *et al.* | ) |
| | ) |
| | ) CASE NO. 1:11-CV-824-TSB-KLL |
| | ) |
| Plaintiffs, | ) DISTRICT JUDGE BLACK |
| | ) |
| v. | ) |
| | ) |
| PENTAIR FLOW CONTROL PACIFIC PTY LIMITED, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

## ORDER

AND NOW this _____ day of July, 2014, upon consideration of Plaintiffs/Counterclaim Defendants' Motion to Dismiss Amended Counterclaims, and Pentair Flow Control Pacific Pty Limited's Opposition thereto, it is hereby ORDERED that the Motion to Dismiss is DENIED.

BY THE COURT:

_____
Timothy S. Black, United States District Judge