### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| THE LUNKENHEIMER COMPANY, USWATTA PARTNERS, LLC, USWATTA PARTNERS and CONSOLIDATED VALVES, LTD., | : : : : : | |
| *Plaintiffs,* | : : | **Case No.: 1:11-CV- 824-TSB-KLL** |
| *v.* | : : | **Judge Timothy S. Black** **Magistrate Judge Litkovitz** |
| TYCO FLOW CONTROL PACIFIC PTY, TYCO VALVES & CONTROLS, LP, TV & C GP HOLDING LLC, | : : : : | |
| *Defendants.* | : : | |
| TYCO FLOW CONTROL PACIFIC PTY,  New South Wales Australia Proprietary Limited Company, | : : : : | |
| *Counterclaim Plaintiff,* | : : | |
| *v.* | : : | |
| THE LUNKENHEIMER COMPANY, THE LUNKENHEIMER COMPANY INC., CONFLOW MANUFACTURING INC., STAR- LET CORPORATION, CON-VALVE INTERNATIONAL, INC., THE LUNKENHEIMER COMPANY LTD., USWATTA PARTNERS, USWATTA PARTNERS, LLC, CONSOLIDATED VALVES, LTD, LUNKENHEIMER-ENERGOVALVES, INC., DULWICH-LONDON LIMITED PARTNERSHIP, CAMBERWELL-AUSTRICH LIMITED PARTNERSHIP, DR. BERNARD DESILVA, personally and doing business as any other Plaintiff/Counterclaim Defendant, DR. BERNARD DESILVA, Executor (and any successors thereto) of the ESTATE OF SHEILA DESILVA, Deceased, An Estate raised in the State of Ohio, Hamilton County, Ohio, BERNARD MICHAEL DESILVA, NILMINI KLUR, | : : : : : : : : : : : : : : : : : : : : : : | |

NILMINI KLUR and BERNARD MICHAEL     :
DESILVA, Trustees (and any predecessors or     :
successors thereto) of THE CEYLON     :
IRREVOCABLE TRUST dated September 12,     :
1994, and any amendments thereto, DR.     :
BERNARD DESILVA, Trustee (and any     :
predecessors or successors thereto) of the     :
PADDINGTON-LIFE TRUST dated October 12,     :
1990 as made irrevocable on October 26, 1994,     :
also referred to as PADDINGTON     :
IRREVOCABLE TRUST, DR. BERNARD     :
DESILVA, Trustee (and any predecessors or     :
successors thereto) of the SANDHURST TRUST     :
dated October 12, 1990, and any amendments     :
thereto, also referred to as BERNARD DESILVA     :
AMENDED AND RESTATED SANDHURST     :
TRUST and JOHN DOE, JANE DOE, ABC     :
CORPORATIONS, ABC PARTNERSHIPS     :
and/or ABC TRUSTS,     :
     :
                   *Counterclaim Defendants.*  :

2

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
INTERVENOR/COUNTERCLAIM DEFENDANT NILMINI KLUR'S MOTION TO
DISMISS THE COUNTERCLAIMS OF TYCO FLOW CONTROL PACIFIC PTY**

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Counterclaim Plaintiff Tyco Flow Control Pacific Pty ("Tyco") has for the most part refused to engage the substance of the motion to dismiss by Intervenor/Counterclaim Defendant Nilmini Klur ("Klur"). For that reason alone, the motion should be granted. Moreover,

- Tyco admits that there is no basis for it being declared the owner of the intellectual property at issue in this action without paying for it, and so goes on to defend a declaration it did not seek, which is **if** it pays, **then** it owns the intellectual property. That argument fails as well.

- Tyco tries to defend its claims by ignoring the facts Tyco admits in its Answer and alleges with respect to its claims. Tyco's problem is not that it has pled in the alternative, it is that Tyco fails to state a claim based on the facts it admits and pleads in connection with those alternative claims.

- Tyco throws up its hands in despair in the face of Klur's statute of limitations arguments, claiming that it is too early in this action for Tyco to be expected to address such fact-based questions. This makes sense only if one ignores—as the Court should not—that this case has been proceeding for years and Tyco already has taken discovery from Plaintiffs, Klur and third parties. The only party that so far has refused to provide discovery is Tyco itself.

- Tyco makes no attempt to defend its failure to meet *Twombly*'s and *Iqbal*'s minimal pleading standards by lumping all Counterclaim Defendants together without giving each one notice of what it is alleged to have done, except to make a half-hearted attempt with respect to Klur, an attempt that relies on misconstruing the facts Tyco itself has pled and misstating the relief Klur has sought.

- Tyco fails to point to any law or facts it has plead with particularity supporting its argument that it can pierce the veil of the various corporations, partnerships and trusts at issue here to assert claims against individuals, such a Klur, with which Tyco has had no dealings.

- Tyco asks the Court to ignore the terms of the license that is the crux of the dispute in this action, because only by doing so can Tyco's breach of contract, fraud and promissory estoppel claims survive.

Klur asks the Court to strip all of the legally groundless and factually baseless claims—including all claims against her—out of Tyco's counterclaims so that the parties can focus on the simple dispute at issue here: who breached the license, Tyco or Lunkenheimer, and how.

## II.   TYCO'S PLEADING IN THE ALTERNATIVE DOES NOT EXCUSE IT FROM RULE 8 (OR RULE 11)

Tyco's suggestion throughout its opposition that pleading claims in the alternative saves them from dismissal misses the point.

The Federal Rules of course allow Tyco to assert alternative claims based on different legal and factual theories. However, alternative pleading does not excuse Tyco from:

- Pleading all of the elements of a claim;

- Being bound by the facts that it admits in its Answer, alleges as applicable to both of its alternative scenarios or alleges in connection with a particular claim when the sufficiency of that claim is being considered;

- Pleading claims that are not time-barred;

- Pleading all the facts necessary to state each alternative claim; and

- Meeting the pleading requirements of Rule 8 as explained by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), particularly with respect to the claims against the newly-added Counterclaim Defendants, which Tyco consistently lumps together.

Tyco's counterclaims should be dismissed and its affirmative defenses struck to the extent sought in Klur's motion because of these failures, not because Tyco has pled in the alternative.

## III.   THE COURT SHOULD REJECT TYCO'S ATTEMPT TO LIMIT THE SCOPE OF KLUR'S MOTION

The Court should reject Tyco's attempts to limit the scope—and thus the impact—of Klur's motion. **First**, having granted the motion by the Counterclaim Defendants other than Klur to join in her motion, the Court should reject Tyco's suggestions that Klur's motion should be disregarded with respect to certain claims or defenses.

**Second**, Tyco argues in a footnote that the "original Plaintiffs/Counterclaim Defendants" waived affirmative defenses such as the statute of limitations because they answered Tyco's previous counterclaims. (Opp'n at 6 n.1.) Tyco ignores both that its earlier counterclaims were different in scope and relief sought than their current ones and that Tyco's decision to amend its counterclaims revives Plaintiffs' right to assert affirmative defenses. As this Court explained in *Fitzpatrick v. Potter*, 1:04-CV-369, 2005 WL 2622024 (S.D. Ohio Oct. 14, 2005) (Black, M.J.):

> An amended complaint supersedes the original complaint and renders it of no legal effect. Because a plaintiff's new complaint wipes away prior pleadings, the **amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses**. Moreover, where a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew **as though it were the original complaint**.

(Internal quotations and citations omitted) (emphasis added). *See also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses.").

**Third**, the Court should reject Tyco's technical argument that the Court should not strike the affirmative defenses that are the analogs to Tyco's deficient counterclaims because Klur denominated her motion as one to dismiss, rather than one to dismiss/strike. (Opp'n at 14 n.5.) Tyco is correct that Klur should have captioned her motion as one to strike as well as one to dismiss. However, the Court should do what other courts have done when faced with similar technical objections, and decide Klur's motion on the merits. *See, e.g.*, *Curry v. High Springs Family Practice Clinic & Diagnosis Ctr. Inc.*, 1:08-CV-00008-MP-AK, 2008 WL 5157683 (N.D. Fla. Dec. 9, 2008) (ruling that a motion captioned "Motion to Dismiss Affirmative Defenses" would be treated "as a Motion to Strike the Defendants' Affirmative Defenses under Federal Rules

3

of Civil Procedure 12(f)"); *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, CIV.A. H-09-1574, 2010 WL 2757523 (S.D. Tex. July 13, 2010) (noting that "the proper remedy for an insufficient affirmative defense is a motion to strike under Rule 12(f)," and the court would treat a motion styled as a motion to "dismiss under Rule 12(b)(6) four of the six affirmative defenses" "as a motion to strike"); *see also United States v. Jackson*, CV05-214-C-LMB, 2007 WL 1169695 (D. Idaho Apr. 19, 2007) (treating a late-filed motion to dismiss affirmative defenses as a motion for judgment on the pleadings and reaching the merits of the motion).

## IV.   TYCO'S OPPOSITION CONCEDES THAT IT IS NOT ENTITLED TO THE DECLARATION IT SEEKS IN ITS FIRST COUNT

Tyco's opposition concedes Klur's point in moving to dismiss when it states that Tyco "stood/**stands** ready to tender payment . . . ." (Opp'n at 9, 30.)  Acknowledging that there is no legal basis for the declaration that Tyco sought—which is that it was entitled to a declaration of ownership **without having to pay for it**—Tyco's opposition goes on to defend a counterclaim that Tyco did not make, which is that Lunkenheimer is "legally bound to sell" the Licensed Intellectual Property to Tyco **if** Tyco pays the Purchase Price.  (Opp'n at 9.)  That is relief that Tyco did not seek in its counterclaims.

If Tyco's First Count had sought a declaration that Tyco is entitled to purchase the Licensed Intellectual Property **if** Tyco pays the Purchase Price, such a count still would have to be dismissed because Tyco does not allege facts constituting compliance with the License.

**First**, Tyco argues that the "only conditions" Tyco needed to satisfy in order for Lunkenheimer to be obligated to sell Tyco the Licensed Intellectual Property for the Purchase Price was that it had to give notice of its intent to purchase and schedule a closing.  (Opp'n at 8 – 9.)  Other than the conclusory assertion that it was not obligated to do so, Tyco does not explain why it was excused from its obligations under Section 5.3 of the License, which included

4

Lunkenheimer providing various documents to Tyco and Tyco paying Lunkenheimer "the Purchase Price . . . together with any outstanding license fees calculated up to and including the date of purchase." (*Id.*) **None** of those conditions to the completion of the sale are alleged to have been completed. Thus, Tyco does not allege performance of the conditions for closing the sale.

**Second**, Tyco argues that it tendered payment (Opp'n at 9), but does not allege facts supporting this bald legal conclusion. Indeed, its counterclaims state otherwise, alleging only that Tyco made "**offers to tender** the Purchase Price." (Cclm ¶ 57.)

**Third**, Tyco's argument that because Klur intervened to seek a declaration of her rights in the Licensed Intellectual Property, Tyco's count for a declaration that it owns the Licensed Intellectual Property is immune from dismissal, (Opp'n at 10), is a *non sequitor*. Klur has sought a declaration of

> her rights under the Ohio Trust Act as a current **beneficiary under one or more trusts** executed by Sheila DeSilva and/or Bernard DeSilva, which **trust(s) have intellectual property rights** to certain valves owned by Lunkenheimer Company or some of the other Plaintiffs or Third-Party Defendants; declare the **restrictions imposed on Bernard DeSilva** with respect to his attempts to compromise the principle of the assets owned by one or more trusts executed by Sheila DeSilva and/or Bernard DeSilva; and grant her such other, further and different relief as the Court deems just and proper.

(Third Party Complaint and Cross Claim of Nilmini Klur at 6 – 7 [Docket # 99] (emphasis added).)[1]

Tyco is well aware of the overwhelming evidence supporting Klur's claim that she is a beneficiary of a trust that has an interest in the Licensed Intellectual Property. Tyco could have moved to dismiss Klur's claim, but it did not, likely for this very reason. But just because Klur states a claim for a declaration of rights she has in the Licensed Intellectual Property, that does not

---

[1] Tyco suggest that it is "unclear" what declaration Klur seeks. (Opp'n at 10.) Her Third Party Complaint and Cross Claim, cited above, states explicitly what declaration she seeks.

mean that the facts alleged by Tyco entitle it to a declaration that it owns the Licensed Intellectual Property even though it did not pay for it and even though the other conditions for the closing of the sale were not met. One claim simply has nothing to do with the other.

## V.      TYCO CANNOT SAVE THE DECLARATION IT SEEKS IN ITS SEVENTH COUNT BY IGNORING THE FACTS IT ADMITS IN ITS ANSWER AND ALLEGES IN CONNECTION WITH THAT COUNT

Tyco goes on at length about alternative pleading (Opp'n at 10 – 12), but Tyco cannot admit facts in its Answer, allege them in the first half of its Counterclaim, incorporate documentary evidence into its alternative claims and then ask the Court to ignore those facts when they are inconvenient to its alternative theory for a declaratory judgment.

Tyco admits that it "signed two License Agreements in 2002 . . . with The Lunkenheimer Company, Inc. and CVL, respectively." (Tyco Answer ¶ 14; *see also* Cclm ¶¶ 22 – 28 (alleging that in August 2002, Tyco signed license agreements with Lunkenheimer and CVL and that "[a]s part of the License" Lunkenheimer and CVL "granted" Tyco "an exclusive worldwide license for the Licensed Intellectual Property to exploit in connection with slurry valves").) Tyco refers to the License in Count Seven, and so it is incorporated into that claim and the Court can refer to the entire License, and not just the terms Tyco cherry-picks from it. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (internal quotations and citations omitted).

Tyco alleges that "from 2002 through 2007," it "made quarterly royalty payments totaling $1,627,592" under the License. (Cclm ¶ 57.) Tyco also admits that in connection with the License, it Tyco "purchased all right, title and interest in" the John Valves property in August 2002. (Tyco Answer ¶ 37; Cclm ¶¶ 41 – 43.) Moreover, Tyco admits that it "has been selling slurry valves branded with the Lunkenheimer Trademarks **since 2002**." (Tyco Answer ¶ 17

6

(emphasis added).) Finally, Tyco admits that "that the 'rightful owner(s)' of the Licensed Intellectual Property never executed paperwork transferring the Licensed Intellectual Property to" Tyco. (*Id.* ¶ 26.)

Tyco seeks to justify the declaration it seeks in Count Seven by citing to the payments it made pursuant to the License, but it ignores the rest of the License, including the obligation to make quarterly payments for using the Licensed Intellectual Property. This, and all of the other facts to which Tyco admits in its Answer and pleads in the introduction (not the alternative claims) of its Counterclaim directly contradict the central claim in Tyco's Seventh Count, which is that "Plaintiffs/Counterclaim Defendants **have not used or licensed** the Lunkenheimer Trademarks in connection with slurry valves since 2002 and have **abandoned** the worldwide rights to the Lunkenheimer Trademarks used in connection with slurry valves." (Cclm ¶ 156 (emphasis added).)

Tyco does not attempt to argue how all the facts showing that the parties all understood that Tyco was entering into a license for which it paid (at least for a while) so that it could use the Licensed Intellectual Property—and that it **used and to this day continues to use** the Licensed Intellectual Property—could support a claim that the Licensed Intellectual Property was abandoned, much less cite any law supporting such an argument.

Tyco asserts that its declaratory judgment counts are not duplicative of its Second Count for Breach of Contract (Opp'n at 12 – 14), but it ignores that it has referred to—and thus incorporated—the License into its declaratory judgment claims. Thus, the declaratory judgment counts duplicate the breach of contract and promissory estoppel counts. Tyco cannot ignore the inconvenient fact of the existence of the License—which it admits in its Answer and affirmatively pleads in its Counterclaims.

Tyco's argument that a declaratory judgment that it owns the Licensed Intellectual Property is necessary to "determine future ownership rights" (Opp'n at 13 – 14), might make sense if Tyco had asked the Court to declare **who**, if not Lunkenheimer, owned the Licensed Intellectual Property.  But that is **not** the declaration Tyco seeks; it seeks a declaration that it owns the Licensed Intellectual Property because the owners of the Licensed Intellectual Property allegedly abandoned it.  Because Tyco has pled no non-conclusory facts and has, in opposition, presented no law, supporting the declaration it seeks, Tyco's claim should be dismissed.

**VI.**     <u>**TYCO HAS SHOWN NO REASON THAT ITS CLAIMS SHOULD NOT BE DISMISSED ON STATUTE OF LIMITATIONS GROUNDS**</u>

Tyco fails to engage the substance of Klur's statute of limitations arguments.  **First**, Tyco's primary argument is that it cannot possibly be asked to engage on the substance because discovery is not complete and it is "impossible to determine the applicable law as to each Count as to each party at this juncture."  (Opp'n at 14; *see also* Opp'n at 17 – 18.)  Tyco ignores that this case has been going on for years and that Tyco already has taken discovery from Klur, Dr. DeSilva and the other Plaintiffs, Dr. DeDesilva's trust and estates lawyer, and third-parties.  Only one of the original parties to this action has refused to provide discovery:  **Tyco**.  Thus, all the cases cited by Tyco that put off deciding motions to dismiss because of insufficient discovery are irrelevant.

**Second**, Tyco's opposition discusses the statute of limitations for its unjust enrichment and Lanham Act claims (Opp'n at 14 – 18), but does not discuss the claims in its Second Count that Plaintiffs breached the warranties in Sections 11.1 and 11.2 of the License, in its Eighth Count for Promissory Estoppel or the claims in its Ninth Count for Fraud/Fraudulent Misrepresentation/Fraudulent Inducement.  Thus, those claims should be dismissed.

**Third**, Tyco argues that the statutes of limitations as to Klur should be based on Pennsylvania law, because she resides there.  (Opp'n at 15.)  Such an argument fails for multiple reasons.  Most fundamentally, and applicable to all of Tyco's claims against Klur, is that Tyco cites no legal basis for asserting a claim against Klur based on her interest in business entities that have allegedly been enriched or have otherwise engaged in conduct alleged to have injured Tyco.  (Opening Br. at 16.)  What Tyco wants to do is pierce the veil of multiple independent legal entitles—corporations, partnerships and trusts—in order to assert claims against Klur.  Tyco has not even attempted to allege a veil piercing claim, much less pled the facts with the particularity required by Rule 9(b) to support one.  *See, e.g.*, *Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, 119 Ohio St. 3d 506, 510 – 513 (2008) ("The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was **so complete that the corporation has no separate mind, will, or existence** of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong" and to "fulfill the second prong of the" test, "the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act" constituting "**extreme shareholder misconduct**") (emphasis added); *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) ("When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b).").  Thus, those claims—including its statute of limitations arguments—fail.

Further, other than asserting that it is the case, Tyco does not explain why the location of Klur's residence is relevant when Tyco's claim is based on the direct enrichment of entities in Ohio.  Tyco clearly knows the difference.  In its counterclaims, Tyco clarifies that its "basis for including KLUR as a Counterclaim Defendant with respect to this Count is that, as a purported owner of the Licensed Intellectual Property, any enhancement of the good will associated with the Lunkenheimer Trademarks would unjustly enrich KLUR," but that Tyco "is not seeking the return of the overpayment and/or premium license fees from KLUR."  (Cclm. at 33 n.6, 51 n.9.)  Tyco thus recognizes that whatever enrichment Klur has received is indirect.  Thus, her location in Pennsylvania is irrelevant.  And, of course, the entities plausibly enriched (and that we have to guess how and why each Counterclaim Defendant was enriched shows why the unjust enrichment claims should be dismissed (Opening Br. at 15)) are—as Tyco itself alleges with the exception of Lunkenheimer-Energovalves, Inc.—located in Ohio.  (*See* Cclms ¶¶ 4 – 12.)

Tyco switches gears and then argues that the place of injury for its unjust enrichment claims in New South Wales, and that that is controlling.  (Opp'n at 15.)  However, Tyco does not explain what the elements of a claim for unjust enrichment might be under New South Wales law, what the statute of limitations is or why its claims are not time-barred even if New South Wales law applied.  It turns out, though, that the statute of limitations for unjust enrichment in New South Wales is six years, just as it is in Ohio.  *See* New South Wales Limitation Act 1969 § 14(1).

Tyco suggests the New South Wales Limitation Act provides a basis for tolling the statute of limitations for unjust enrichment.  (Opp'n at 17.)  This is not what the New South Wales Limitation Act says.  Under Section 55 of the Act, an action can be tolled "based on fraud or deceit"—which is not applicable to a claim for unjust enrichment—or where "a cause of action or the identity of a person against whom a cause of action lies is **fraudulently concealed**" (emphasis

10

added), which again is not pled.  Even if Tyco could overcome those hurdles, it still has not pled

facts supporting tolling under Section 55 with respect to any of the Counterclaim Defendants other

than the Plaintiffs, because for Section 55 to apply, Tyco must show that the person against which

it seeks to apply tolling was herself "a party to the fraud or deceit" or a successor in interest to her.

Thus, even if New South Wales law applied to Tyco's unjust enrichment claim, the claim

would be just as time-barred as is under Ohio law.

Similarly, Tyco suggests that "the Discovery Rule and Doctrine of Fraudulent

Concealment" might defeat Klur's motion (Opp'n at 16 – 17), but it does not explain how, exactly,

those doctrines apply to its unjust enrichment or Lanham Act claims, except to argue that it did not

learn that Klur claimed an indirect beneficial interest in the Licensed Intellectual Property until

2014 (*id.*).  At this juncture, Tyco had to make specific arguments, not hand-waving about the

possibility of the statute of limitations being tolled.  It did not.  And, of course, as Tyco itself

concedes, "Ohio does not apply the Discovery Rule to claims for unjust enrichment."  (Opp'n at

17.)

## VII.     THE COURT SHOULD REJECT TYCO'S ATTEMPT TO SAVE ITS BREACH OF CONTRACT CLAIMS BY REWRITING THE LICENSE

**First**, Tyco cites no law supporting its argument that the provision of the License requiring

Lunkenheimer to "protect" the Licensed Intellectual Property really means "file trademark

registrations regarding" the Licensed Intellectual Property.  (Opp'n at 19 – 21.)  Tyco cannot

change the words of the License simply by asserting that they really mean something else.

Tyco misses the point in arguing that Tyco could exercise discretion in deciding whether to

engage in self-help under Section 9.5 of the License.  (Opp'n at 20 n.11.)  Section 9.5 provided

Tyco's remedy for any failure by Lunkenheimer to "commence proceedings under clause 9.3."

11

Tyco failed to avail itself of the remedy. Having failed to use the remedy the License provided it, it has no claim against Lunkenheimer for not doing something the License did not require it to do.

**Second**, Tyco once again cites no law supporting its argument that it could waive the dispute resolution provisions in the License—including asserting counterclaims—and then claim that Plaintiffs breached them. (Opp'n at 22.) Not only does Tyco not explain why the distinction between waiver of arbitration clauses and waiver of other dispute resolution provisions is meaningful (Opp'n at 22), it simply is wrong in arguing that all of the cases cited in Klur's opening brief related to the enforcement of arbitration provisions. *Crowe Ents., Inc. v. Amicon Med. Grp., Inc.*, No. 2013–P–0031, 2014 WL 31398 (Ohio Ct. of App., 11th Dist., Portage County January 6, 2014), related not to an arbitration provision, but to an alternative dispute resolution provision very similar to the one here, which required "a party that seeks litigation under the contract to, among other things, **negotiate** a solution among themselves, **explore** alternative dispute resolution, and then **file suit** in the Circuit Court of the Judicial Circuit in and for Cuyahoga County, Ohio." *Crowe Ents.*, 2014 WL 31398 at *2 (emphasis added). The court explicitly acknowledged that the dispute resolution provision was not "an arbitration clause," but went on to hold that "the **principles regarding waiver of arbitration apply with equal force**, . . . placing the merits of the claim before the factfinder unequivocally indicates a willingness to be bound by its findings, notwithstanding the claim dispute mechanism." *Id.* at *3 (emphasis added). *See also Eli Lilly & Co. v. Emisphere Technologies, Inc.,* 408 F. Supp. 2d 668, 696, 2006 WL 42084 (S.D. Ind. 2006), holding:

> the Lilly-Emisphere contracts include a dispute resolution mechanism requiring **negotiations with senior management**. Emisphere asserts that Lilly breached those terms of the contract by filing this lawsuit before the contractual procedure could be used. The point is relevant to the election of remedies argument discussed above, for it helps undermine the defense by explaining why

12

> Emisphere negotiated rather than terminate immediately. However, Lilly's breach of the contract in this respect does not support additional independent relief. The court believes that Emisphere has **waived any such claim by participating in this lawsuit without trying promptly to have the court stay, dismiss, or transfer the action on this basis**.

(Emphasis added).

Finally, the remedy for the alleged failure to follow the License's dispute resolution procedures is not a breach of contract claim, it is staying this action so that the procedures can be followed, something Tyco has not sought.

## VIII.    TYCO CANNOT REWRITE THE LICENSE TO SAVE ITS INDEMNIFICATION CLAIM

Tyco once again tries to save its claims by arguing that the License says something that it does not. **First**, Tyco insists that contractual warranties stated in the present tense can somehow be turned into promises made in the future. (Opp'n at 23 – 26.) The Section 11.2 warranties are that "there **are** no actions, claims, proceedings or investigations pending or threatened against [Lunkenheimer] . . . which may have a material effect on the subject matter of this document; and in particular," "no proceedings **have been** commenced or threatened against" Lunkenheimer "for infringement by it of any Intellectual Property Rights of any person; and" and the License "**does not** infringe any Intellectual Property Rights of any person." (License § 11.2 (emphasis added).) Each warranty is in the present tense.

Tyco's argument that the warranties should nonetheless be rewritten to make promises in the future tense makes no sense given the wording the warranties. If Tyco's argument were adopted, it could sue Lunkenheimer for breach of contract if, after the license was signed, anyone **threatened to sue** Lunkenheimer for infringing their intellectual property rights, even if that intellectual property had **nothing to do** with the License. This, of course, is absurd, and a contract interpretation leading to absurd results must be rejected.

Just as Tyco tries to rewrite the License to save its claims, it seeks also to rewrite Klur's claims to turn them into a claim **against Tyco** because the License infringes her intellectual property rights. But Klur seeks only a declaration of her interests; she nowhere claims that Tyco has infringed the rights of any trademark owner. Tyco might be entitled to indemnification if someone had tried to hold Tyco liable because Lunkenheimer infringed the intellectual property rights of some third party in granting the License. But there are no such claims in this or any other action.

Finally, Tyco tries to rewrite the License by arguing that the word "infringe" in Section 11.2 means something completely different. (Opp'n at 25 – 26.) Again, Tyco should be bound by the terms of the License it drafted and signed, not the one it has created out of whole cloth to support its counterclaims.

## IX.   TYCO CANNOT ASSERT UNJUST ENRICHMENT CLAIMS WHERE IT HAS NOT ALLEGED DIRECT ENRICHMENT

Just as Tyco wants the Court to rewrite the License to save its breach of contract claims, it wants to rewrite its Counterclaims in order to save its unjust enrichment claims.

As an initial matter, Tyco seeks to excuse its failure to meet the pleading requirements of *Twombly* and *Iqbal* by lumping all of the Counterclaim Defendants together by throwing up its hands and claiming that "it is entirely unclear" who received the funds it claims Counterclaim Defendants unjustly retained and that is cannot "possibly identify the precise entities that received the benefits of the enhanced goodwill." (Opp'n at 26 – 27.) Tyco misses the obvious answer, which is that if it lacks any factual basis for asserting claims against Counterclaim Defendants, it should not assert them. *See* Fed. R. Civ. P. 11. Moreover, whatever the subjective beliefs of Tyco and it counsel, *Twombly*, *Iqbal* and the many other cases Klur cited in her opening brief (*see* Opening Brief at 4 – 5, 15), require Tyco to give each Counterclaim Defendant notice of what she

14

**individually** is alleged to have done. Tyco has not done so. Thus, its unjust enrichment claims against the Counterclaim Defendants should be dismissed.

Tyco argues that "[t]he allegations in Count IV relate to monetary overpayments." (Opp'n at 26.) However, Tyco's claim goes well beyond a claim for the return of overpayments; it seeks the return of the license fees it paid Lunkenheimer as well as payment for enhancing the goodwill of the Licensed Intellectual Property (without explaining how Plaintiffs were enriched by Tyco's use of that property for years without paying for it) because Lunkenheimer did not sell Tyco the Licensed Intellectual Property. (Cclm ¶¶ 111 – 112.) This merely restates Tyco's breach of contract claim as a claim for unjust enrichment, and so Tyco's Fourth Count should be dismissed. *See Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) ("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject.").

The cases cited by Tyco to try to save unjust enrichment claims against persons it did not directly enrich do not stand for the proposition for which Tyco cites them. In *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 861-62 (6th Cir. 2002) (Opp'n at 28), the Sixth Circuit was not addressing the question of whether an unjust enrichment claim could be asserted against an indirect beneficiary, it examined whether even a **direct beneficiary** could be the subject of an unjust enrichment claim made by a sub-broker that was not paid by the direct beneficiary's broker. Indeed, the *Reisenfeld* court acknowledged that "the general rule in contractor/subcontractor cases is that 'an action for unjust enrichment **does not lie** against an owner by a subcontractor in the absence of evidence that the owner misled the subcontractor to the subcontractor's detriment, that the owner in some way induced a change in the subcontractor's position to the subcontractor's detriment, or some evidence of fraud by the owner against the subcontractor,'" *id.* at 861 – 862,

15

even though the owner is the direct beneficiary of the benefit of the subcontractor's work. Similarly, in *Guardian Tech., Inc. v. Chelm Properties, Inc.*, No. 80166, 2002 WL 31087415 (Ohio Ct. of App., 8th Dist. Sept. 19, 2002), the plaintiff sued the direct beneficiary if the work it performed—the owners/tenants of a building.

Tyco's claim are completely different from those in *Reisenfeld* and *Guardian Tech*. In *Reisenfeld* and *Guardian Tech*, the plaintiff provided a benefit directly to the defendant, and the question was whether it could assert a claim for unjust enrichment when a third-party had contracted with the plaintiff to do the work but then had not paid the plaintiff. Here, Tyco entered into the License with Lunkenheimer and paid Lunkenheimer—at least for a while—accordingly. Now it wants its money back. If Tyco had a claim, it would be against Lunkenheimer, which it paid, not the other Counterclaim Defendants (and particularly Klur) who it did not pay.

To the extent, Tyco is arguing that it should be allowed to assert a veil piercing claim against Klur or other Counterclaim Defendants, such a claim fails for the reasons discussed.

X.     **TYCO'S LANHAM ACT CLAIMS FAIL BECAUSE IT CANNOT IDENTIFY ANY INFRINGEMENT**

Having tried rewriting the License and then its Counterclaims in order to save them, Tyco now seeks to rewrite documents it referred to in support of its counterclaims in order to save its Lanham Act claims. **First**, the only parties to the CVC License were the Lunkenheimer Company and Cincinnati Valve Company. (McMahon Decl. Ex. 5 at 1.) Thus, Tyco's assertion that "Movants have licensed the rights to the Lunkenheimer Trademarks to Cincinnati Valve Company" (Opp'n at 31), is indisputably false with respect to every Counterclaim Defendant other than the Lunkenheimer Company, and particularly so with respect to Klur.

**Second**, as to the Lunkenheimer Company, the CVC License did not relate to slurry valves, and thus does not cover the same subject matter as the License, which is limited to slurry

16

valves.  (Opening Brief at 17 – 18.)  Tyco argues that the CVC License infringes its intellectual property rights based on the assumption that Tyco owns the Licensed Intellectual Property. (Opp'n at 31 – 32.)  As discussed above, there is no legal basis for Tyco's claim of ownership, and thus no basis for its Lanham Act claim.

**Third**, Tyco's argument that infringers are strictly liable for infringement under the Lanham Act (Opp'n at 30 – 31), ignores Tyco's failure to give any hint of how Klur (or anyone else, for that matter), used the Lunkenheimer trademarks in violation of the rights of the owner of those trademarks.  The issue here is not the scope of the Lanham Act, it is Tyco's failure to meet the requirements of *Twombly* and *Iqbal*.  And, of course, Tyco's failure to plead facts supporting a claim based on veil piercing.

**Fourth**, Tyco's argument that it has standing to assert Lanham Act claims even though it does not own the Licensed Intellectual Property because it is the "beneficial owner" of the Licensed Intellectual Property (Opp'n at 29 – 30), fails for many reasons.  As showed above, Tyco has presented no basis for the declaration it seeks that it owns the Licensed Intellectual Property even though it never paid for it.  To the extent Tyco has rewritten its claim to be one that it becomes the owner of the Licensed Intellectual Property **if** it pays the Purchase Price, that is contingent and the contingency has not occurred, so Tyco still is not the owner of the Licensed Intellectual Property.

Further, Tyco asserts, without citation to law, that because of Plaintiffs' alleged breach of their contractual obligation to sell the Licensed Intellectual Property to Tyco for the Purchase Price, Tyco has now become the beneficial owner of the Licensed Intellectual Property.  There is no factual or legal basis for this bare legal conclusion.  There is in particular no basis for Tyco's reliance on *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 803 F. Supp. 2d 409 (E.D. Va. 2011).  *Pfizer*

17

does not stand for the proposition that someone claiming the right to buy intellectual property becomes the beneficial owner. *Pfizer* was about the interpretation of an agreement under which Pfizer was to act "as **agent** for LIMITED, so that such applications and any patents issued thereon shall be held by PFIZER [INC.] **in trust** for LIMITED, as the **beneficial owner** thereof." *Pfizer*, 803 F. Supp. 2d at 420 – 421 (emphasis added). Thus, the *Pfizer* court was examining the question of the standing of Limited in light of a contract stating that the patents at issue were being held in trust for it and that it was the beneficial owner. That has nothing to do with this case, where Tyco never owned the Lunkenheimer trademarks and never paid the Purchase Price the License said it had to pay to buy them.

## XI.  TYCO'S PROMISSORY ESTOPPEL AND FRAUD CLAIMS CANNOT SURVIVE THE FACTS TYCO PLEADS

Tyco's alternative pleading defense (Opp'n at 32 – 33), cannot save its promissory estoppel and fraud claims from Tyco's own pleadings. As discussed at length above in connection with its alternative Declaratory Judgment count, in its answer to Plaintiffs' claims, the introduction to its counterclaims and in its alternative counts, Tyco pleads that it entered into a license with Lunkenheimer, made certain payments, but did not pay the Purchase Price. Those facts are fatal to Tyco's promissory estoppel and fraud claims (which are, at any rate, time-barred). It is completely permissible for Tyco to allege as an alternative that the License is not valid, but Tyco goes well beyond that in its counterclaims and ignores the terms of the License (which Tyco admits exists) and the parties' actual conduct as alleged by Tyco itself.

Tyco's apparent misreading of Klur's motion leads it to make exactly the point made by Klur's motion. Klur argued that Tyco "has no plausible claim for damages and none can be discerned from the Counterclaims, **except** to the extent Tyco asserts a claim for Plaintiffs' refusal to close on the sale of the Licensed Intellectual Property in 2007." (Opening Brief at 19 (emphasis

added).)  That is to say, as Klur acknowledged in connection with Tyco's breach of contract claim, Klur does not dispute that (the merits of the claim to one side) Tyco has stated a claim for breach of contract claim with respect to Lunkenheimer's refusal close on the sale of the Licensed Intellectual Property and the Court will have to decide who breached the License—Tyco or Lunkenheimer.  However, Klur argued that Tyco had not plausibly alleged any **other** damage.  In its opposition, the only damage Tyco can point out is the failure of sale of the Licensed Intellectual Property to close.

Tyco claims that it had no obligation to exercise due diligence.  (Opp'n at 34.)  This ignores not only the cases cited in Klur's motion, but misconstrues the case Tyco itself cites.  Tyco cites *Passa v. City of Columbus*, 748 F. Supp. 2d 804, 815 (S.D. Ohio 2010) for the proposition that it had no obligation to exercise due diligence, but ignores both that in *Passa* the court dismissed the fraud claim for failure to exercise due diligence, making her reliance unreasonable, and that *Passa* repeats the rule that the amount of diligence a plaintiff must show is based on the "plaintiff's level of sophistication.)  *Id.*  Tyco, a sophisticated international business cannot avoid its obligation to conduct—and plead—due diligence.

Tyco argues in a footnote that the economic loss doctrine does not apply to its fraud claims because it alleged that its claims are "asserted in the alternative where not contract exists."  (Opp'n at 33 n.18.)  Of course, the cases it cites do not stand for that proposition and the argument itself makes no sense.  All (properly pled) fraud claims do not duplicate breach of contract claims.  The point of the economic loss doctrine is that Tyco can recover on a fraud theory only for its out-of-pocket loss, not further economic losses such as attorneys' fees or lost profits.  *See Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414 (2005) ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss.").

19

Dated: Cincinnati, Ohio
       July 28, 2014

                              **EBERLY MCMAHON**

                   By:    /s/ Robert A. McMahon
                          Robert A. McMahon (0064319)
                          2321 Kemper Lane
                          Suite 100
                          Cincinnati, Ohio 45206
                          Telephone No.: (513) 533-3441
                          E-Mail: bmcmahon@emh-law.com

                          *-and-*

**SCHLAM STONE & DOLAN LLP**

By:    /s/ Jeffrey M. Eilender
        Jeffrey M. Eilender (*admitted pro hac vice*)
        26 Broadway
        New York, New York 10004
        Telephone No.: (212) 344.5400
        E-Mail: jme@schlamstone.com

        *Attorneys for Nilmini Klur*


<u>**CERTIFICATE OF SERVICE**</u>


      I hereby certify that on July 28, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


        /s/ Robert A. McMahon


21