## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| THE LUNKENHEIMER COMPANY, *et al.*, | : : : | Case No. 1:11-cv-824 |
| Plaintiffs, | : : | Judge Timothy S. Black |
| vs. | : : | |
| PENTAIR FLOW CONTROL PACIFIC PTY LTD., | : : : | |
| Defendant. | : : | |

## ORDER DENYING INTERVENOR'S MOTION TO DISMISS
## THE COUNTERCLAIMS (Doc. 121)

This civil action is before the Court on Intervenor Nilmini Klur's Motion to Dismiss

the Counterclaims (Doc. 121), in which motion Plaintiffs join, and the parties' responsive

memoranda.   (Docs. 126, 128, 129, 130).

## I.      BACKGROUND

For purposes of this motion to dismiss, the Court must: (1) view the claims in the

light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true.

*Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

In August of 2002, Plaintiffs the Lunkenheimer Company, Inc. ("Lunkenheimer")

and Consolidated Valves, Ltd. ("CVL") licensed certain intellectual property to Defendant.

(Doc. 121-2 at 2-63; *see also* Doc. 106 at ¶¶ 24-28; Doc. 89 at ¶ 14).   The license "is

governed by the law in force in New South Wales."   (Doc. 121-2 at 25).   The license

covers the use of various categories of intellectual property for use in slurry valves –

large, special application, industrial valves.   (*Id.* at 12).   The license provided for an initial payment and subsequent periodic license payments, including quarterly minimum payments.   (*Id.* at 14-16).   The parties dispute whether Defendant made all required payments; Defendant alleges that it overpaid.   (Doc. 106 at ¶ 92).

The license had a term of 15 years, but it gave Defendant the right "[a]t any time prior to the fifth anniversary of the date of" the license to "notify Lunkenheimer that [Defendant] wishe[d] to purchase the Licensed Intellectual property for the Purchase Price."   (*Id.* at 14, 21).   The license provided a procedure for Defendant to give notice of its intention to exercise the purchase option, a formula for calculating the purchase price for the licensed intellectual property, and conditions for closing the sale.   (*Id.* at 14). Defendant timely gave notice of its intent to exercise the option, but the closing never occurred.   (Doc. 106 at ¶¶ 63-64, 69).   Defendant alleges Plaintiffs refused to close and accept the purchase price Defendant was offering pursuant to the purchase price formula. (*Id.* at ¶ 69).

Plaintiffs allege in their Complaint that Defendant breached the license in a host of ways, including failing to (1) provide detailed net sales, statements and/or calculations of payments to support its fee payments; (2) provide access to supporting documentation or cooperate with Plaintiff Lunkenheimer's audit; (3) make all royalty payments; and (4) get Plaintiff Lunkenheimer's permission before sublicensing the licensed intellectual property. (Doc. 89 at ¶¶ 22-29).

Defendant alleges that Plaintiffs breached the license by, *inter alia*, refusing to close

2

on the sale of the licensed intellectual property, refusing to return alleged overpayments of licensing fees and breaching various representations and warranties in the license.   (Doc. 106 at ¶ 92).

Plaintiffs brought this action on November 22, 2011.   (Doc. 121-1 at ¶ 3).   On August 3, 2012, Defendant answered and asserted counterclaims against a handful of Counterclaim Defendants.   (*Id.* at ¶ 5).   On September 4, 2013, Plaintiffs filed an Amended Complaint.   (Doc. 121-2 at 65-74).   On March 14, 2014, Intervenor Klur was granted leave to intervene in this action to protect whatever beneficial interests she might have in the licensed intellectual property.   (Doc. 121-1 at ¶ 7).   On May 2, 2014, Defendant filed amended counterclaims against Plaintiffs and the Counterclaim Defendants named in the August 3, 2012 pleading, as well as a number of other, newly-named Counterclaim Defendants, including Intervenor Klur .   (Doc. 121-2 at 76-139).[1]   Klur now moves to dismiss the Counterclaims, which motion the Court has granted Plaintiffs leave to join.

---

[1]  Defendant filed two pleadings with Counterclaims; one in response to the Amended Complaint and the other in response to Intervenor Klur's Complaint. (Doc. 121-2 at 76-139). Intervenor's motion, which Plaintiffs have joined, covers both of Defendant's filings. (Doc. 121 at 6).

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."   To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).   Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (*citing Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'[.]"   *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265 (1986)).   Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"   *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.   A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.*

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the pleading of claims shall be dismissed.  *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

### III.    ANALYSIS

#### A.    Statutes of Limitations

Intervenor and Plaintiffs ("Movants") argue that various claims brought by Defendants are barred by applicable Statutes of Limitation, but given the uncertainty as to the true parties to this action, at this juncture it is impossible to determine the applicable law as to each Count as to each party.   For example, Movants correctly state that claims arising under the license are subject to the law of New South Wales, Australia, but they assume that Ohio law applies to the remainder of Defendant's claims.   However, while Ohio may have an interest in some of the claims as to some of the parties, there are many jurisdictions with a decided interest in this dispute.  *See Q & R Assocs. Inc. v. Unifi Technical Fabrics*, No. 01-641, 2006 U.S. Dist. LEXIS 72156, at *2 (S.D. Ohio Oct. 3, 2006) (explaining that "Ohio courts apply the interest analysis tests" to resolve choice-of-law issues).

A number of Plaintiff entities are believed to be *de facto* and/or *de jure* Ohio entities, Bernard DeSilva and Bernard Michael DeSilva are Ohio residents, and the various trusts are formed in Ohio.   (Doc. 106 at ¶¶ 4-6, 8-9, 11-12).   On the other hand, Lunkenheimerener-Energovalves, Inc. is a Delaware corporation, and Intervenor Klur is a

Pennsylvania resident.  (*Id.* at ¶¶ 7, 10).   To the extent Intervenor Klur enjoys an unjust enrichment as a result of the enhanced goodwill in the licensed intellectual property in which she asserts an interest, she likely enjoys that benefit in Pennsylvania.   Defendant's payments made pursuant to the license were made from an Australian account to accounts in Pennsylvania.  (Doc. 126-1 at 2).   As to Australia's interest in this dispute, Defendant is a corporation organized under the laws of New South Wales, Australia.   (Doc. 106 at ¶ 1).   The license at issue was negotiated and executed in Australia, and the parties, at least those who signed the license, agreed that New South Wales Law would govern their relationship.  (Doc. 121-2 at 25, 57).   The harm arising from Plaintiffs' alleged unlawful conduct occurs in Australia, including the alleged injury resulting from Plaintiffs' failure to file trademark renewals, which Defendant alleges has permitted at least one registration in a different international jurisdiction to fall into the hands of a competitor.   (Doc. 106 at ¶ 92).

Moreover, determining which law to apply in this case is not a distinction without a difference.   For example, Movants correctly assert that the statute of limitations for Lanham Act claims in Ohio is two years.   (Doc. 121 at 11). Pennsylvania courts, on the other hand, apply a six-year limitations period to Lanham Act claims.  *See Highland Tank & Mfg. Co. v. PS Int'l, Inc*., 393 F. Supp. 2d 348, 359 (W.D. Pa. 2005) ("However, under Pennsylvania law, the statute of limitations to be applied to the Lanham Act is clearly six years").   Moreover, Movants fail to even consider the Discovery Rule and the Doctrine of Fraudulent Concealment in arguing that Defendant's claims are time-barred.   Defendant

6

alleges its recently-added counterclaims arise from its discovery during the potential settlement of this litigation that contrary to (1) the representations leading up to the license and (2) Bernard DeSilva's acceptance of payments pursuant to it, Lunkenheimer and CVL may not have owned the licensed intellectual property in 2002.   Further, on her entry into this litigation, Intervenor Klur asserted that a different trust in which she holds an interest is the true owner.   (Doc. 100 at ¶ 16).

Here, the various jurisdictions interested in this dispute also have their individual applications of the Discovery Rule and/or Doctrine of Fraudulent Concealment.   For example, in Pennsylvania, the Discovery Rule is applicable to claims for unjust enrichment.   *See, e.g., Ruddy v. Mt. Penn Borough Mun. Auth.*, No. 1120, 2014 Pa. Commw. Unpub. LEXIS 268, at *5-8 (Pa. Comm. Ct. May 6, 2014).   Conversely, Ohio does not apply the Discovery Rule to claims for unjust enrichment.   *See Desai v. Franklin*, 895 N.E. 2d 875, 884 (Ohio Ct. App. 2008) (While Ohio does not apply the Discovery Rule to claims for Unjust Enrichment, Defendant's claims under Ohio Law are still timely because "[s]o long as a person continues to confer a benefit upon another, and the retention of that benefit is unjust, the unjust enrichment continues").   Moreover, while New South Wales recognizes both the Discovery Rule and the Doctrine of Fraudulent Concealment, *see, e.g.*, New South Wales Limitation Act of 1969 § 55(a)(1), the specific requirements for invoking the doctrines, and their proper application under New South Wales Law, <u>may</u> have to be the subject of expert opinion.   *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony").

7

"The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case." *Czuchaj v. Conair Corp.*, No. 13- 1901, 2014 Dist. LEXIS 54410, at *23 (S.D. Cal. Apr. 17, 2014) (declining to resolve the issue at the motion to dismiss stage because "this Court finds that the choice of law determination is premature").   Where, as here, the choice of law analysis is a complicated, fact-intensive jumble, courts routinely decline to determine the issue at the motion to dismiss stage.[2]

Accordingly, the Court finds the record in this case is insufficiently developed to permit an appropriate choice of law analysis at this stage.

## B.    Declaratory Judgment (Counts I and VII)

The ownership of the licensed intellectual property is the crux of this litigation. Counts I and VII ask the Court to find and declare Defendant the rightful and sole owner.

In response, Movants first argue that Defendant's Declaratory Judgment Counts cannot survive because "none of those conditions to the completion of the sale [of the

---

[2] *See, e.g., Hodgson v. Man Fin., Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at *5 (E.D. Pa. Dec. 29, 2006) ("Because there are significant factual issues governing this question, this is not a decision which should be made merely on allegations in the Third Party Complaint and briefs, but should await conclusion of discovery"); *Prudential Ins. Co. of Am. v. Bank of Am.*, No. 13-1586, 2014 U.S. Dist. LEXIS 53349, at *72 (D.N.J. Apr. 17, 2014) (denying motion to dismiss because "this Court declines to make choice of law determinations, which rely on factual determinations, at this early stage"); *LaBelle v. Brown & Williamson Tobacco Corp.*, No. 98-3235-23, 1999 U.S. Dist. LEXIS 21629, at *45 (D.S.C. Mar. 18, 1999) ("As the choice of law question remains unresolved for the time being, the court will reserve ruling on this matter until such time as that question is resolved and the issue can be briefed more fully by the parties"); *Kvaerner U.S., Inc. v. Kemper Envt'l. Ltd.*, No. 06-403, 2006 U.S. Dist. LEXIS 78005, at *14 (W.D. Pa. Oct. 26, 2006) (denying motion to dismiss because "[d]iscovery will enable the Court to evaluate the 'choice of law' factors based on a more-developed factual record").

licensed intellectual property to Defendant] are alleged to have been completed."   (Doc. 121 at 8).   Defendant alleged that it sent proper notice of its intent to purchase the licensed intellectual property within the relevant time period, as required by the license.   (Doc. 106 at ¶¶ 60-63.   Pursuant to that agreement, Defendant scheduled a date for the closing.   (*Id*. at ¶¶ 64-66).   These were the only conditions that needed to be satisfied by Defendant in order for certain reciprocal legal obligations of Lunkenheimer and CVL to arise.   As Defendant pled, "upon delivery of the notice to exercise the Option to Purchase, LUNKENHEIMER INC. and CVL were legally bound to sell the Licensed Intellectual Property to PFCP and PFCP was legally bound to purchase the Licensed Intellectual Property. (Sec. 5.2)."   (*Id*. at ¶ 65).

Defendant alleges it became the equitable, beneficial owner of the licensed intellectual property on the date it gave notice to exercise the option to purchase, and that the execution of paperwork and payment were conditions that arose subsequent to Plaintiffs' duty to sell to Defendant.   (*Id*. at ¶¶ 65-69).   Lunkenheimer and CVL's failure to attend the scheduled closing or to execute proper assignments of the licensed intellectual property and accept Defendant's money as tendered does not extinguish their alleged contractual obligation to transfer ownership to Defendant.   (*Id*.)   Defendant had the money, offered to tender payment, and is still prepared to do so, minus the setoffs it alleges are appropriate.   *See IMG Fragrance Brands, LLC v. Houbigant, Inc*., 759 F. Supp. 2d 363, 368, 375 (S.D.N.Y. 2010) (denying motion to dismiss declaratory judgment claim where plaintiffs requested declaration of their equitable ownership of trademarks where

defendants executed license with plaintiffs containing option to purchase that plaintiffs attempted to exercise by tendering payment, but defendants refused to comply with option or transfer legal title of marks).   Defendant has therefore sufficiently pled that it is the equitable, beneficial owner of the licensed intellectual property and has been since it gave notice of its intention to exercise the option to purchase.   (Doc. 106 at ¶ 65).

Movants also argue that Klur's intervention has no impact on Defendant's need for a declaration of ownership rights, but Klur's Complaint alleges she has some ownership interest in the licensed intellectual property, and she too seeks a declaration regarding ownership from this Court.   (*See* Doc. 100).   Because Klur asserts some ownership interest in the licensed intellectual property, and has filed a Declaratory Judgment claim of her own against all other parties, including Defendant, she had to be and has been properly added as a Counterclaim Defendant to Counts I and VII.   (*Id*.)

Movants also seek dismissal of Defendant's alternative Declaratory Judgment Count VII, which, unlike Count I, is predicated on the assumption that the license is invalid because Lunkenheimer and CVL did not actually own the licensed intellectual property. (Doc. 121 at 12; Doc. 106 at ¶¶ 144-63).   Movants argue that Defendant cannot assert ownership as a result of abandonment, nonuse, and disclosure of the licensed intellectual property because Defendant has alternatively alleged that it was licensed to and purchased by Defendant.   (Doc. 121 at 9).

However, Defendant seeks a declaration that (1) it is the owner of the licensed intellectual property by virtue of properly exercising the option to purchase contained in

the valid License Agreements (Count I), or, alternatively, (2) the License are invalid and Defendant is the owner as a result of Plaintiffs/Counterclaim Defendants' abandonment, nonuse and disclosure of the licensed intellectual property (Count VII).   Alternative pleading is permitted and is not a basis to dismiss either or both well pled, inconsistent legal theories.   Fed. R. Civ. P. 8(d)(2) provides that: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.   If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."   Fed. R. Civ. P. 8(d)(2).   "A party may state as many separate claims or defenses as it has, regardless of consistency."   *Id*. at 8(d)(3).   A plaintiff is clearly permitted to plead alternative or even inconsistent claims without being subject to a motion to dismiss.[3]

Because Defendant has received conflicting information, documents and testimony regarding the ownership of the licensed intellectual property, it has pled alternative, inconsistent theories to account for the fact that the signatories to the license may or may not have had the power to execute those agreements and license the licensed intellectual property to Defendant in 2002.   Defendant's Declaratory Judgment Counts are not duplicative of its Breach of Contract claim.   Defendant's Breach of Contract claims (Count II) are only asserted against the three Plaintiffs/Counterclaim Defendants that are

---

[3] *See Power Mktg. Direct, Inc. v. Pagnozzi*, No. 05-766, 2006 U.S. Dist. LEXIS 73343, at *32 (S.D. Ohio Sept. 29, 2006) (holding unjust enrichment and breach of contract claims survive motion to dismiss as alternative, inconsistent theories); *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 06- 137, 2007 U.S. Dist. LEXIS 53047, at *17 (S.D. Ohio July 23, 2007) ("alternative or even inconsistent pleadings are permitted … and inconsistent pleadings cannot be a basis for a motion to dismiss").

signatories to the license (Bernard DeSilva, Lunkenheimer, and CVL), whereas the

Declaratory Judgment Counts are asserted against all Plaintiffs/Counterclaim Defendants

that may have some purported interest in the licensed intellectual property.   Thus, the

parties are not the same in Counts I and VII as they are in Count II.   Additionally, Count

VII for Declaratory Judgment is pled as an alternative theory assuming that the license is

invalid and thus cannot possibly be duplicative of a Breach of Contract claim which

requires a valid contract (Count II).   (Doc. 106 at ¶¶ 144-163); *see e.g. Hoffman v.

Northwestern Mut. Life Ins. Co*., No. 13-631, 2013 U.S. Dist. LEXIS 107178, at *12-3

(W.D. Pa. July 31, 2013) (alternatively pled breach of contract and declaratory judgment

claims are not duplicative).   Movants' citation to *Miami Valley Mobile Health Servs., Inc.*

*v. ExamOne Worldwide, Inc*., 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012). is inapposite

because that case did not involve the issues of whether breach of contract and declaratory

judgment claims are duplicative where (1) the parties to each claim are different and (2) the

claims are pled in the alternative.

District courts have discretion to entertain declaratory judgment claims based upon

the following factors: (1) whether the judgment would settle the controversy; (2) whether

the declaratory judgment action would serve a useful purpose in clarifying the legal

relations at issue; (3) whether the declaratory remedy is being used merely for the purpose

of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the

use of a declaratory action would increase the friction between our federal and state courts

and improperly encroach on state jurisdiction; and (5) whether there is an alternative

remedy that is better or more effective. *Id.* In the current litigation, the only claims that will clarify the most important legal issue (ownership) between all parties and settle the controversy are the Declaratory Judgment Counts. No other remedy available to Defendant – including remedies for its Breach of Contract claim – will determine the future ownership rights of and against all parties. *See e.g. 1st United Bank v. Bank of Am., NA*, No. 10-22935, 2011 U.S. Dist. LEXIS 1081, at *8-9 (S.D. Fla. Jan. 5, 2011) (declaratory judgment and breach of contract claims not duplicative where resolution of breach of contract claim would leave future rights of parties unresolved); *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010) (claims not duplicative where plaintiff could fail on breach of contract claim, but still be entitled to declaratory relief as to future rights of parties).

Accordingly, the Court finds that Defendant's declaratory judgment Counterclaims have been sufficiently pled.

## C.   Breach of Contract (Count II)

The license provides, in pertinent part: "Subject to clause 9.3(b), Lunkenheimer must at its own cost take all such actions as is reasonably necessary (including the commencement of legal proceedings) to protect the Licensed Intellectual Property." Doc. 121-2 at 2-63). Movants argue that this provision does not give rise to a duty to maintain the trademarks that were purportedly licensed to Defendant and that this provision only relates to "protecting trademarks from infringement, not renewing trademark registration [sic] (which is not "protection" in any reasonable sense)." Doc. 121 at 13). To support

13

this interpretation, Movants note that the Heading of this Section is "Proceedings by Lunkenheimer" apparently suggesting, without citation to any authority, that "proceedings" somehow means only prosecuting infringement actions.  (*Id.*)  However, Section 1.2 of the License provides that "[h]eadings are for convenience only, and do not affect interpretation."  (Doc. 121-2 at 2-63).

Section 9.3 of the License requires Lukenheimer and to "at [their] own cost take all such action as is reasonably necessary … to protect the Licensed Intellectual Property." (*Id.*)  Part of "protecting" trademarks is filing renewals, not allowing them to expire and initiating cancellation and/or infringement proceedings against infringers.  Although Movants take the position that this is "not 'protection' in any reasonable sense", maintaining registrations is "protecting" one's marks – indeed a license to use a trademark, absent valid registrations, is worthless.  *Cf. Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 n. 2 (D. Kan. 1999) ("a trademark [] licensor is under an implied good faith obligation not to do anything that would impair or destroy the value of an exclusive licensee's rights").

Additionally, Section 9.3 provides that "all such actions … (including the commencement of legal proceedings)" must be taken to protect the marks.  (Doc. 121-2 at 2-63).  The provision specifically mentions institution of legal proceedings to protect the licensed intellectual property, but is not limited to that single form of "protection."  There is nothing in Section 9.3 that limits DeSilva, Lunkenheimer, and CVL's obligations to

protect the licensed marks to instituting "infringement" proceedings, as Movants suggest. (Doc. 121 at 13).

Movants then suggest that Defendant should have given notice and exercised a "self-help" provision to rescue the licensed intellectual property from expiration and cancellation.  (*Id.*)  But Section 9.5 does not create an obligation for Defendant to "self-help" – instead, it provides that Defendant may take all such actions "in its sole discretion."  (Doc. 121-2 at 2-63).   In order to take any action to renew or initiate proceedings related to the licensed intellectual property, Defendant would have had to seek written assignments and/or authorizations from the registrants of the trademarks (*i.e.*, Plaintiffs Lunkenheimer and Uswatta LLC), which Defendant alleges would have been an exercise in futility due to Bernard DeSilva's refusal to cooperate with Defendant.   (Doc. 126 at 26 n.11).   Additionally, Defendant is not a registrant and does not receive notices of registrations that are due to expire; Bernard DeSilva does receive them, and Defendant alleges that Bernard DeSilva never informed Defendant that the trademarks on any of the licensed intellectual property were expiring and/or needed to be renewed.   (*Id.*) Although Defendant alleges it became the equitable and beneficial owner of the licensed intellectual property when it gave notice of its intent to purchase, it also alleges it was unable to execute the assignments necessary to take over maintenance of the trademark registrations at that time.   (Doc. 106 at ¶ 69).   A third party who is not the registrant does not have the power to file trademark renewals or cancellation proceedings without the owner's permission.

Movants also argue that Defendant has waived its claim that Bernard DeSilva, Lunkenheimer, and CVL breached the license by failing to comply with the dispute resolution procedure prior to initiating this action.   (Doc. 121 at 13).   However, Defendant alleges that Section 15 of the license was breached because DeSilva, Lunkenheimer, and/or CVL commenced this lawsuit without (i) giving proper written notice of any dispute to Defendant, and/or (ii) meeting with senior executives from Defendant to endeavor to resolve the any dispute through negotiation.   (Doc. 106 at ¶ 92). The basis of Movants' waiver argument is that Defendant has "participated in this litigation."   (Doc. 121 at 14).   T

However, the dispute resolution procedure at issue here is not an arbitration clause that a party now seeks to enforce years into litigation.   Movants' cited cases are entirely inapposite because they involve defendants waiving their right to enforce an arbitration clause after years of engaging in civil litigation.[4]   Defendant had no choice but to defend this lawsuit and assert <u>compulsory</u> Counterclaims pursuant to Fed. R. Civ. P. 13(a).   The license also states that "[a] right may only be waived in writing, signed by the party, giving the waiver, and … no other conduct of a party (including failure to exercise, or delay in exercising, the right) operates as a waiver of the right or otherwise prevents the exercise of the right."   (Doc. 121-2 at 2-63).

---

[4] *See Hurley v. Deutsche Bank Trust Co. Ams*., 610 F.3d 334, 338-9 (6th Cir. 2010); *Hausser & Taylor, LLP v. Accelerated Sys. Integration, Inc*., No. 84748, 2005 Ohio App. LEXIS 1030, at *11 (Ohio Ct. App., Cuyahoga County Mar. 10, 2005); *Crowe Enter. v. Amicon Med. Group, Inc*., No. 2013-31, 2014 Ohio App. LEXIS 7, at *6-7 (Ohio Ct. App., Portage County Jan. 6, 2014).

Accordingly, the Court finds that Defendant's breach of contract Counterclaim has been sufficiently pled.

## D.    Indemnification (Count III)

Count III of the Counterclaims is only asserted against Plaintiffs Bernard DeSilva, Lunkenheimer, and CVL, for breach of the contractual indemnities set forth in the license. DeSilva, Lunkenheimer, and CVL warranted that the "licence [sic] granted under this document by Lunkenheimer does not infringe any Intellectual Property Rights of any person."  (Doc. 121-2 at 20, 52).   In the event of a breach of this Warranty, Plaintiffs agreed to "indemnif[y Defendant] and agree[d] to keep it indemnified against all damages, costs and expenses (including legal costs and expenses on an indemnity basis) which may be brought or commenced against [Defendant] in relation to or arising out of any breach by Lunkenheimer of a warranty contained in clause 11.2."  (*Id*. at 21, 53).

Movants assert that "the representation that the License does not infringe the rights of any person was made in the present tense in 2002.   Thus, according to Movants, to state a claim, Defendant would have to allege that a third-party has sued it because in 2002, when it granted the License, Lunkenheimer was breaching the third-party's intellectual property rights.   (Doc. 121 at 15).

As an initial matter, Movants' interpretation of this provision is contrary to the plain language used therein and to common sense.   The "license granted under this document" was for a term of 15 years.   (Doc. 121-2 at 21, 53).   Thus, the license and the warranty attached to it span more than the single date on which it was executed.   Movants provide

no authority for the suggestion that a non-infringement warranty set forth in a license agreement expires upon the execution of that very agreement. By its unequivocal language, the warranty provides that the license "does not infringe any Intellectual Property Rights of any person" and does not, as Movants suggest, warrant only that Defendant would not be sued for infringing the intellectual property of any person.

Movants also argue that because the "[l]icense does not entitle Defendant to indemnification for claims that may [be] brought and expenses that might be incurred, it is entitled to indemnification only for claims that have been brought." (Doc. 121 at 15-16). In so doing, Movants evidently neglect to consider their own pleadings in this action. Klur's Complaint, for example, asserts that "even if the Plaintiffs have the right to license those rights, those rights might still be limited by the trust instrument." (Doc. 100 at ¶ 16). Klur also asserts that "she is the beneficiary of a trust the assets for which include the intellectual property rights to the valves that are at issue in this case and that her rights as a beneficiary may be impaired …." (*Id*. at ¶ 19). In other words, Klur asserts in the universe where Lunkenheimer and CVL did own the licensed intellectual property and the license is valid, an existing trust instrument might nevertheless restrict their right to license the intellectual property in question such that the license infringes Klur's rights.

It is not necessary that this theory that some trust instrument prevents Lunkenheimer and CVL from licensing the intellectual property in question be correct in order to trigger the warranty obligations. DeSilva, Lunkenheimer, and CVL indemnified Defendant "against all damages, costs and expenses (*including legal costs and expenses on*

18

*an indemnity basis*) in respect of any *claims*, *demands*, actions or proceedings which may be brought or commenced against Defendant in relation to arising out of any breach by Lunkenheimer of a warranty contained in clause 11.2."   (Doc. 121-2 at 21, 53) (emphasis added).   Here, Klur has asserted, in the alternative, that Plaintiffs "right to license … might still be limited by the trust instrument," which allegedly infringes upon Klur's alleged interest in the licensed intellectual property.   (*See* Doc. 100 at ¶¶ 16, 19). Defendant alleges that this "claim" by Klur has damaged it by, *inter alia*, forcing it to incur additional "legal costs and expenses" and actual damages arising from its inability to fully exploit the licensed intellectual property.

Finally, Movants assert that "Defendant would be entitled to indemnification only if claims were asserted against Defendant on the ground that the license infringes the Intellectual Property Rights of any person."  (Doc. 121 at 19).   Movants seem to suggest that this provision is only applicable to a Count for "infringement," specifically. However, Movants ignore that "Intellectual Property Rights" is defined in the license as "any and all existing and future intellectual and industrial property rights throughout the world, whether conferred by statute, common law or equity, including rights in relation to copyright, trade marks, designs, business and domain name, trade secrets and Know How… ."  (Doc. 121-2 at 9, 41).   The license's use of the word "infringe" is clearly not meant to limit its applicability to causes of action containing the word "infringement" as one does not, for example, "infringe" trade secrets.   Instead, the only logical interpretation

19

of "infringe" as used in the license is its ordinary meaning of "invade," "interfere with," or "impair."

Accordingly, the Court finds that Defendant's indemnification Counterclaim has been sufficiently pled.

## E.     Unjust Enrichment (Counts IV and X)

Defendants allege that the alternative pleading in its counterclaims is a necessary response "to the uncertainty consciously created by (1) Bernard DeSilva's inability and/or refusal to disclose documents demonstrating actual ownership of the licensed intellectual property at issue; and (2) Klur's vague and hypothetical allegations of a potential interest that she allegedly possesses as a beneficiary of some unknown trust." (Doc. 126 at 32). Specifically, Klur asserts that Defendant's claim for unjust enrichment must be dismissed because this Count is duplicative of Defendant's breach of contract claims. (Doc. 121 at 17). However, the allegations in Count IV relate to monetary overpayments. Nowhere does the license discuss the parties' obligation with respect to the return of mistaken payments not due under it. Moreover, Defendants allege that given the labyrinth of entities, individuals, and trusts associated with Bernard DeSilva, it is unclear who is in possession of the allegedly unjustly received funds.

Movants argue that the unjust enrichment theory pled against Klur, namely that if she is the lawful owner of all or some interest in the licensed intellectual property, she will unjustly receive the benefits in the form of the enhanced goodwill created by Defendant's use and promotion of same, fails as a matter of law. However, Movants' argument that

Defendant must delineate individual allegations against each Counterclaim Defendant is unavailing here, as Defendant could not possibly identify the precise entities that received the benefits of the enhanced goodwill where, for example, Klur herself can only speculate that the licensed intellectual property may be owned by a "Consolidated Valve Trust," "another trust known as the 'Paddington Trust," or perhaps a different unknown trust (or perhaps no trust at all).   (Doc. 100 at ¶ 10).   Defendant has clearly pled that whoever owns the licensed intellectual property has been unjustly enriched through Defendant's investment in, and expansion of, the goodwill associated therewith.   The fact that Defendant cannot specifically identify that person/entity at present is a consequence of Plaintiffs' own making.

Finally, Movants assert that it "is in particular beyond implausible … that Klur was enriched by Defendant" and, without support, suggest that the increased value in the goodwill associated with the licensed intellectual property would somehow be an indirect benefit to her (assuming that she was, in fact, the owner of the licensed intellectual property).   (Doc. 121 at 19).   However, enhanced goodwill in a trademark inures directly to the benefit of the owner/licensor.   "Where no goodwill has been transferred with the license, a trademark licensee cannot independently develop its own goodwill in a licensed mark, as such goodwill inures solely to the benefit of the licensor."   *Twentieth Century Fox Film Corp. v. Marvel Enters*., 155 F. Supp. 2d 1, 20 (S.D.N.Y. 2010).   In other words, the goodwill associated with a trademark, even if developed by a licensee, inures to the benefit of the trademark owner, which Klur alleges could potentially be she.   Of course, to

21

that extent that Klur is the owner, there is nothing indirect about the unjust benefit Defendant alleges she received.[5]  Defendant alleges that to the extent the value of the intellectual property rights increased from the signing of the license in 2002 until today, that increased value is solely by virtue of, and a direct reflection upon, the enhanced goodwill created by Defendant's use of the licensed intellectual property.

Moreover, to the extent that Count X also asserts an unjust enrichment claim for all payments and enhancements to goodwill in the universe where Lunkenheimer and CVL had no right to license the intellectual property, this is also a proper alternative theory of recovery.  *See, e.g., Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012) (denying motion for judgment on the pleadings as to alternative unjust enrichment claim where "one of Plaintiffs' factual allegations is that they were fraudulently induced into entering the contracts, thereby placing the validity of the contracts themselves into question").   In this situation, Klur would still retain the allegedly unjust benefit of the enhanced value of the licensed intellectual property and Bernard DeSilva would have no right to retain payments pursuant to a license he had no right to enter into in the first place.

---

[5] For example, in *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860-1 (6th Cir. 2002), the Sixth Circuit noted that Ohio has embraced an expansive view of the Unjust Enrichment doctrine and held that "[u]njust enrichment … results from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain." (quotation omitted) (emphasis added). *See also Guardian Tech., Inc. v. Chelm Props., Inc*., No. 80166, 2002 Ohio App. LEXIS 4947, at *6 (Ohio Ct. App. Sept. 19, 2002) (and cases cited therein for the proposition that "[c]ircumstances may exist to support an unjust enrichment claim against a noncontracting third-party who benefits from the uncompensated work of one of the parties to the contract").

Accordingly, the Court finds that Defendant's unjust enrichment Counterclaims have been sufficiently pled.

## F.    Lanham Act (Counts V and VI)

Movants argue that Defendant has not alleged ownership or infringement of the licensed intellectual property, and thus that the Lanham Act Counterclaims must be dismissed.  (Doc. 121 at 20-21).   However, again, Defendant has pled in detail that it became the equitable and beneficial owner of the licensed intellectual property upon properly exercising the Option to Purchase.  (Doc. 106 at ¶¶ 60-69, 114-43).   A beneficial owner has standing to sue for infringement:

> Black's Law Dictionary, noting the term's origins in the Eighteenth Century, defines "beneficial owner" as "[o]ne recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else ….   Also termed equitable owner. … A person or entity who is entitled to enjoy the rights in a patent, trademark, or copyright even though legal title is vested in someone else."   Black's Law Dictionary 1214 (9th ed. 2009) […] Further, "[t]he beneficial owner has standing to sue for infringement."   Black's Law Dictionary 1214.   Thus, it appears that, under the general definition of "beneficial owner," such an entity has most to all of the traditional property rights of the owner, except for actual legal title to the property.

*Pfizer, Inc. v. Teva Pharms. USA, Inc*., 803 F. Supp. 2d 409, 425 (E.D. Va. 2011). Movants merely reassert their previous arguments that Defendant did not acquire ownership because it "has not paid a dime for the privilege" of owning the trademarks.   (Doc. 121 at 17). However, if this Court deems the license valid, Defendant represents it is "ready and willing to tender what is left of the Purchase Price after subtracting the appropriate setoffs to compensate Defendant for having to endure protracted litigation to gain an adjudication

23

of its clear rights under the License Agreements."   (Doc. 106 at 42 n.8).   As set forth

above, Defendant alleges that its equitable and beneficial rights in the licensed intellectual

property vested upon its proper exercise of the Option to Purchase.

Next, Movants argue it is improper to assert its Lanham Act claims against Klur

because Defendant gives "no hint" as to why she has been named as a Counterclaim

Defendant.   (Doc. 121 at 20). However, Klur cannot assert an ownership interest in the

licensed intellectual property but then shirk liability for its infringement and misuse.

(Doc. 100).   Violations of the Lanham Act are strict liability offenses.   *Lorillard Tobacco*

*Co. v. Hamden, Inc.*, No. 10-1886, 2011 U.S. Dist. LEXIS 122230, at *13 (N.D. Ohio Oct.

21, 2011) (holding infringers "bear strict liability for violations of the Lanham Act" even

where they are ignorant of their own infringing activity).   Movants cite to no authority that

would require dismissal of a self-proclaimed trademark owner from an action asserting

Lanham Act violations.

Finally, Movants assert that Defendant has identified no actionable infringement or

misuse of the licensed intellectual property. (Doc. 121 at 20).   Defendant has alleged that

Movants have licensed the rights to the licensed intellectual property to Cincinnati Valve

Company ("CVC"), and that this license continued after Defendant exercised the Option to

Purchase.   (Doc. 106 at ¶¶ 70-75, 114-43).   Movants argue that the CVC license does not

interfere with Defendant's trademark rights because the license granted to Defendant was

limited to slurry valves and CVC does not make that type of valve. (Doc. 121 at 20).

However, the scope of Defendant's Option to Purchase is the relevant inquiry.   (Doc.

24

121-2 at 2-63).   The Option to Purchase the licensed intellectual property (including the Lunkenheimer Trademarks and Lunkenheimer Know How) is not limited to slurry valves. The Option to Purchase provides: "At any time prior to the fifth anniversary of the Commencement Date Defendant may notify Lunkenheimer that Defendant wishes to purchase the Licensed Intellectual Property for the Purchase Price."   (*Id.*)   There is no language that limits the grant of the licensed intellectual property to slurry valves. Defendant alleges it acquired these trademarks outright, worldwide, and for all goods and services, when it exercised the Option to Purchase.

Accordingly, the Court finds that Defendant's Lanham Act Counterclaims have been sufficiently pled.

## G.    Fraud and Promissory Estoppel (Counts VIII and IX)

Movants assert that the "fraud and promissory estoppel claims simply duplicate their [sic] breach of contract claim, and thus must be dismissed."   (Doc. 121 at 21). However, Counts VIII and IX for Promissory Estoppel and Fraud are asserted only against Bernard DeSilva, Lunkenheimer, and CVL.   These Counts are pled in the alternate universe where Lunkenheimer and CVL did not own the licensed intellectual property, thus rendering the license void.   As a result, an alternative Count for fraud or promissory estoppel is perfectly permissible.   *See, e.g., Lynch v. Sease*, 244 Fed. Appx. 736, 738 (6th Cir. 2007) (internal citations and quotations omitted) ("A contract and promissory estoppel are two different creatures of the law; they are not legally synonymous; the birth of one does not spawn the other.   Therefore, a plaintiff can pursue contract and promissory

25

estoppel claims in the alternative"); *see also Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, No. 04-2188, 2006 U.S. Dist. LEXIS 100943, at *20 (N.D. Ohio Aug. 17, 2006) ("However, Ohio law permits that where there is a dispute as to the existence or enforceability of a contract, a party may plead promissory estoppel or unjust enrichment in the alternative").   The law similarly permits a plaintiff to plead fraud as an alternative theory to a breach of contract count.  *See, e.g., Smythe Cramer Co. v. Silva*, No. 13-1403, 2013 U.S. Dist. LEXIS 151556, at *13 (N.D. Ohio Oct. 22, 2013) ("Therefore, while Plaintiffs cannot recover on both breach of contract and fraud claims, they can plead fraud in the alternative").

Movants also assert that Defendant "has no plausible claim for damages and none can be discerned from the Counterclaims" while simultaneously acknowledging that Defendant was damaged by "Plaintiffs' refusal to close on the sale of the Licensed Intellectual Property in 2007."   (Doc. 121 at 22).   Movants suggest that even if the license is invalid because Lunkenheimer and CVL did not own the licensed intellectual property, Defendant "got exactly what it bargained for" because "Plaintiffs promised that [Defendant] could use the Licensed Intellectual Property and [Defendant] used it."   (*Id.*) However, Defendant does not allege that it paid millions of dollars simply to use the licensed intellectual property, it alleges it paid millions of dollars to license the right to lawfully use (and later purchase) the licensed intellectual property from its actual owner.

Finally, Movants assert that Defendant's "fraud claims should be dismissed because [Defendant] does not claim – nor could it plausibly do so – that is [sic] exercised due

26

diligence regarding the ownership of the Licensed Intellectual Property."  (Doc. 121 at

22).   However, Defendant cites no authority stating that "due diligence" is an element of a

fraud claim.   Instead, the "elements of civil fraud are: (a) a representation …, (b) which is

material to the transaction at hand, (c) made falsely, with knowledge of the falsity, or with

such utter disregard and recklessness as to whether it is true or false that knowledge may be

inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable

reliance upon the representation or concealment, and (f) a resulting injury proximately

caused by the reliance."   *Kiser v. CitiMortgage, Inc*., No. 11-1428, 2011 U.S. Dist. LEXIS

115560, at *15 (N.D. Ohio Oct. 6, 2011).   "For purposes of a fraud claim, reliance is

justified if the purported false representation does not appear unreasonable on its face and,

if, under the circumstances, there is no apparent reason to doubt the veracity of the

representation."   *Passa v. City of Columbus*, 748 F. Supp. 2d 804, 815 (S.D. Ohio 2010)

(partial quotations omitted).   The question of whether Defendant's reliance was

reasonable and justified is typically a question of fact for the jury.   *See, e.g., In re Nat'l

Century Fin. Enters*., 846 F. Supp. 2d 828, 881 (S.D. Ohio 2012).

Accordingly, the Court finds that Defendant's fraud and promissory estoppel

Counterclaims have been sufficiently pled.

## IV.   CONCLUSION

Accordingly, based on the foregoing, Intervenor's Motion to Dismiss the

Counterclaims (Doc. 121), in which Plaintiffs join, is hereby **DENIED**.

**IT IS SO ORDERED.**

Date:   9/10/14                                                          *s/ Timothy S. Black*
                                                                                    Timothy S. Black
                                                                                    United States District Judge